Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                      :

**In re**                               :           **Chapter 11**
                                        :

**BLOCKBUSTER INC., *et al.*,**[1]      :           **Case No. 10-14997 (BRL)**
                                          :

                                          :           **(Jointly Administered)**
                          **Debtors.**           :
-------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 327, AND 330 FOR
AUTHORIZATION TO EMPLOY PROFESSIONALS UTILIZED IN THE ORDINARY
COURSE OF BUSINESS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

           Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and their

debtor affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***" or the

"***Debtors***"), submit this motion (the "***Motion***") and respectfully represent as follows:

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

# I.

## BACKGROUND

1.      On September 23, 2010 (the "***Commencement Date***"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

# II.

## BLOCKBUSTER'S BUSINESS

2.      More than twenty five years ago, Blockbuster became the first national retail chain provider of in-home entertainment, with its blue and gold torn-ticket logo symbolizing the decision by consumers to forego the movie theatre experience and "Make it a Blockbuster Night"® by staying home to watch the latest in new movie title releases from the convenience of their living rooms.  Since its incorporation in 1982, Blockbuster has expanded its retail business operations domestically and abroad via a mix of corporate and franchisee-owned stores, with, as of August 29, 2010, over 5,600 stores in the United States and its territories and 16 other countries.  To manage its business and properties, Blockbuster employs approximately 25,500 employees who perform a variety of critical functions, including customer service, inventory control, management, leasing, accounting, marketing, purchasing and sales, shipping, tax, technical services, and legal services.

A.    **Domestic Operations**

3.    Blockbuster operates its domestic media entertainment business through three principal channels of distribution: (i) retail; (ii) by-mail; and (iii) digital. As a result of this multi-channel distribution scheme, Blockbuster offers customers a value-priced entertainment experience, combining the broad array of products offered by a specialty or online retailer with the convenience of a local neighborhood retailer.

1.    *Retail Channel*

4.    The convenience offered to customers by having Blockbuster stores located in their cities, towns, and neighborhoods has been instrumental in establishing the BLOCKBUSTER® brand. As of August 29, 2010, there were 3,306 stores operating under the BLOCKBUSTER® brand in the United States and its territories. Of these stores, 2,924 are owned and operated by Blockbuster Inc. and 382 stores are owned and operated by franchisees. Blockbuster stores offer movies and games (collectively, "***Product***") for rent and purchase (both new and previously-viewed) as well as other entertainment-related consumer electronics and accessories, game consoles, confection, and movie-related merchandise for purchase. Additionally, approximately 240 of these locations include store-in-store game locations operating under the GAME RUSH® brand.

5.    In step with its continued commitment to be the premier retailer of new release movies, Blockbuster has recently focused on promoting its rapidly emerging availability advantage over certain of its key competitors, who do not have access to key new Product for the initial 28 days of release (the "***28-day Window***"). In 2009, the 28-day Window was imposed by certain movie studios on the rental of newly released titles after the initial distribution date of a title so as to diminish the effect of rental on the retail sale of such titles. Given that a substantial portion of Blockbuster's rental revenues are derived from the rental of such new release Product,

Blockbuster's advantage with respect to the 28-day Window is expected to maintain and improve its customer preference and loyalty in comparison to its competitors.

6.  To expand its retail reach, in early 2009, Blockbuster entered into an agreement with NCR Corporation ("*NCR*") to launch BLOCKBUSTER Express® branded vending kiosks.  Through this partnership, NCR builds and maintains the kiosks and pays royalties to Blockbuster on the revenues generated.  This agreement allows Blockbuster to compete in the popular vending kiosk channel without incurring capital expenditures and start-up costs on its own account, while making Product more convenient and less expensive for its customers.  As of September 19, 2010, there were approximately 6,630 kiosks operating under the BLOCKBUSTER Express® brand throughout the United States and its territories.

### 2.  *By-Mail Channel*

7.  Blockbuster offers a by-mail subscription program through its retail chain and through its website, www.blockbuster.com, whereby customers rent Product that is delivered directly to them by-mail.  The by-mail subscription program provides customers access to substantially more Product than is available in its stores, and allows Blockbuster to compete directly with certain of its key competitors.  In contrast to its competitors, Blockbuster offers:  (i) a wide selection of games; and (ii) Blu-ray Product at no additional charge.  Through its BLOCKBUSTER Total Access™ program ("*Total Access*"), Blockbuster also offers its by-mail subscribers the ability to exchange up to five online movie rentals for in-store movies at its retail locations for only a few dollars more per month.  The by-mail subscription program allows Blockbuster to reach customers located in geographic areas where it does not operate store locations.

8.  In order to promote the synergies between its retail and by-mail channels of distribution and to profitably grow its by-mail customer base, Blockbuster recently launched a

marketing partnership with Comcast Cable Corporation ("**Comcast**"). This partnership includes the launch of *DVDs by Mail,* a co-branded by-mail offer available at www.DVDsbymail.com. As part of the marketing partnership, Comcast customers are now being offered Blockbuster's by-mail services (both by-mail and Total Access-like products) through the new co-branded web site as an additional service within their Comcast package. On the site, customers can browse Blockbuster's vast library of more than 95,000 movie and television titles, create a queue of titles they want to rent and then get the DVDs through the mail or at a Blockbuster retail store, where they can also exchange their rentals. In turn, Blockbuster is installing Comcast-dedicated kiosks in select stores that allow customers to quickly and easily learn about, and sign up for, Comcast services.

### 3. *Digital Channel*

9. As new distribution channels have emerged and as consumer interest in accessing Product in new ways has grown, Blockbuster has begun to expand its footprint into the digital realm. To that end, Blockbuster's digital business currently offers its customers on-demand access to one of the largest libraries of digital movies for both rental and sale through multiple formats. Blockbuster began its digital initiatives with the purchase of Movielink from a consortium of movie studios in 2007.

10. Through Blockbuster's website, www.blockbuster.com, Blockbuster customers can download and view movies on their personal computers after downloading Blockbuster's personal computer application. In addition, with the convergence of media entertainment and electronic devices, Blockbuster recently entered into strategic partnerships with certain global third party consumer electronics device developers – including Samsung, Philips, TiVo, and Toshiba – to digitally deliver media entertainment to its customers through consumer electronics such as Internet-connected TVs and Blu-ray players through Blockbuster

applications embedded in these devices.  In the mobile space, Blockbuster has partnered with device makers such as Motorola and HTC, embedding Blockbuster's digital applications in its popular new models for Verizon and T-Mobile.  Blockbuster is also pursuing partnerships with Cable TV providers to offer Blockbuster-branded video-on-demand services inside an operator's set-top-box infrastructure.

### B. International Operations

11. Blockbuster's international operations, which serve as ambassadors of the BLOCKBUSTER® brand, are comprised of all store operations outside the United States and its territories, including:  (i) owned retail operations in Canada, the United Kingdom, Denmark, Italy, Mexico, Argentina, and Uruguay; and (ii) franchised retail operations in Australia, Brazil, Chile, Columbia, Guatemala, Israel, Italy, Mexico, New Zealand, Panama, Portugal, and Taiwan. As of August 29, 2010, Blockbuster had 2,333 stores in 16 markets outside of the United States operating under the BLOCKBUSTER® brand, the GAME RUSH® brand, and other brand names owned by Blockbuster.  During 2008 and 2009, 29% and 30% of Blockbuster's revenues were generated outside of the United States, respectively.  Blockbuster's international operations have historically been more dependent than the domestic operations on retail sales and, in particular, sales of games, as opposed to revenue generated from rentals.

### C. Financials

12. As of July 4, 2010, the Debtors, on a consolidated basis, reported approximately $1.2 billion in total assets and approximately $1.6 billion in total liabilities.  For 2009, Blockbuster reported consolidated revenues of approximately $4.1 billion and net cash from operating activities of $29.3 million.

13. Additional information regarding Blockbuster's business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the *Affidavit of Jeffery J.*

*Stegenga Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* (the "***First Day Affidavit***") filed contemporaneously herewith.

## III.
## JURISDICTION

14.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.
## RELIEF REQUESTED

15.     The Debtors request that, pursuant to sections 105(a), 327, and 330 of the Bankruptcy Code, the Court authorize the Debtors to employ and retain, *nunc pro tunc* to the Commencement Date, professionals utilized by the Debtors in the ordinary course of business (the "***Ordinary Course Professionals***") without the submission of separate employment applications and the issuance of separate retention orders for each individual professional.  A proposed order (the "***Proposed Order***") is attached hereto as ***Exhibit "A"***.

## V.
## PROPOSED PROCEDURES

16.     The Debtors desire to continue to employ the Ordinary Course Professionals to render a variety of professional services to these estates in the same manner and for the same purposes as the Ordinary Course Professionals did prior to the Commencement Date.  In the past, these professionals have rendered a range of professional legal services relating to matters including, but not limited to, litigation, intellectual property, corporate requirements, tax, real estate, and employment.  It is essential that the employment of these Ordinary Course Professionals, many of whom are already familiar with the Debtors' business

and financial affairs, be continued so as to avoid disruption of the Debtors' normal business operations.

17.     The Debtors submit that the proposed employment of the Ordinary Course Professionals and the payment of monthly compensation on the basis set forth below are in the best interests of their estates, creditors, and all parties in interest. The relief requested will save these estates the substantial expenses that would be associated with applying separately for the employment of each Ordinary Course Professional. Further, the relief requested will avoid the incurrence of additional fees relating to the preparation and prosecution of interim fee applications.

18.     The Debtors propose that, within thirty (30) days of the later of (i) the entry of an order granting this Motion and (ii) the date on which the Ordinary Course Professional commences services for the Debtors, each Ordinary Course Professional shall provide to the Debtors' attorneys: (a) an affidavit (the "***Ordinary Course Professional Affidavit***"), substantially in the form annexed as ***Exhibit "1"*** to the Proposed Order, certifying that the professional does not represent or hold any interest materially adverse to the Debtors or their estates with respect to the matter in which the professional is to be employed; and (b) a completed retention questionnaire (the "***Retention Questionnaire***"), substantially in the form annexed as ***Exhibit "2"*** to the Proposed Order.

19.     The Debtors shall subsequently file the Ordinary Course Professional Affidavit and Retention Questionnaire with the Court and serve a copy thereof upon: (i) the Office of the U.S. Trustee for the Southern District of New York (the "***U.S. Trustee***") (Attn: Brian Masumoto, Esq.), and (ii) attorneys for the creditors' committee (the "***Creditors' Committee***") (together with the Debtors, the "***Reviewing Parties***"). The Reviewing Parties shall

have fifteen (15) days following service (the "***Objection Deadline***") to notify the Debtors, the other Reviewing Party, and the relevant Ordinary Course Professional, in writing, of any objection to the retention of such Ordinary Course Professional based on the contents of the Ordinary Course Professional Affidavit or Retention Questionnaire.  If, after the Objection Deadline, no objection is filed, the retention, employment, and compensation of such Ordinary Course Professional shall be deemed approved, without further order from the Court, *nunc pro tunc* to the Commencement Date or the date the Ordinary Course Professional is retained, as applicable.  If an objection is filed and such objection cannot be resolved within twenty-one (21) days, the matter shall be set for a hearing before the Court.

20.     The Debtors propose that they be permitted to pay each Ordinary Course Professional, without a prior application to the Court by such professional, one hundred percent (100%) of postpetition fees and disbursements incurred, upon the submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and disbursements actually incurred; *provided*, *however*, that, if any amount owed for an Ordinary Course Professional's postpetition fees and disbursements exceeds a total of $40,000 per month, then the full amount of payments to such professional for such month shall be subject to the prior approval of the Court as set forth below.  In addition, the Debtors propose to cap payments to each Ordinary Course Professional at $300,000 for the entire period in which these chapter 11 cases are pending, subject to further order of the Court.  In the event that an Ordinary Course Professional seeks more than $40,000 per month, that professional will be required to file a fee application for the full amount of its fees and expenses for that month in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, the Fee Guidelines promulgated by the

U.S. Trustee, and any and all orders of the Court.  The Debtors reserve the right to amend the monthly compensation limitation set forth in this paragraph upon notice and hearing.  In the event that an Ordinary Course Professional seeks more than $300,000 for the entire period in which these chapter 11 cases are pending, such Ordinary Course Professional shall be required to file a retention application to be retained as a professional pursuant to section 327 of the Bankruptcy Code.

21.      Annexed as **_Exhibit "3"_** to the Proposed Order is an initial list of the Ordinary Course Professionals identified by the Debtors as of the date of this Motion.  The Debtors reserve the right to retain additional Ordinary Course Professionals from time to time during these chapter 11 cases, as the need arises, and to otherwise supplement the list of Ordinary Course Professionals from time to time as necessary.  In such event, the Debtors propose to file a notice with the Court listing such additional Ordinary Course Professionals, and to attach to such notice the Ordinary Course Professional Affidavits and the Retention Questionnaires for each additional Ordinary Course Professional (collectively, the "**_Supplemental Notice of Ordinary Course Professionals_**"), and to serve the Supplemental Notice of Ordinary Course Professionals on the Reviewing Parties.  The Debtors further propose that the procedures and deadlines for Reviewing Parties to object to the retention, employment, or compensation of the additional Ordinary Course Professionals be the same as those set forth above for the Ordinary Course Professionals listed on **_Exhibit "3"_** to the Proposed Order.

## VI.

## EMPLOYMENT OF ORDINARY COURSE
## PROFESSIONALS SHOULD BE AUTHORIZED

22.      Section 327(a) of the Bankruptcy Code provides that:

Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants,

> appraisers, auctioneers, or other professional persons, that do not
> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11.U.S.C. § 327(a). Section 327(e) of the Bankruptcy Code further provides that "with the

court's approval" a debtor may employ,

> for a specified special purpose, other than to represent the trustee
> in conducting the case, an attorney that has represented the debtor,
> if in the best interest of the estate, and if such attorney does not
> represent or hold any interest adverse to the debtor or to the estate
> with respect to the matter on which such attorney is to be
> employed.

*Id.* at § 327(e).

> 23.    Section 330 of the Bankruptcy Code provides, in pertinent part,
>
> [a]fter notice to the parties in interest and the United States Trustee
> and a hearing, and subject to sections 326, 328, and 329, the court
> may award to a . . . professional person employed under section
> 327 or 1103—
>
> (A)    reasonable compensation for actual, necessary services
> rendered . . . by the professional person, or attorney and by any
> paraprofessional person employed by any such person; and
>
> (B)    reimbursement for actual, necessary expenses.

*Id.* at § 330.

> 24.    Section 105(a) of the Bankruptcy Code provides,
>
> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title. No provision of this
> title providing for the raising of an issue by a party in interest shall be
> construed to preclude the court from, sua sponte, taking any action or
> making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

*Id.* at § 105(a).

> 25.    The Debtors submit that, in light of the additional costs associated with the

preparation of employment applications for professionals who will receive relatively small

amounts of fees in comparison to the size of these chapter 11 cases, it is impractical and economically inefficient for the Debtors to submit individual applications and proposed retention orders for each Ordinary Course Professional as required by Bankruptcy Rules 2014 and 2016. Accordingly, the Debtors request that the Court dispense with the requirement of individual employment applications and retention orders with respect to each Ordinary Course Professional.

26. Although certain of the Ordinary Course Professionals may hold unsecured claims against the Debtors for prepetition services rendered to the Debtors, the Debtors do not believe that any of the Ordinary Course Professionals have an interest materially adverse to the Debtors, their creditors or other parties in interest that should preclude such professional from continuing to represent the Debtors.

27. Retention and payment procedures similar to the procedures proposed herein have been approved by this and other courts and utilized in many chapter 11 cases.[2] *See, e.g.*, *In re Uno Rest. Holdings Corp.*, Ch. 11 Case No. 10-10209 (MG) (Bankr. S.D.N.Y. Feb. 17, 2010) (Docket No. 142); *In re Finlay Enters., Inc.*, Ch. 11 Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Sept. 3, 2009) (Docket No. 191); *In re BearingPoint, Inc.*, Ch. 11 Case No. 09-10691 (REG) (Bankr. S.D.N.Y. Mar. 13, 2009) (Docket No. 227); *In re Lenox Sales, Inc.*, Ch. 11 Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. Dec. 16, 2008) (Docket No. 126); *In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008) (Docket No. 1394); and *In re Movie Gallery, Inc.*, Ch. 11 Case No. 10-30696 (DOT) (Bankr. E.D.Va. Feb. 8, 2010) (Docket No. 119).

---

[2] Because of the voluminous nature of the unreported orders cited herein, such orders are not annexed to the Motion. Copies of these orders are available upon request of Debtors' counsel.

## VII.

## NOTICE

28.     No trustee or examiner has been appointed in these chapter 11 cases.  The

Debtors have served notice of this Motion on:  (i) the Office of the United States Trustee for the

Southern District of New York (Attn:  Brian Masumoto, Esq.); (ii) those creditors holding the

fifty largest unsecured claims against the Debtors' estates; (iii) Sheppard, Mullin, Richter &

Hampton LLP, the attorneys for U.S. Bank National Association, as trustee under that certain

indenture agreement, dated as of October 1, 2009, with respect to the 11.75% Senior Secured

Notes due 2014 issued by Blockbuster Inc. (Attn:  Kyle J. Mathews, Esq.); (iv) The Bank of New

York Trust Company, N.A., as trustee under that certain indenture agreement, dated as of August

20, 2004, with respect to the 9% Senior Subordinated Notes due 2012 issued by Blockbuster Inc.

(Attn:  Corporate Trust); (v) Sidley Austin LLP, attorneys for the lenders under the proposed

Debtor in Possession Revolving Credit Agreement (the "***DIP Facility***") (Attn:  James Seery,

Esq.); (vi) Wilmington Trust FSB as Agent (the "***Agent***") under the DIP Facility (Attn:  Joshua

G. James); (vii) Skadden, Arps, Slate, Meagher & Flom LLP, the attorneys for the Agent (Attn:

Peter J. Neckles, Esq.); and (viii) the Ordinary Course Professionals listed on ***Exhibit "3"*** to the

Proposed Order (collectively, the "***Notice Parties***").  The Debtors submit that no other or further

notice need be provided.

29.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  September 24, 2010
         New York, New York

/s/ Stephen Karotkin
_____

Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

        and

Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone:  (214) 746-7700
Facsimile:  (214) 746-7700

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                 :

In re                               :          **Chapter 11**
                                   :

**BLOCKBUSTER INC.,** *et al.,*[1]        :          **Case No. 10-_____ (_____)**
                                   :
                                   :          **(Jointly Administered)**
                   **Debtors.**            :
---------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 327, AND 330 AUTHORIZING THE DEBTORS TO EMPLOY PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

Upon the Motion, dated September 24, 2010 (the "***Motion***")[2] of Blockbuster

Digital Technologies Inc., its parent Blockbuster Inc., and their debtor affiliates, as debtors and

debtors in possession in the above-captioned chapter 11 cases (collectively, "***Blockbuster***" or the

"***Debtors***"), for an order, pursuant to sections 105(a), 327, and 330 of chapter 11 of title 11 of the

United States Code (the "***Bankruptcy Code***"), requesting authorization to employ professionals

utilized in the ordinary course of business (the "***Ordinary Course Professionals***"), all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and grant

the requested relief in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion being a

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219).

[2]   Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Debtors having provided notice of the Motion and Hearing (as defined below) to the Notice Parties; and it appearing that no other or further notice need be provided; and the Court having held a hearing to consider the requested relief (the "**Hearing**"); and upon the record of the Hearing, and all of the proceedings before the Court, the Court finds and determines that the requested relief is in the best interest of the Debtors, their estates, creditors, and all parties in interest; and that the legal and factual bases set forth in the Motion establish just and sufficient cause to grant the requested relief herein; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED:**

1. The Motion is granted as provided herein.

2. Pursuant to sections 105(a), 327, and 330 of the Bankruptcy Code, to the extent deemed necessary by the Debtors, the Debtors are authorized to employ, *nunc pro tunc* to the Commencement Date, the Ordinary Course Professionals listed on *Exhibit "3"* annexed hereto, in the ordinary course of their businesses, in accordance with the procedures set forth herein.

3. Each Ordinary Course Professional shall provide the Debtors' attorneys within thirty (30) days of the later of (i) the entry of this Order and (ii) the date on which the Ordinary Course Professional commences services for the Debtors: (a) an affidavit (the "**Ordinary Course Professional Affidavit**"), substantially in the form annexed hereto as *Exhibit "1"*, certifying that such Ordinary Course Professional does not represent or hold any interest materially adverse to the Debtors or their estates with respect to the matter on which the professional is to be employed; and (b) a completed retention questionnaire (the "**Retention Questionnaire**"), substantially in the form annexed hereto as *Exhibit "2"*.

4.     The Debtors' attorneys shall file the Ordinary Course Professional Affidavits and Retention Questionnaires with the Court and serve a copy thereof upon the Reviewing Parties (as defined below) within thirty (30) days of the later of (i) the entry of this Order and (ii) the commencement of any work by such Ordinary Course Professional.

5.     The Debtors are authorized to supplement the list of Ordinary Course Professionals from time to time during these chapter 11 cases, as the need arises, and file a notice with the Court listing such additional Ordinary Course Professionals and attaching thereto the relevant Ordinary Course Professional Affidavits and Retention Questionnaires (collectively, the "***Supplemental Notice of Ordinary Course Professionals***"), and serve the Supplemental Notice of Ordinary Course Professionals on the (i) U.S. Trustee (Attn: Brian Masumoto, Esq.), and (ii) attorneys for the Creditors' Committee (together with the Debtors, the "***Reviewing Parties***").

6.     The Reviewing Parties shall have fifteen (15) days after receipt of the Ordinary Course Professional Affidavit and the Retention Questionnaire, in the case of Ordinary Course Professionals listed on ***Exhibit "3"***, attached hereto, or the Supplemental Notice of Ordinary Course Professionals, in the case of any additional Ordinary Course Professionals, to object to the retention, employment or compensation of the Ordinary Course Professional based on the contents of the respective Ordinary Course Professional Affidavit or Retention Questionnaire (the "***Objection Deadline***").

7.     If no objections are filed by the Objection Deadline, the retention, employment, and compensation of the Ordinary Course Professional shall be deemed approved pursuant to section 327 of the Bankruptcy Code without the need for a hearing and without further order from the Court, *nunc pro tunc* to the Commencement Date with respect to the Ordinary Course Professionals listed on ***Exhibit "3"*** or as of the date the Ordinary Course

Professional is retained with respect to additional Ordinary Course Professionals; *provided*, *however*, that if an objection is filed and any such objection cannot be resolved within twenty (20) days, the matter shall be set for a hearing before the Court.

8.      The Debtors are authorized to pay compensation and reimburse expenses to each of the Ordinary Course Professionals retained pursuant to this Order in the customary manner for the full amount billed by each such Ordinary Course Professional upon receipt of reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such professional's standard billing practices (without prejudice to the Debtors' right to dispute any such invoices); *provided*, *however*, that the payments do not exceed $40,000 per month per Ordinary Course Professional.

9.      Payment to any one Ordinary Course Professional shall not exceed $300,000 for the entire period in which these chapter 11 cases are pending, subject to further order of the Court.

10.      In the event payment to any Ordinary Course Professional exceeds $300,000 for the entire period in which these chapter 11 cases are pending, such Ordinary Course Professional shall be required to file a retention application with the Court to be retained as a professional pursuant to section 327 of the Bankruptcy Code.

11.      In the event that an Ordinary Course Professional seeks more than $40,000 in a given month, that professional will be required to file a fee application with respect to such month for the full amount of its fees and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York, any and all orders of the Court, the fee guidelines established by the U.S. Trustee, and such other procedures as may be fixed by order of this Court.

12.    Every ninety (90) days (commencing ninety (90) days from the date of entry of this Order), the Debtors shall file a statement with the Court, and serve the same on the Reviewing Parties, which statement shall include the following information for each Ordinary Course Professional:  (a) the name of such Ordinary Course Professional, (b) for each month during the relevant period, the amounts paid as compensation for services rendered and as reimbursement of expenses incurred by such Ordinary Course Professional, and (c) the aggregate amount paid to date to such Ordinary Course Professional as compensation for services rendered and as reimbursement of expenses incurred.

13.    The Debtors reserve the right to amend the monthly compensation limitations set forth in this Order upon notice and hearing.

14.    This Order shall not apply to any professional retained by the Debtors pursuant to a separate order of the Court.

15.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2010
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Ordinary Course Professional Affidavit

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                  :

In re                                    :      **Chapter 11**
                                                  :

**BLOCKBUSTER INC.,** *et al.,*[1]       :      **Case No. 10-_____ (_____)**
                                                  :

                                                  :      **(Jointly Administered)**

                   **Debtors.**         :
-------------------------------------------------------------x

**AFFIDAVIT AND DISCLOSURE STATEMENT OF _____,**

**ON BEHALF OF _____**

STATE OF _____          )
                              ) ss:
COUNTY OF _____        )

                  _____, being duly sworn, upon his oath, deposes and says:

        1.      I am a [INSERT TITLE] of _____, located at

_____ (the "***Firm***").

        2.      Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and

their debtor affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***" or the

"***Debtors***"), have requested that the Firm provide _____ services to the Debtors, and the

Firm has consented to provide such services.

        3.      The Firm may have performed services in the past and may perform

services in the future, in matters unrelated to these chapter 11 cases, for persons that are parties

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219).

in interest in the Debtors' chapter 11 cases.  As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be claimants or employees of the Debtors, or other parties in interest in these chapter 11 cases.  The Firm does not perform services for any such person in connection with these chapter 11 cases.  In addition, the Firm does not have any relationship with any such person, their attorneys, or accountants that would be materially adverse to the Debtors or their estates.

4.      Neither I, nor any principal of, or professional employed by the Firm has agreed to share or will share any portion of the compensation to be received from the Debtors with any other person other than the principals and regular employees of the Firm.

5.      Neither I, nor any principal of, or professional employed by the Firm, insofar as I have been able to ascertain, holds or represents any interest materially adverse to the Debtors or their estates.

6.      The Debtors owe the Firm $_____ for prepetition services.

7.      [The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Affidavit.][1]

---

[1]      If necessary.

Subscribed and sworn to before me
this ___ day of _____, 2010

_____          Notary Public

# Exhibit 2

# Retention Questionnaire

**In re BLOCKBUSTER INC.,** *et al.*
**Chapter 11 Case No. 10-_____(___)**

<u>RETENTION QUESTIONNAIRE</u>

TO BE COMPLETED BY PROFESSIONALS EMPLOYED BY BLOCKBUSTER INC. ET AL., OR ANY OF ITS DEBTOR AFFILIATES (collectively, the "<u>Debtors</u>")

<u>DO NOT FILE THIS QUESTIONNAIRE WITH THE COURT</u>.
<u>RETURN IT FOR FILING BY THE DEBTORS, TO</u>:

      Weil, Gotshal & Manges LLP
      200 Crescent Court
      Suite 300
      Dallas, Texas 75201
      Attn:   Martin A. Sosland, Esq.
             Regina Merson, Esq.

All questions **must** be answered.  Please use "none," "not applicable," or "N/A," as appropriate. If more space is needed, please complete on a separate page and attach.

    1.     Name and address of firm:

_____

_____

_____

_____

    2.     Date of retention: _____

    3.     Type of services provided (accounting, legal, etc.):

_____

_____

_____

4.     Brief description of services to be provided:

_____

_____

_____

5.     Arrangements for compensation (hourly, contingent, etc.)

_____

     (a)     Average hourly rate (if applicable):
_____

     (b)     Estimated average monthly compensation based on prepetition
retention (if firm was employed prepetition):

_____

6.     Prepetition claims against the Debtors held by the firm:

Amount of claim:          $_____

Date claim arose:          _____

Source of Claim:          _____

7.     Prepetition claims against the Debtors held individually by any member,
associate, or professional employee of the firm:

Name: _____

Status: _____

Amount of Claim:  $_____

Date claim arose: _____

Source of claim: _____

_____

_____

_____

8.  Stock of the Debtors currently held by the firm:

    Kind of shares: _____

    No. of shares:  _____

9.  Stock of the Debtors currently held individually by any member, associate, or professional employee of the firm:

    Name: _____

    Status:_____

    _____

    Kind of shares: _____

    No. of shares:  _____

10. Disclose the nature and provide a brief description of any interest materially adverse to the Debtors or to their estates with respect to the matters on which the above-named firm is to be employed.

    _____

    _____

    _____

    _____

11. Name of individual completing this form:

    _____

**<u>Exhibit 3</u>**

**Ordinary Course Professionals**

| NO. | NAME | ADDRESS | SERVICE |
|---|---|---|---|
| 1 | ALLIANCE INTERNATIONAL LAW OFFICES | 7th Floor, Enterprise Building 54, Chung Shan N. Road, Section 3 Taipei, Taiwan | Corporate / Intellectual Property Counsel |
| 2 | BAKER BOTTS LLP | PO BOX 201626 HOUSTON, TX 77216-1626 UNITED STATES | Intellectual Property Counsel |
| 3 | BAKER MARQUART & CRONE LLP | 10990 WILSHIRE BLVD STE 400 LOS ANGELES, CA 90024 UNITED STATES | Anti-Trust / Litigation Counsel |
| 4 | BINGHAM MCCUTCHEN | PO BOX 3486 BOSTON, MA 02241-3486 UNITED STATES | Labor / Employment Counsel |
| 5 | CASSELS BROCK & BLACKWELL LLP | 2100 SCOTIA PLAZA 40 KING STREET WEST TORONTO, ON M5H3C2 CANADA | Canadian Corporate Counsel |
| 6 | Chiomenti Studio Legale | Via XXIV Maggio, 43 Rome,  00187 ITALY | Corporate Counsel |
| 7 | COWAN LIEBOWITZ & LATMAN PC | 1133 AVENUE OF THE AMERICAS NEW YORK, NY 10036-6799 UNITED STATES | Intellectual Property Counsel |
| 8 | DAVIS POLK & WARDWELL LLP | 1600 EL CAMINO REAL MENLO PARK, CA 94025 UNITED STATES | Anti-Trust Counsel |
| 9 | DURLING & DURLING | PO BOX 527948 MIAMI, FL 33152-7948 UNITED STATES | Intellectual Property Counsel |
| 10 | ESTUDIO BERGSTEIN | Av. 18 de Julio 1117 - 5th. Floor Montevideo,  11100 Uruguay | Corporate / Intellectual Property Counsel |
| 11 | GOWLING LAFLEUR & HENDERSON | BOX 466, STATION D OTTAWA, ON K1P 1C3 CANADA | Intellectual Property Counsel |
| 12 | HAYNES AND BOONE L.L.P. | 2323 VICTORY AVE #700 DALLAS, TX 75219 UNITED STATES | Labor and Employment/ Franchising Counsel |
| 13 | HOET PELAEZ CASTILLO & DUQUE | PATRICIA HOET / LEONOR YANEZ 13464 57TH PLACE S WELLINGTON, FL 33449-6009 UNITED STATES | Intellectual Property Counsel |
| 14 | HUNTON & WILLIAMS LLP | 1111 BRICKELL AVE, STE 2500 MIAMI, FL 33131 UNITED STATES | General Corporate / Outsourcing Counsel |
| 15 | JACKSON WALKER LLP | ATTORNEYS & COUNSELORS PO BOX 130989 DALLAS, TX 75313 0989 UNITED STATES | Labor / Benefits Counsel |

| NO. | NAME | ADDRESS | SERVICE |
|---|---|---|---|
| 16 | JONES DAY | PO BOX 70294<br>CLEVELAND, OH 44190-0294<br>UNITED STATES | Intellectual Property/<br>Licensing Counsel |
| 17 | K&L GATES | 1717 MAIN ST, STE 2800<br>DALLAS, TX 75201<br>UNITED STATES | Intellectual Property/<br>Licensing Counsel |
| 18 | KESTENBAUM EISNER & GORIN LLP | CLIENT TRUST ACCOUNT<br>14401 SYLVAN ST #112<br>VAN NUYS, CA 91401<br>UNITED STATES | Intellectual Property Counsel |
| 19 | RICHARDS LAYTON & FINGER PA | PO BOX 551<br>WILMINGTON, DE 19899<br>UNITED STATES | General Corporate Counsel |
| 20 | SHOOK HARDY & BACON LLP | PO BOX 413635<br>KANSAS CITY, MO 64141-3635<br>UNITED STATES | Litigation Counsel |
| 21 | Stutman Treister | 1901 AVENUE OF THE STARS, 12TH FL<br>LOS ANGELES, CA 90067<br>UNITED STATES | Intellectual Property Counsel |
| 22 | THOMPSON COBURN LLP | PO BOX 18379M<br>ST LOUIS, MO 63195<br>UNITED STATES | Labor / Employment Counsel |
| 23 | WP THOMPSON & COMPANY | PO BOX 19129<br>NEWARK, NJ 7195<br>UNITED STATES | Intellectual Property Counsel |
| 24 | WYMAN ISAACS BLUMENTHAL & LYNNE LLP | BLUMENTHAL & LYNNE, LLP<br>8840 WILSHIRE BLVD, SECOND FLOOR<br>BEVERLY HILLS, CA 90211<br>UNITED STATES | Litigation Counsel |