Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                 :          **Chapter 11**
:
**BLOCKBUSTER INC.,** *et al.,*[1]     :          **Case No. 10-14997 (BRL)**
:
:          **(Jointly Administered)**
          **Debtors.**        :
------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105, 365(a),**
**AND 554(a) REQUESTING APPROVAL OF PROCEDURES**
**FOR THE REJECTION OF UNEXPIRED LEASES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and their

debtor affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***" or the

"***Debtors***"), submit this motion (the "***Motion***") and respectfully represent as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

# I.

## BACKGROUND

1.     On September 23, 2010 (the "***Commencement Date***"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

# II.

## BLOCKBUSTER'S BUSINESS

2.     More than twenty five years ago, Blockbuster became the first national retail chain provider of in-home entertainment, with its blue and gold torn-ticket logo symbolizing the decision by consumers to forego the movie theatre experience and "Make it a Blockbuster Night"® by staying home to watch the latest in new movie title releases from the convenience of their living rooms.  Since its incorporation in 1982, Blockbuster has expanded its retail business operations domestically and abroad via a mix of corporate and franchisee-owned stores, with, as of August 29, 2010, over 5,600 stores in the United States and its territories and 16 other countries.  To manage its business and properties, Blockbuster employs approximately 25,500 employees who perform a variety of critical functions, including customer service, inventory control, management, leasing, accounting, marketing, purchasing and sales, shipping, tax, technical services, and legal services.

### A.     Domestic Operations

3.     Blockbuster operates its domestic media entertainment business through three principal channels of distribution: (i) retail; (ii) by-mail; and (iii) digital.  As a result of this

multi-channel distribution scheme, Blockbuster offers customers a value-priced entertainment experience, combining the broad array of products offered by a specialty or online retailer with the convenience of a local neighborhood retailer.

### 1. *Retail Channel*

4.    The convenience offered to customers by having Blockbuster stores located in their cities, towns, and neighborhoods has been instrumental in establishing the BLOCKBUSTER® brand.  As of August 29, 2010, there were 3,306 stores operating under the BLOCKBUSTER® brand in the United States and its territories.  Of these stores, 2,924 are owned and operated by Blockbuster Inc. and 382 stores are owned and operated by franchisees. Blockbuster stores offer movies and games (collectively, "***Product***") for rent and purchase (both new and previously-viewed) as well as other entertainment-related consumer electronics and accessories, game consoles, confection, and movie-related merchandise for purchase. Additionally, approximately 240 of these locations include store-in-store game locations operating under the GAME RUSH® brand.

5.    In step with its continued commitment to be the premier retailer of new release movies, Blockbuster has recently focused on promoting its rapidly emerging availability advantage over certain of its key competitors, who do not have access to key new Product for the initial 28 days of release (the "***28-day Window***").  In 2009, the 28-day Window was imposed by certain movie studios on the rental of newly released titles after the initial distribution date of a title so as to diminish the effect of rental on the retail sale of such titles.  Given that a substantial portion of Blockbuster's rental revenues are derived from the rental of such new release Product, Blockbuster's advantage with respect to the 28-day Window is expected to maintain and improve its customer preference and loyalty in comparison to its competitors.

6.     To expand its retail reach, in early 2009, Blockbuster entered into an agreement with NCR Corporation ("***NCR***") to launch BLOCKBUSTER Express® branded vending kiosks.  Through this partnership, NCR builds and maintains the kiosks and pays royalties to Blockbuster on the revenues generated.  This agreement allows Blockbuster to compete in the popular vending kiosk channel without incurring capital expenditures and start-up costs on its own account, while making Product more convenient and less expensive for its customers.  As of September 19, 2010, there were approximately 6,630 kiosks operating under the BLOCKBUSTER Express® brand throughout the United States and its territories.

### 2.     *By-Mail Channel*

7.     Blockbuster offers a by-mail subscription program through its retail chain and through its website, www.blockbuster.com, whereby customers rent Product that is delivered directly to them by-mail.  The by-mail subscription program provides customers access to substantially more Product than is available in its stores, and allows Blockbuster to compete directly with certain of its key competitors.  In contrast to its competitors, Blockbuster offers:  (i) a wide selection of games and (ii) Blu-ray Product at no additional charge.  Through its BLOCKBUSTER Total Access™ program ("***Total Access***"), Blockbuster also offers its by-mail subscribers the ability to exchange up to five online movie rentals for in-store movies at its retail locations for only a few dollars more per month.  The by-mail subscription program allows Blockbuster to reach customers located in geographic areas where it does not operate store locations.

8.     In order to promote the synergies between its retail and by-mail channels of distribution and to profitably grow its by-mail customer base, Blockbuster recently launched a marketing partnership with Comcast Cable Corporation ("***Comcast***").  This partnership includes the launch of *DVDs by Mail,* a co-branded by-mail offer available at www.DVDsbymail.com.

As part of the marketing partnership, Comcast customers are now being offered Blockbuster's by-mail services (both by-mail and Total Access-like products) through the new co-branded web site as an additional service within their Comcast package. On the site, customers can browse Blockbuster's vast library of more than 95,000 movie and television titles, create a queue of titles they want to rent and then get the DVDs through the mail or at a Blockbuster retail store, where they can also exchange their rentals. In turn, Blockbuster is installing Comcast-dedicated kiosks in select stores that allow customers to quickly and easily learn about, and sign up for, Comcast services.

### 3. *Digital Channel*

9.      As new distribution channels have emerged and as consumer interest in accessing Product in new ways has grown, Blockbuster has begun to expand its footprint into the digital realm. To that end, Blockbuster's digital business currently offers its customers on-demand access to one of the largest libraries of digital movies for both rental and sale through multiple formats. Blockbuster began its digital initiatives with the purchase of Movielink from a consortium of movie studios in 2007.

10.      Through Blockbuster's website, www.blockbuster.com, Blockbuster customers can download and view movies on their personal computers after downloading Blockbuster's personal computer application. In addition, with the convergence of media entertainment and electronic devices, Blockbuster recently entered into strategic partnerships with certain global third party consumer electronics device developers – including Samsung, Philips, TiVo, and Toshiba – to digitally deliver media entertainment to its customers through consumer electronics such as Internet-connected TVs and Blu-ray players through Blockbuster applications embedded in these devices. In the mobile space, Blockbuster has partnered with device makers such as Motorola and HTC, embedding Blockbuster's digital applications in its

popular new models for Verizon and T-Mobile. Blockbuster is also pursuing partnerships with Cable TV providers to offer Blockbuster-branded video-on-demand services inside an operator's set-top-box infrastructure.

### B. International Operations

11.  Blockbuster's international operations, which serve as ambassadors of the BLOCKBUSTER® brand, are comprised of all store operations outside the United States and its territories, including: (i) owned retail operations in Canada, the United Kingdom, Denmark, Italy, Mexico, Argentina, and Uruguay; and (ii) franchised retail operations in Australia, Brazil, Chile, Columbia, Guatemala, Israel, Italy, Mexico, New Zealand, Panama, Portugal, and Taiwan. As of August 29, 2010, Blockbuster had 2,333 stores in 16 markets outside of the United States operating under the BLOCKBUSTER® brand, the GAME RUSH® brand, and other brand names owned by Blockbuster. During 2008 and 2009, 29% and 30% of Blockbuster's revenues were generated outside of the United States, respectively. Blockbuster's international operations have historically been more dependent than the domestic operations on retail sales and, in particular, sales of games, as opposed to revenue generated from rentals.

### C. Financials

12.  As of July 4, 2010, the Debtors, on a consolidated basis, reported approximately $1.2 billion in total assets and approximately $1.6 billion in total liabilities. For 2009, Blockbuster reported consolidated revenues of approximately $4.1 billion and net cash from operating activities of $29.3 million.

13.  Additional information regarding Blockbuster's business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the *Affidavit of Jeffery J. Stegenga Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* (the "**First Day Affidavit**") filed contemporaneously herewith.

### III.

### JURISDICTION

14.     This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV.

### RELIEF REQUESTED

15.     The Debtors request, pursuant to sections 105(a) and 363 of the

Bankruptcy Code, entry of an order authorizing (i) the proposed expedited procedures for the

future rejection of burdensome unexpired leases (the "***Rejection Procedures***"), and (ii) authority

to take any and all actions as may be necessary and appropriate to implement and effectuate the

Rejection Procedures as approved by this Court, including the abandonment of personal property

pursuant to section 554(a) of the Bankruptcy Code.  A proposed order is attached hereto as

***Exhibit*** "***A***."

### V.

### THE PROPOSED REJECTION PROCEDURES

16.     The Debtors are parties to thousands of unexpired leases, including real

property leases for their retail locations (each a "***Lease***" and collectively the "***Leases***").

Although the Debtors are still reviewing the Leases and may assume certain Leases in

connection with the administration of these cases or a chapter 11 plan, in light of the need to

close many underperforming stores, there will inevitably be a large number of Leases that no

longer provide any benefit to their estates and should be rejected.  Consistent with the practice in

large debtor-retailer chapter 11 cases, and in an effort to conserve the resources of these estates,

the Debtors seek approval of the procedures described below to facilitate an expeditious and efficient process for rejecting burdensome Leases.

17. The Debtors request authority to reject any or all of their Leases, pursuant to Bankruptcy Code section 365(a), as an appropriate exercise of their business judgment through the following Rejection Procedures:

a. The Debtors will file on the docket for these chapter 11 cases a notice (the "***Rejection Notice***") setting forth the proposed rejection of one or more Leases,[2] and will serve the Rejection Notice via Federal Express or other overnight mail delivery service and fax (where available) on: (i) the non-Debtor counter party (and its counsel, if known) under the respective Lease at the last known address available to the Debtors, (ii) counsel to the statutory committee of unsecured creditors appointed in these chapter 11 cases (the "***Creditors' Committee***"), (iii) Sheppard, Mullin, Richter & Hampton LLP, the attorneys for U.S. Bank National Association, as trustee under that certain indenture agreement dated as of October 1, 2009, with respect to the 11.75% Senior Secured Notes due 2014 issued by Blockbuster Inc. (the "***Senior Secured Notes***") (Attn:  Kyle J. Mathews, Esq.); (iv) The Bank of New York Trust Company, N.A., as trustee under that certain indenture agreement, dated as of August 20, 2004, with respect to the 9% Senior Subordinated Notes due 2012 (the "***Senior Subordinated Notes***") issued by Blockbuster Inc. (Attn:  Corporate Trust); (v) Sidley Austin LLP, attorneys for the lenders under the Debtor in Possession Revolving Credit Agreement (Attn:  James Seery, Esq.); and the United States Trustee for the Southern District of New York (the "***U.S. Trustee***").

b. The Rejection Notice shall be substantially in the form of ***Exhibit "1"*** annexed to the proposed order.  With respect to non-residential real property Leases to be rejected, the Rejection Notice shall set forth the following information, based on the best of the Debtors' information: (i) the street address of real property that is the subject of the Lease, (ii) the remaining term of the Lease, and (iii) the name and address of the affected landlord.  With respect to personal property Leases to be rejected, the Rejection Notice shall set forth the following information, based on the best of the Debtors' information: (i) the name and address of the Lease

---

[2] Consistent with Rule 6006(f) of the Bankruptcy Rules, however, no more than 100 unexpired Leases will be contained on any one Rejection Notice.

counterparty, and (ii) a brief description of the personal property Lease to be rejected. All Rejection Notices will be accompanied by a copy of the Order granting this Motion.

c.     Should a party in interest object to the Debtors' proposed rejection of a Lease, such party must file and serve a written objection so that such objection is filed with this Court and *actually received* by the following parties (the "***Objection Notice Parties***") no later than ten calendar days after the date the Rejection Notice is filed: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Stephen Karotkin, Esq. and Debora Hoehne, Esq.); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian Masumoto, Esq.); (iii) the attorneys for the Creditors' Committee; (iv) the attorneys for the lenders under the Debtor in Possession Revolving Credit Agreement, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: James Seery, Esq.); and (v) the Indenture Trustees in respect of the Senior Secured Notes and the Senior subordinated Notes.

d.     If no objection to a Rejection Notice is timely filed and served, the applicable Lease shall be deemed rejected on the effective date set forth in the Rejection Notice, or, if no such date is set forth, the date the Rejection Notice is filed with the Court (the "***Rejection Date***").

e.     If a timely objection to a Rejection Notice is filed and received in accordance with the Rejection Procedures, the Debtors shall schedule a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties. If the Court ultimately upholds the Debtors' determination to reject the applicable Lease, then the applicable Lease shall be deemed rejected (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

f.     Claims arising out of the rejection of Leases must be filed, on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases or (ii) forty-five (45) days after the Rejection Date. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages and from participating in any distributions that may be made in connection with these chapter 11 cases.

g.     If the Debtors have deposited funds with a Lease counterparty as a security deposit or other arrangement, such Lease counterparty

may not setoff or otherwise use such deposit without the prior authority of the Court or agreement of the parties.

18.    The Debtors also request authority, prior to and through the Rejection Date, to remove, in their sole discretion, from premises that are the subject of any rejected Lease, consistent with the Debtors' ownership rights or other property interests therein, personal property that the Debtors have installed in or about the leased premises (such as equipment, fixtures, furniture and other personal property), which property is either owned by the Debtors, leased by the Debtors from third parties, or subject to any equipment financing agreements with third parties.[3]  Moreover, to the extent that the Debtors determine that any interest of the Debtors in such property has little or no value or that the preservation thereof will be burdensome to their estates compared with the expense of removing and storing such property, the Debtors request authority to abandon, in their sole discretion, such property remaining at a premises subject to a rejected Lease as of the Rejection Date.  No personal property subject to a true lease shall be abandoned without first rejecting the underlying lease for such property.  If the Debtors propose to abandon personal property that is (i) subject to a true lease and (ii) located at a premises that is the subject of a Rejection Notice, such Rejection Notice shall indicate same, and the Debtors propose that the automatic stay be deemed modified to permit the respective personal property lessor to retrieve such abandoned property within seven (7) days of the date the Rejection Notice is filed (the "***Collection Deadline***").  Should the Debtors propose to abandon such property, the foregoing notice and objection procedures will apply to the personal property lessor and the Rejection Notice will set forth a description of the property proposed to be abandoned, as required by Rule 6007-1 of the Local Bankruptcy Rules for the Southern District of New York and shall be served on the personal property lessor.  In all events, including if property is not

---

[3]    The Debtors will not remove any property that is owned by an applicable landlord.

retrieved by the Collection Deadline, the Debtors request that the property be deemed abandoned pursuant to section 554 of the Bankruptcy Code as of the Rejection Date and, except as set forth above, that the landlord(s) be authorized to dispose of such abandoned property without liability to any third party claiming an interest in such abandoned property.

19.     In connection with the foregoing Rejection Procedures, the Debtors also request that they be authorized to execute and deliver all instruments and documents, and take such other actions as may be necessary or appropriate to implement and effectuate the Rejection Procedures as approved by this Court and that entry of the requested order be without prejudice to the Debtors' right to seek further, other, or different relief regarding the Leases.

20.     The above proposed Rejection Procedures will streamline the Debtors' ability to reject burdensome Leases, and thereby minimize unnecessary post-petition obligations, while also providing Lease counterparties with adequate notice of the rejection of any such Lease and an opportunity to object to such rejection within a reasonable time period.  Accordingly, the Debtors respectfully submit that the Rejection Procedures should be approved as they balance the respective interests of the parties, are an appropriate exercise of the Debtors' business judgment, and constitute a common form of relief in many bankruptcy cases in this and other jurisdictions.

## V.

## BASIS FOR RELIEF REQUESTED

21.     Section 365 of the Bankruptcy Code empowers a debtor in possession, subject to court approval, to reject an executory contract or unexpired lease.  11 U.S.C. § 365(a). In determining whether the rejection of an unexpired lease or executory contract should be authorized, courts apply the "business judgment" standard.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

Rejection is appropriate based solely on the resultant benefit to the estate. *See In re Stable Mews Assocs., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). Therefore, the business judgment standard is satisfied when a debtor determines that rejection will benefit the estate. *See In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

22.     The rejection of unnecessary or burdensome Leases and the attendant reduction in the estates' administrative costs reflects the Debtors' exercise of sound business judgment. Establishing the Rejection Procedures will minimize the Debtors' postpetition obligations and promote the efficiency and overall cost-effectiveness of the Debtors' reorganization. Further, the Rejection Procedures will save substantial legal expense and Court time that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Lease that the Debtors determine should be rejected.

23.     The counterparties to the Leases will not be prejudiced by the Rejection Procedures because, upon receipt of a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject their respective Lease and of the effective date of the rejection. *See, e.g., In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject). Additionally, in the case of unexpired leases of nonresidential real property, the Debtors will likely vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of the property. *See, e.g., Adelphia Bus. Solutions, Inc. v.*

*Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding Bankruptcy Court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp,* 2000 U.S. Dist. LEXIS 12663 at *44-46 (D.N.J. Aug. 31, 2001) (holding Bankruptcy Court properly exercised its discretion in adjusting the effective date of rejection from the date the Court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible). The Debtors submit that the proposed Rejection Procedures balance the need for an expeditious reduction of burdensome costs to the Debtors' estates while providing appropriate notice of the proposed rejection to the Lease counterparties.

24. With respect to the Debtors' request for authority to abandon property, the Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied. Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a). Before authorizing abandonment of property, a Bankruptcy Court must find either: (i) the property is burdensome to the estate or (ii) the property is both of inconsequential value and inconsequential benefit to the estate. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 497 (1986); *In re Texaco, Inc.*, 90 B.R. 38, 44 (S.D.N.Y. 1988); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 882 n.7 (Bankr. S.D.N.Y. 1990). The personal property proposed to be abandoned in connection with any future rejections of real property

Leases would primarily consist of fixtures, furniture, advertising displays, and other office and store equipment that is (a) of minimal or no material value or benefit to the Debtors' estates and/or (b) burdensome insofar as the costs and expenses of removal and storage of such property are likely to exceed the net proceeds realizable from their sale.

25.     Finally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Debtors submit that the implementation of the proposed procedures is appropriate in these chapter 11 cases and is well within the Court's equitable powers under section 105 of the Bankruptcy Code.[4]  *See, e.g.*, *In re Movie Gallery, Inc.*, Ch. 11 Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010) (granting similar relief); *In re Finlay Enters.*, Ch. 11 Case No. 09-14873 (JMP) (Bankr. S.D.N.Y. Oct. 29, 2009) (same); *In re Lenox Sales, Inc.*, Ch. 11 Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. May 6, 2009) (same); *In re Gottschalks Inc.*, Ch. 11 Case No. 09-10157 (KJC) (Bankr. D. Del. March 3, 2009) (same); *In re Stone Barn Manhattan LLC*, Ch. 11 Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. Sept. 25, 2008) (same).

## VI.

## <u>NOTICE</u>

26.     No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on: (i) the Office of the United States Trustee for the Southern District of New York (Attn: Brian Masumoto, Esq.); (ii) those creditors holding the fifty largest unsecured claims against the Debtors' estates; (iii) Sheppard, Mullin, Richter & Hampton LLP, the attorneys for U.S. Bank National Association, as trustee under that certain

---

[4]     Because of the voluminous nature of the unreported orders cited herein, such orders are not annexed to the Motion.  Copies of these orders are available upon request of Debtors' counsel.

indenture agreement, dated as of October 1, 2009, with respect to the 11.75% Senior Secured Notes due 2014 issued by Blockbuster Inc. (Attn: Kyle J. Mathews, Esq.); (iv) The Bank of New York Trust Company, N.A., as trustee under that certain indenture agreement, dated as of August 20, 2004, with respect to the 9% Senior Subordinated Notes due 2012 issued by Blockbuster Inc. (Attn: Corporate Trust); (v) Sidley Austin LLP, attorneys for the lenders under the proposed Debtor in Possession Revolving Credit Agreement (the "*DIP Facility*") (Attn: James Seery, Esq.); (vi) Wilmington Trust FSB as Agent (the "*Agent*") under the DIP Facility (Attn: Joshua G. James); (vii) Skadden, Arps, Slate, Meagher & Flom LLP, the attorneys for the Agent (Attn: Peter J. Neckles, Esq.); and (viii) any Lease counterparty (collectively, the "*Notice Parties*"). The Debtors submit that no other or further notice need be provided.

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  September 24, 2010
         New York, New York

/s/ Stephen Karotkin
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

and

Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Telephone:  (214) 746-7700
Facsimile:   (214) 746-7700

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                                    :
**In re**                                           :          **Chapter 11**
                                                    :
**BLOCKBUSTER INC., *et al.*,**[1]                  :          **Case No. 10-14997 (BRL)**
                                                    :
                                                    :          **(Jointly Administered)**
                    **Debtors.**                    :
---------------------------------------------------------------x

## ORDER ESTABLISHING AND AUTHORIZING PROCEDURES FOR THE REJECTION OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Upon the motion, dated September 24, 2010 (the "***Motion***")[2] of Blockbuster

Digital Technologies Inc., its parent Blockbuster Inc., and their debtor affiliates, as debtors and

debtors in possession (collectively, "***Blockbuster***" or the "***Debtors***"), pursuant to sections 105

and 365(a) of the title 11 of the United States Code (the "***Bankruptcy Code***"), requesting

authorization to establish procedures for the rejection of unexpired leases (each a "***Lease***" and

collectively, the "***Leases***"), all as more fully set forth in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219).

[2]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

28 U.S.C. §§ 1408 and 1409; and the Debtors having provided notice of the Motion and Hearing

(as defined below) to the Notice Parties; and the Court having held a hearing to consider the

requested relief (the "*Hearing*"); and upon the record of the Hearing, and all of the proceedings

before the Court, the Court finds and determines that the requested relief is in the best interests of

the Debtors, their estates, creditors, and all parties in interest; the Debtors have provided due and

proper notice of the Motion and Hearing and no further notice is necessary; the legal and factual

bases set forth in the Motion establish just and sufficient cause to grant the requested relief

herein; **IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.　　　The Motion is granted as provided herein.

2.　　　The following procedures (the "*Rejection Procedures*") for the Debtors'

rejection of Leases pursuant to section 365(a) of the Bankruptcy Code are hereby authorized and

approved and established in the Debtors' chapter 11 cases:

>  a.　　The Debtors will file on the docket for these chapter 11 cases a
>  notice (the "*Rejection Notice*") setting forth the proposed rejection
>  of one or more Leases,[3] and will serve the Rejection Notice via
>  Federal Express or other overnight mail delivery service and fax
>  (where available) on: (i) the non-Debtor counterparty (and its
>  counsel, if known) under the respective Lease at the last known
>  address available to the Debtors, (ii) counsel to the statutory
>  committee of unsecured creditors appointed in these chapter 11
>  cases (the "*Creditors' Committee*"), (iii) Sheppard, Mullin, Richter
>  & Hampton LLP, the attorneys for U.S. Bank National
>  Association, as trustee under that certain indenture agreement,
>  dated as of October 1, 2009, with respect to the 11.75% Senior
>  Secured Notes due 2014 (the "*Senior Secured Notes*") issued by
>  Blockbuster Inc. (Attn:  Kyle J. Mathews, Esq.); (iv) The Bank of
>  New York Trust Company, N.A., as trustee under that certain
>  indenture agreement, dated as of August 20, 2004, with respect to
>  the 9% Senior Subordinated Notes due 2012 (the "*Senior
>  Subordinated Notes*") issued by Blockbuster Inc. (Attn:  Corporate
>  Trust), (v) the attorneys for the lenders under the Debtor in

---

[3]　Consistent with Rule 6006(f) of the Bankruptcy Rules, however, no more than 100 unexpired Leases
will be contained on any one Rejection Notice.

Possession Revolving Credit Agreement, and (v) the United States Trustee for the Southern District of New York (the "***U.S. Trustee***") (collectively, the "***Rejection Notice Parties***").

b.      The Rejection Notice shall be in the form of ***Exhibit "1"*** annexed hereto.  With respect to non-residential real property Leases to be rejected, the Rejection Notice shall set forth the following information, based on the best of the Debtors' information: (i) the street address of real property that is the subject of the Lease, (ii) the remaining term of the Lease, and (iii) the name and address of the affected landlord.  With respect to personal property Leases to be rejected, the Rejection Notice shall set forth the following information, based on the best of the Debtors' information: (i) the name and address of the Lease counterparty, and (ii) a brief description of the personal property Lease to be rejected.  All Rejection Notices will be accompanied by a copy of this Order.

c.      Should a party in interest object to the Debtors' proposed rejection of a Lease, such party must file and serve a written objection so that such objection is filed with this Court and *actually received* by the following parties (the "***Objection Notice Parties***") no later than ten calendar days after the date the Rejection Notice is filed: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Stephen Karotkin, Esq. and Debora Hoehne, Esq.); (ii) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian Masumoto, Esq.); (iii) the attorneys for the Creditors' Committee; (iv) the attorneys for the lenders under the Debtor in Possession Revolving Credit Agreement, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019 (Attn:  James Seery, Esq.); and (v) the Indenture Trustees in respect of the Senior Secured Notes and the Senior Subordinated Notes.

d.      If no objection to a Rejection Notice is timely filed, the applicable Lease shall be deemed rejected on the effective date set forth in the Rejection Notice, or, if no such date is set forth, the date the Rejection Notice is filed with the Court (the "***Rejection Date***").

e.      If a timely objection to a Rejection Notice is filed and received in accordance with the Rejection Procedures, the Debtors shall schedule a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties.  If the Court ultimately upholds the Debtors' determination to reject the applicable Lease, then the applicable Lease shall be deemed rejected (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

f.      Claims arising out of the rejection of Leases must be filed, on or before the later of (i) the deadline for filing proofs of claim established by the Court in the Debtors' cases or (ii) forty-five (45) days after the Rejection Date. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for rejection damages and from participating in any distributions that may be made in connection with these chapter 11 cases.

g.      If the Debtors have deposited funds with a Lease counterparty as a security deposit or other arrangement, such Lease counterparty may not setoff or otherwise use such deposit without the prior authority of the Court or agreement of the parties.

3.      Pursuant to section 365(a) of the Bankruptcy Code, the Debtors' rejection of Leases in accordance with the Rejection Procedures set forth in this Order is hereby approved and such Rejection Procedures shall govern the rejection of Leases, except to the extent the Debtors and a Lease counterparty have agreed otherwise in writing, in which case the terms of such agreement shall govern the rejection of Leases with respect to such counterparty.

4.      Prior to and through the Rejection Date, the Debtors are authorized to remove, in their sole discretion, from premises that are the subject of any rejected Lease, consistent with the Debtors' ownership rights or other property interests therein, any personal property that the Debtors have installed in or about the leased premises (such as equipment, fixtures, furniture and other personal property), which property is either owned by the Debtors, leased by the Debtors from third parties, or subject to any equipment financing agreements with third parties; *provided*, *however*, that the Debtors will not remove any property that is owned by an applicable landlord.

5.      To the extent that the Debtors determine that property located at premises that are the subject of any rejected Lease has little or no value or that the preservation thereof will be burdensome to their estates compared with the expense of removing and storing such property, the Debtors are authorized to abandon, in their sole discretion, such property as of the

Rejection Date, pursuant to section 554 of the Bankruptcy Code. Property proposed to be abandoned shall be described with reasonable specificity in the applicable Rejection Notice.

6. No personal property subject to a true lease shall be abandoned without first rejecting the underlying lease for such property. If the Debtors propose to abandon personal property that is (i) subject to a true lease and (ii) located at a premises that is the subject of a Rejection Notice, such Rejection Notice shall indicate same, and the automatic stay shall be deemed modified to permit the respective personal property lessor to retrieve such abandoned property within seven (7) days of the date the Rejection Notice is filed (the "***Collection Deadline***"). Any such Rejection Notice shall be served on the personal property lessor at the same time it is served on all Rejection Notice Parties.

7. Any property located on the premises of a Lease that is rejected in accordance with the terms hereof that is not retrieved by the later of the Rejection Date or the Collection Deadline shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code without further order of this Court free and clear of any interests of any other party and any landlord or other designee shall be free to dispose of same without liability.

8. The Debtors are hereby authorized to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the Rejection Procedures as approved by this Order.

9. Entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Leases pursuant to, among other things, section 365 of the Bankruptcy Code. Notwithstanding the relief granted herein and any actions taken hereunder, nothing in the Motion or this Order shall constitute, nor is it intended to constitute: (a) an admission as to the validity or priority of

5

any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an assumption or adoption of any Lease pursuant to section 365 of the Bankruptcy Code.

        10.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2010
      New York, New York


                         _____
                         UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

## Rejection Notice

Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re** : **Chapter 11**
:
**BLOCKBUSTER INC., et al.,**[1] : **Case No. 10-14997 (BRL)**
:
: **(Jointly Administered)**
**Debtors.** :
---------------------------------------------------------------x

## NOTICE OF REJECTION OF UNEXPIRED LEASES

     **PLEASE TAKE NOTICE** that on _____, 2010, the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") entered an order (the "***Procedures Order***") in the above-referenced chapter 11 cases of Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and their debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***"), among other things, approving expedited procedures (the "***Rejection Procedures***") for the rejection of unexpired leases (each a "***Lease***" and collectively, the "***Leases***").

     **PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the Procedures Order, the Debtors hereby provide notice of their intent to reject the below-referenced Leases. Pursuant to the terms of the Procedures Order, unless a written objection is filed and served in accordance with the terms of the Procedures Order, the following Leases will be rejected pursuant to 11 U.S.C. § 365(a), effective as of the later of (a) the date of this Notice, unless otherwise agreed, in writing, by the Debtors and the counterparty to the applicable Lease,

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B² LLC (5219).

(b) the date of the surrender of the leased property to the affected lessor (where applicable), or
(c) the Effective Date of Rejection if one is set forth below in this Notice (the "***Rejection Date***"):

## NON-RESIDENTIAL REAL PROPERTY LEASES

| Address of Subject Property | Remaining Lease Term | Landlord Name / Address | Effective Date of Rejection |
|---|---|---|---|
| | | | |

## PERSONAL PROPERTY LEASES

| Title of Lease | Lease Counterparty (Name / Address) | Description of Lease | Effective Date of Rejection |
|---|---|---|---|
| | | | |

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to this Notice must be filed and served so that such objection is filed with the Bankruptcy Court and *actually received* by the following parties no later than ten (10) days after the date of this Notice set forth below: (i) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153-0119 (Attn: Stephen Karotkin, Esq., and Debora Hoehne, Esq.); (ii) the U.S. Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Brian Masumoto, Esq.); (iii) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases; (iv) Sheppard, Mullin, Richter & Hampton LLP, 333 South Hope Street, Forty-Third Floor, Los Angeles, CA 90071, the attorneys for U.S. Bank National Association, as trustee under that certain indenture agreement dated as of October 1, 2009, with respect to the 11.75% Senior Secured Notes due 2014 issued by Blockbuster Inc. (Attn: Kyle J. Mathews, Esq.); (v) The Bank of New York Trust Company, N.A., as trustee under that certain indenture agreement, dated as of August 20, 2004, with respect to the 9% Senior Subordinated Notes due 2012 issued by Blockbuster Inc. (Attn: Corporate Trust); and (vi) Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, attorneys for the lenders under the Debtor in Possession Revolving Credit Agreement (Attn: James Seery, Esq.) (collectively, the "***Objection Notice Parties***").

**PLEASE TAKE FURTHER NOTICE** that if an objection to this Notice is timely filed and served, the Debtors shall seek a hearing on such objection and shall provide at least five (5) days' notice of such hearing to the objecting party and the Objection Notice Parties. If such objection is overruled by the Court or withdrawn, the rejection of the Lease shall be deemed effective (a) as of the Rejection Date, or (b) as otherwise determined by the Court as set forth in any order overruling such objection.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Procedures Order, if the Debtors have deposited monies with the Lease counterparty as a security deposit or otherwise, the Lease counterparty may not setoff or otherwise use such deposit without the prior authorization of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the Procedures Order, for any claim that you may assert against the Debtors as a result of the rejection of any Lease, you must submit a proof of claim for damages arising from such rejection, on or before the later of (i) the deadline for filing proofs of claim established by the

Court in the Debtors' cases or (ii) forty-five (45) days after the Rejection Date. If you do not timely file such proof of claim, you shall be forever barred from asserting a claim for rejection damages arising from the rejection of the above-referenced Lease or from participating in any distributions that may be made in connection with these chapter 11 cases.

Dated: _____, 2010
New York, New York

_____
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

and

Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone: (214) 746-7700
Facsimile: (214) 746-7700