UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
                                        :
In re                                   :         Case No. 10-14997 (BRL)
                                        :
BLOCKBUSTER INC., et al.,               :
                                        :         Chapter 11
                                        :
        Debtors.                        :         (Jointly Administered)
                                        :
———————————————————————x

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION PURSUANT TO 11 U.S.C. §327(A), 328(A), AND 330, FED. R. BANKR. p. 2014 (A) AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1 TO RETAIN ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS _NUNC PRO TUNC_ TO THE COMMENCEMENT DATE**

**TO THE HONORABLE BURTON R. LIFLAND, BANKRUPTCY JUDGE:**

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee") submits the following objection to the Debtors' application to retain Rotschild Inc. ("Rothschild") as financial advisor and investment banker to the Debtors filed on September 23, 2010 (the "Rothschild Retention Application"). See ECF Doc. No. 23. In support of her objection, the United States Trustee states as follows:

**INTRODUCTION**

The Rothschild Retention Application contains impermissible provisions that should be stricken before the retention of this professional by the Debtors' estates may be approved. More specifically, Rothschild seeks to (i) require the Debtors' estates to pay for its overhead legal expenses and (ii) require the Debtors to indemnify its affiliates and other parties that have not

-1-

been retained by court order. As discussed below, such overreaching should not be permitted.[1]

## BACKGROUND

### The Chapter 11 Filing

1.      On September 23, 2010, (the "Petition Date"), Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and their debtor affiliates, as debtors and debtors-in-possession (collectively, "Blockbuster" or the "Debtors") each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Blockbuster is one of the main retail chain provider of in-home entertainment. See Affidavit of Jefferey J. Stegenga Pursuant to Local Bankruptcy Rule 1007-2 at ¶ 6, ECF No. 3. The Debtors operate the domestic media entertainment business through three principal channels of distribution: (a) retail; (b) by-mail; and (c) digital. Id. at ¶8. Blockbuster's international operations are comprised of all store operations outside the United States and its territories. Id. at ¶29.

3.      On October 1, 2010, the United States Trustee formed an official committee of unsecured creditors (the "Committee"). ECF No. 153.

### The Rothschild Retention Applications

---

[1] The United States Trustee has resolved other issues raised with respect to the Rothschild Retention Application with respect to, among other things: (a) limitation of the scope of the services to be provided by Rothschild and requirement of additional disclosures or applications with respect to any additional services to be provided; (b) carving-out from Rothschild's limitation of liability certain actions such as gross negligence and willful misconduct. These issues and others identified by the United States Trustee and communicated to counsel will be addressed by Rothschild's filing a supplemental affidavit and a revised proposed order addressing the revisions and comments provided by the United States Trustee.

4. On September 23, 2010, the Debtors moved to retain Rothschild as their investment bankers and financial advisors. See Rothshcild Retention Application, ECF Doc. No. 23.

5. Pursuant to the Rothschild Retention Application, Rotschild will receive, among other things, (i) a $125,000 monthly fee, (ii) a new capital fee equal to various percentages (ranging between 1% to 4% depending on the nature of the capital or refinancing raised) of the gross cash proceeds of any new capital or refinancing capital raised,[2] (iii) a recapitalization fee of $3,100,000 payable upon the consummation of a "Recapitalization Transaction"),[3] (iv) a mergers and acquisitions fee, payable at the closing of any "M&A Transaction" and based on a variable percentage of aggregate consideration that ranges from 1.75% of aggregate consideration of $100,000,000 to 0.70% of aggregate consideration of $1,000,000,000.[4] See Rothschild Retention Application at ¶¶ 27-30, Engagement Letter at § 4. In the event that Blockbuster enters into a transaction that constitutes both a Recapitalization Transaction and an M&A Transaction, Rothschild shall be entitled only to the greater of the recapitalization fee or the mergers and acquisitions fee. Id. at ¶31.

6. Rothschild will credit (a) 50% of the monthly fees paid in excess of $525,000

---

[2] No new capital fee, however, would be earned with respect to any capital provided by Blockbuster's existing creditors or shareholders, including any reinstatement of existing debt on a consensual or non-consensual basis pursuant to a Plan or otherwise. See Rothschild Retention Application at ¶28.

[3] Unless otherwise defined herein, capitalized terms shall have the meaning assigned to them in the Rothschild Retention Application or the engagement letter dated as of February 8, 2010 attached thereto (the "Engagement Letter").

[4] In the event that Blockbuster consummates multiple transactions that constitute M&A Transactions, the M&A Fee shall be determined on the aggregate consideration of such M&A Transactions. See Rothschild Retention Application at ¶30.

against the recapitalization fee or the mergers and acquisitions fee and (b) 50% of any new capital fees against the recapitalization fee and the mergers and acquisitions fees. Id. at ¶33.

7. In addition to the fees set for above, Blockbuster agrees to reimburse Rothschild for all reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including to the reasonable and documented fees and expenses of Rothschild's legal counsel. Id. at ¶31; Engagement Letter at Section 6 ("[T]he Company shall reimburse Rothschild for its reasonable and documented out-of-pocket expenses incurred in connection with the performance of its engagement hereunder (but limited, in the case of legal counsel, to the reasonable and documented fees, disbursements and other charges of one firm of outside counsel.").[5]

8. The Engagement Letter also contemplates that the Debtors will indemnify Rothschild as well as third parties that have <u>not</u> been retained by the Debtors. More specifically, the indemnification language in Exhibit A to the Engagement Letter provides that "[Blockbuster] shall indemnify and hold harmless Rothschild and its affiliates, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing . . . from and against any losses, claims or proceedings . . . directly or indirectly . . . in any way related to the engagement of Rothschild." See Rothschild Engagement Letter at Exhibit A.

9. Section 9(e) of the Rothschild Engagement Letter expressly provides that "[n]one of the Affiliated Entities is being retained hereunder nor will any professionals or employees of

---

[5] The proposed order also contains proposed language allowing for such expenses: "Rothschild is entitled to reimbursement by the Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, the fees, disbursements and other charges by Rothschild's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise)."

the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby." See Rothschild Engagement Letter at §9(e). Moreover, Rothschild "can make no representation as to the 'disinterestedness' (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities." Id.

## DISCUSSION

**Governing Law**

Pursuant to section 327(a) of the Bankruptcy Code a debtor may, subject to court order, retain a professional who is disinterested and does not hold or represent an interest that is adverse to the estate. 11 U.S.C. § 327(a). Further, the debtor may employ the professional "on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S. C. § 328(a).

Section 327(a), however, only provides the minimum requirements which must be met in order to qualify for appointment as a professional. See In re Glosser Bros., Inc., 102 B.R. 38, 39 (Bankr. W.D. Pa. 1989). "[T]he mere fact that a professional satisfies the technical requirements of § 327 does not mandate Court approval." Id. Courts must also consider whether the representation is in the best interest of the debtor's estate. Id.

The burden of proof is on the moving party to establish that "the terms and conditions are in the best interest of the estate." In re Gillett Holdings, Inc., 137 B.R. 452, 455 (Bankr. D. Colo. 1991), quoting In re C & P Auto Transport, Inc., 94 B.R. 682, 686 (Bankr. E.D. Cal. 1988). Accord In re Chas. A. Stevens & Co., 109 B.R. 853, 854 (Bankr. N.D. Ill. 1990).

**Attorney Fees Should Not Be Permitted As Expenses Of the Debtors' Estates**

Rothschild seeks to charge the Debtors' estates for their legal fees (not in connection with

indemnification rights) as an expense of the estates.  See Rothschild Retention Application at ¶31; Engagement Letter at Section 6.  Rothschild, however, fails to provide any authority for this position.  In fact, such an expense is not permitted.  For an attorney to be paid from a debtor's estate, that attorney must be retained under section 327 of the Bankruptcy Code.  See In re Crafts Retail Holding Corp., 378 B.R. 44 (Bankr. E.D.N.Y. 2007) (financial advisor precluded, as a matter of law, from being paid the fees of its attorney as a reimbursement of expenses); In re Cenargo Intern., PLC, 294 B.R. 571 (Bankr. S.D.N.Y. 2003) (fees of barristers that debtor's attorney used to assist in English administration proceedings could not be compensated where barristers retention was not approved by the bankruptcy court); see also Drexel Burham Lambert Group, 133 B.R. at 27 (Bankr. S.D.N.Y. 1991) (fees to negotiate a retention are part of an investment banker's overhead and are more than adequately covered by a retention fee).

Aside from sections 503(b)(4) and 506(b) of the Bankruptcy Code, the United States Trustee knows of no other provision of the Bankruptcy Code that authorizes the award of fees and expenses to non-retained professionals.  See Lamie vs. U.S. Trustee, 540 U.S. 526 (2004) ("A debtor's attorney not engaged as provided by §327 is simply not included within the class of persons eligible for compensation.").  Moreover, the reimbursement of fees and expenses for retained professionals is governed by section 330 which, generally speaking, focuses on reasonableness and benefit to the estate of the professionals' services.  In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993).  Said differently, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and made a beneficial contribution to the estate or its creditors.  In re Engel, 124 F.3d 567, 573 (3d Cir. 1997); see also In re Fibermark, Inc., 349 B.R. 385, 396 (Bankr. D. Vt. 2006) (emphasis

added) (Bankruptcy professionals should be compensated "commensurate with their expertise and *the benefit their efforts yield to the estate.*" ).  In the case of the payment of a professionals' counsel fees and disbursements, there is no direct benefit for the services provided by such counsel directly to the Debtors's estates – the only benefit is to Rothschild.  Moreover, such counsel's legal advise to, and on behalf of, Rothschild's interests may at times even be contrary or adverse to the interests of the Debtors.

The Debtors should not be obligated to pay for services that do not benefit the Debtors' estates and that are solely a cost of Rothschild of doing business and being retained as a professional.  Such legal services should be regarded simply as Rothschild's "overhead." Accordingly, any request for authority to seek reimbursement of attorney fees (other than in connection with indemnification) should not be permitted.

**Indemnification of Affiliates and Other Third Parties**

Rothschild seeks to have, among others, non-retained affiliates indemnified by the Debtors.  See Rothschild Retention Application at Engagement Letter, Exhibit A; see supra at ¶8.  Rothschild, in essence, is seeking to give non-retained affiliates and other non-retained third parties, that have not filed affidavits of disinterestedness and whose disinterestedness Rothschild cannot vouch for, rights without providing any support as to why they are entitled to them. Affiliates and other such entities that do not undergo the formal retention process required by section 327(a) should not be permitted, and should not receive indemnification from the Debtors. See In re 245 Associates, Inc., 188 B.R. 743, 749 (Bankr. S.D.N.Y. 1995) (a professional cannot receive compensation until the bankruptcy court has authorized that professional's employment); Cf. In re Office Prods. of America, Inc., 136 B.R. 675, 686 (Bankr. W.D. Tex. 1992)("If the

trustee were permitted to circumvent the requirements for § 327 by impliedly assuming a pre-petition executory contract to hire a professional, Section 327 would be eviscerated").

Accordingly, the United States Trustee objects to the indemnification of any entities for any work related to the engagement of Rothschild aside from Rothschild itself.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Motions as requested herein and grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
October 14, 2010

> Respectfully Submitted,
>
> TRACY HOPE DAVIS
> UNITED STATES TRUSTEE
>
> By: /s/ *Elisabetta G. Gasparini*
> Elisabetta G. Gasparini
> Brian Masumoto
> Trial Attorneys
> 33 Whitehall Street, 21st Floor
> New York, New York 10004
> Tel. No. (212) 501-0500