Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re : Chapter 11
: 
**BLOCKBUSTER INC., *et al.*,**[1] : Case No. 10-14997 (BRL)
: 
: **(Jointly Administered)**
Debtors. : 
------------------------------------------------------------x

### RESPONSE TO OBJECTION
### FILED BY LYME REGIS PARTNERS, LLC
### TO THE DEBTORS' APPLICATION PURSUANT TO
### 11 U.S.C. §§ 327(a) AND 328(a) OF THE BANKRUPTCY CODE
### AND FED. R. BANKR. P. 2014 (a) AND 2016
### FOR AUTHORIZATION TO EMPLOY AND RETAIN
### WEIL, GOTSHAL & MANGES LLP AS ATTORNEYS
### <u>FOR THE DEBTORS *NUNC PRO TUNC* TO THE COMMENCEMENT DATE</u>

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

    Weil, Gotshal & Manges LLP ("*Weil*" or the "*Firm*") submits this reply to the

objection[2] (the "*Objection*") filed by Lyme Regis Partners, LLC ("*Lyme Regis*") to the *Debtors'*

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

[2] *See Lyme Regis Partners, LLC's Objection to the Authorization to Employ and Retain Weil, Gotshal & Manges LLP* [Docket No. 228].

US_ACTIVE:\43529377\06\27258.0004

*Application Pursuant to 11 U.S.C. §§ 327(a) and 328(a) of the Bankruptcy Code and Fed. R. Bankr. P. 2014(a) and 2016 for Authorization to Employ and Retain Weil, Gotshal & Manges LLP as Attorneys for the Debtors Nunc Pro Tunc to the Commencement Date* [Docket No. 22] (the "**Retention Application**"), and respectfully represents as follows:

## I.

## BACKGROUND

1. On September 23, 2010 (the "**Commencement Date**"), Blockbuster Digital Technologies Inc., its parent Blockbuster Inc., and their debtor affiliates ("**Blockbuster**" or the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

2. On October 1, 2010, the United States Trustee ("**U.S. Trustee**") for the Southern District of New York appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

3. The Debtors filed the Retention Application on the Commencement Date. On October 12, 2010, Lyme Regis filed its Objection. A hearing on the Retention Application is set to be held before this Court on October 27, 2010 at 10:00 a.m.

## II.

## JURISDICTION

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

# III.

## LYME REGIS' OBJECTION SHOULD BE OVERRULED IN ITS ENTIRETY AS WEIL IS DISINTERESTED WITHIN THE MEANING OF 11 U.S.C.§ 327 (A) AND 11 U.S.C. § 101(14)

5. Lyme Regis asserts four principal reasons in its Objection to Weil's retention as counsel to the Debtors in these chapter 11 cases, on the grounds that Weil is not "disinterested" due to: (i) Weil's client relationships with certain movie studios (the "**Studios**"); (ii) Weil's representation of other unsecured creditors; (iii) inadequate disclosures as to adverse interests; and (iv) intentional failure to disclose its representation of all adverse individuals as well as all former clients.

6. This Objection is singularly devoid of merit. Weil has provided comprehensive disclosure with respect to all companies, creditors, vendors and other entities (the "**Blockbuster Entities**") that are associated with the Debtors and also have relationships with Weil. As stated in the Affidavit of Stephen Karotkin (the "**Karotkin Affidavit**"), Weil does not represent any entity, other than the Debtors, in these chapter 11 cases and has been meticulous in its conflicts check procedures and disclosures to ensure that the Firm is a disinterested party as defined by section 101(14) of the Bankruptcy Code, as modified by Bankruptcy Rule 2014(a). The suggestion that Weil has disabling conflicts and is causing the Debtors to favor certain creditors is unfounded, baseless and not supported by any cognizable facts or legal authority. The fact that Lyme Regis, an obvious distressed debt trader, made a bad investment by purchasing not only unsecured but contractually subordinated debt, does not give it license to submit frivolous pleadings. Indeed, based on the pleadings Lyme Regis has already filed in the short period these cases have been pending, it seems clear that Lyme Regis is utilizing a time-worn and unproductive scorched-earth strategy to leverage its deeply subordinated position. These tactics should not be tolerated.

### A. Weil's Relationship with the Studios

7. In its Objection, Lyme Regis asserts that the Debtors have filed the Studios Motion[3] on the basis that such action is in preference of the Studios, as certain Studios are clients of the Firm. This assertion is misguided, at best, and completely ignores the nature of the Debtors' business and the unique relationship between the Debtors and the Studios.

8. First, only one of the nine Studios that may be paid pursuant to the Studios Motion is a current client of Weil (Sony Pictures Home Entertainment), for which Weil renders certain professional services in connection with antitrust and decree issues. In addition, Blockbuster is finalizing an accommodation agreement for the benefit of Buena Vista Home Entertainment and Disney Interactive Studios. Neither of these studios are current clients of Weil, but instead are affiliates of The Walt Disney Company, which is a current client of the Firm. With respect to The Walt Disney Company, Weil provides various services, including general litigation and advisory services. As stated in the Karotkin Affidavit, the matters for which Weil represents these clients do not relate in any way to these chapter 11 cases. *See* Karotkin Affidavit ¶3. Furthermore, neither client accounts for more than 1% of the Firm's revenues. These circumstances simply do not suggest, much less establish, that Weil is not disinterested and for Lyme Regis to assert that Weil would attempt to force the Debtors to favor these Studios is not only unfounded but reckless.

9. Second, the Studios Motion is based on the critical relationship between the Debtors and the Studios, the lifeblood of the Debtors' business. In seeking to protect their relationships with the Studios, the Debtors requested certain relief to ensure the continued

---

[3] *Debtors'* Motion *Pursuant to 11 U.S.C. §§ 105, 363(b)(1), and 503(b) and Fed. R. Bankr. P. 6003 and 6004 Requesting (I) Authority to Pay Certain Prepetition Claims of Movie Studios and Game Providers and (II) Administrative Expense Priority Status for All Undisputed Obligations Arising Postpetition* [Docket No. 15] (the "**Studios Motion**").

delivery of product during these chapter 11 cases and to avoid the draconian consequences of being unable to provide product to their customers. Lyme Regis simply ignores this undisputable fact. The fact that certain of these Movie Studios are also clients of Weil in unrelated matters did not bear on the Debtors' decision to file the Studios Motion, and Lyme Regis has not and cannot provide evidence to the contrary. The Studios Motion was the product of good faith, arms-length negotiations between the Debtors and the Studios and was not influenced by Weil's unrelated relationship with only two out of the nine Studios referenced in the Studios Motion.

B. **Weil's Relationship With Other Unsecured Creditors**

10. Lyme Regis' assertion that Weil's representation of other unsecured creditors causes it to be "disinterested" under section 101(14) of the Bankruptcy Code, is equally lacking.

11. Weil is a firm that consists of over 1,200 lawyers, with offices in nine countries. The breadth and depth of Weil's practice involves a large number of clients for whom Weil provides a variety of legal services, including, litigation, corporate and financial restructuring services. Furthermore, an enterprise such as Blockbuster, whose ubiquitous brand operates both domestically and internationally, is necessarily associated with many entities to sustain its business operations.

12. As stated in the Karotkin Affidavit, as part of its conflicts procedures, Weil created, in consultation with the Debtors, a comprehensive list of all the Blockbuster Entities ("***Blockbuster Entities List***"). This list included, among others, the names of all Studios, vendors, landlords, competitors, banks, insurance providers and taxing authorities, to the extent known. The Blockbuster Entities List, which was over 200 pages in length and contained

thousands of names, was run through Weil's conflicts database.[4] Given the sheer size of the Blockbuster Entities List, it is of no surprise that there were many matches of Blockbuster Entities with Weil clients (the "*Matches*"). Of these Matches, Weil disclosed the names of all clients for whom work has been performed in the last two years. In addition, Weil further identified those Matches that account for more than 1% of the Firm's revenues and stated its intention to retain conflicts counsel if representation of these clients conflicted with representation of the Debtors. *See* Karotkin Affidavit ¶ 10.

13. The fact that there is overlap between certain of Weil's clients and the Blockbuster Entities certainly is not surprising and does not by itself disqualify Weil from its representation of the Debtors. *See In re Diva Jewelry Design, Inc.* 367 B.R. 463 (Bankr. S.D.N.Y. 2007) ("[S]ection 327(c) expresses the recognition that a prospective professional for a trustee may, fully consistent with the Code, have represented, or even continue to represent, one or more creditors. Section 327(c) requires, instead, once more by its express terms and plain language, inquiry into whether there is an *actual conflict of interest*…[A]n actual conflict of interest is an active competition between two interests, in which one interest can only be served at the expense of the other.")(emphasis added and internal quotations omitted). Weil's procedures were exhaustive and no actual conflict of interest exists. Weil does not represent any other entity in these cases and the disclosed relationships are so tangential that to suggest an actual conflict exists is absurd.

---

[4] To illustrate the scale of its conflicts procedures, Weil ran among others, the names of over 1500 utility companies, 4600 landlords, and 1700 taxing authorities.

### C. Weil's Disclosure Procedures Adequately Ensured No Adverse Interests

14. In what appears to be a desperate attempt to find some basis to support its baseless position, Lyme Regis asserts that the sheer amount of Matches disclosed are too numerous to ensure that there are no conflicts of interest. *See* Objection p.6. The facts, however, are to the contrary. The large number of disclosures, many of which were made out of an abundance of caution, demonstrate the thoroughness of Weil's conflicts checks and disclosure procedures. As stated above, given the size of Weil's practice, combined with the size of Blockbuster's operations, the number of Matches is not inordinate for a case of this magnitude and the mere fact that many matches exists is irrelevant because none are disabling.

15. In a misguided attempt to support its assertion, Lyme Regis cites *In re Granite Partner*s, L.P. 219 B.R. 22 (Bankr S.D.N.Y., 1998). The facts of *Granite Partners* are clearly distinguishable from the case at hand. The law firm in question in *Granite Partners* was retained *specifically* with the task of prosecuting claims against a broker-dealer (Merrill Lynch) suspected of incorrectly liquidating the Debtors' collateral, which caused the eventual collapse of the Debtors' business. Merrill Lynch was also a client of the law firm, and generated significant revenue for the firm. The firm attempted to obtain a waiver from Merrill Lynch, but was unsuccessful. In its very limited disclosures, the firm stated that it had client relationships with various creditors and other parties in interest, including creditors/broker-dealers. The disclosure did not mention Merrill Lynch by name, nor did it mention that Merrill Lynch had refused to sign a written waiver.

16. The facts and circumstances of *Granite Partners* hardly exist here. Weil has been retained solely in connection with the Debtors' chapter 11 cases and has not been charged with the duty to prosecute claims against specific Blockbuster Entities, that are also

clients of the Firm. Furthermore, Weil has been meticulous in disclosing the individual names and relationships with all the Matches. Lyme Regis attempts to compare the instant application with *Granite Partners* by isolating and labeling as "boilerplate language" an introductory sentence in paragraph 4 on page 2 of the Karotkin Affidavit and ignoring the remaining eight pages of text and 22 pages of detailed connections that follow. As such, the Objection is unfounded if not disingenuous. In any event, it is internally contradictory. Lyme Regis argues that the 367 individual disclosures are too numerous, yet at the same time, it cites the *Granite Partners* case to accuse Weil of employing boilerplate language to cover its connections with Blockbuster Entities. The Objection is wholly without merit and should be overruled.

### D. Weil's Disclosures Complied with the Requirements of the Bankruptcy Rules and Bankruptcy Code

17. Lyme Regis' allegation that Weil intentionally failed to disclose adverse parties as well as former clients is equally devoid of any basis and is reckless. Weil's disclosures fully comply with the requirements under the Bankruptcy Rules and Bankruptcy Code. And with respect to former clients, Weil's disclosures are based on work performed by Weil in the last 2 years, since work performed outside of this period is not relevant for the purposes of determining disinterestedness. *See In re Diva Jewelry Design, Inc*. 367 B.R. 463 (Bankr. S.D.N.Y., 2007), where the Court held that interests held in the past are not relevant for the purposes of determining disinterestedness.

### IV.
### CONCLUSION

18. The Objection is frivolous. It is premised on pure conjecture and hyperbole and should be summarily dismissed as such. As stated, Lyme Regis' improvident

distressed debt purchase does not entitle it to a forum to make unfounded allegations that attack the integrity of other parties.  This type of conduct should not be sanctioned.

WHEREFORE Weil respectfully requests that the Objection be overruled and the Court grant the relief requested in the Retention Application and such other and further relief as it deems just and proper.

Dated: October 25, 2010
      New York, New York

    /s/ Stephen Karotkin
Stephen Karotkin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

    and

Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
200 Crescent Court, Suite 300
Dallas, Texas  75201
Telephone:  (214) 746-7700
Facsimile:   (214)  746-7700