**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

|  |  |
|---|---|
| **In re** : | **Chapter 11** |
| : | |
| **BLOCKBUSTER INC.**, *et al.*,[1] : | **Case No. 10-14997 (BRL)** |
| : | |
| : | **(Jointly Administered)** |
| **Debtors.** : | |
| : | **Related Doc. No. 16, 74, 95** |

-----------------------------------------------------------------x

### FINAL ORDER (I) AUTHORIZING POSTPETITION SUPERPRIORITY SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), (II) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon the Motion[2] dated September 23, 2010, of Blockbuster Digital Technologies Inc.,

its parent Blockbuster Inc. ("***Blockbuster***") and their debtor affiliates, as debtors and debtors in

possession (collectively, the "***Debtors***") in the above-captioned cases (the "***Chapter 11 Cases***"),

pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

and 364(e) of title 11 of the United States Code 11 U.S.C. §§ 101 et. seq (the "***Bankruptcy***

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services, Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219). Information regarding the Debtors' business, their restructuring, and the background of these Chapter 11 Cases can be found in the *Affidavit of Jeffery J. Stegenga Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* [Doc. No. 3], filed on September 23, 2010 (the "***Commencement Date***").

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion or the DIP Credit Agreement (as defined below), as applicable.

*Code*"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), seeking, among other things:

(a)      authorization for Blockbuster, in its capacity as borrower (the "***Borrower***"), to obtain postpetition revolving financing and provide for roll-up notes (collectively, the "***Financing***") and for each of the other Debtors (collectively, the "***Guarantors***"), to guarantee unconditionally, on a joint and several basis, the Borrower's obligations in connection with the Financing, consisting of: (i) a first lien new money superpriority priming revolving credit facility with a maximum outstanding principal amount of up to $125,000,000.00 (the "***Revolving DIP Loan***") with the administrative priority claims and superpriority priming liens provided for in the Revolving DIP Loan specifically and the DIP Obligations (as defined below) generally, and (ii) the grant to the DIP Lenders (as defined below) superpriority claims and priming liens with respect to a maximum of $125,000,000 of Senior Secured Notes (as defined below) that shall constitute roll-up notes ("***Roll-Up Notes***"), as provided for in Paragraph 8 below.  The Roll-Up Notes, collectively with the Revolving DIP Loan, are referred to herein as the "***DIP Loans***".

(b)      authorization for the Debtors to enter into that certain Senior Secured, Super-Priority Debtor-in-Possession Revolving Credit Agreement dated as of September 23, 2010, among the Borrower, the Guarantors, the lenders party thereto (collectively, the "***DIP Lenders***"), and Wilmington Trust FSB, as administrative and collateral agent thereunder (in such capacity, the "***DIP Agent***") (as amended, restated or otherwise modified from time to time in accordance with the terms thereof, the "***DIP Credit Agreement***"; and together with all agreements, documents, and instruments delivered or executed in connection therewith, the ***"DIP Loan Documents***"), which shall be in substantially the same form attached hereto as *Exhibit "A"* without exhibits, and the first amendment to the DIP Credit Agreement to conform it to this Final

DIP Order, which shall be in substantially the same form attached hereto as *Exhibit "B",* and to perform such other and further acts as may be required or necessary in connection with the DIP Loan Documents;

(c) authorization for the Debtors to use proceeds of the Financing and Cash Collateral (as defined below) in accordance with the Approved Budget (the current version of which is attached hereto as *Exhibit "C"*) then in effect and the financial covenants and other terms and conditions set forth in the DIP Credit Agreement and this Final Order (the "***Final Order***") to: (i) finance their operations and make other payments, including payments to critical vendors and ordinary course payments, (ii) pay the fees and expenses of professionals retained by the Debtors and any statutory committees appointed in the Chapter 11 Cases (each a "***Statutory Committee***"), (iii) pay amounts owing to the DIP Agent and the DIP Lenders under the DIP Loan Documents, including loan fees and fees and costs of designated professionals, (iv) pay amounts owing to the holders of the Roll-Up Notes ("***Roll-Up Noteholders***") under this Final Order, and (v) finance the payment of the Adequate Protection Obligations (as defined below);

(d) the grant of valid, enforceable, non-avoidable and fully perfected first priority priming liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, whether such property is presently owned or after-acquired, and all other "property of the estate" (within the meaning of section 541 of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, whether existing prior to or arising after the Commencement Date and all proceeds, products, rents, issues or profits of any of the foregoing, including, Avoidance Action Proceeds (as defined below) (collectively, the "***DIP Collateral***"), to secure the Revolving DIP Obligations (as defined below) and excluding Avoidance Action

Proceeds, to secure the Roll-Up Notes Obligations, both of which are subject only to the Carve-Out Expenses (as defined below) in accordance with the terms and conditions set forth herein;

(e)       the grant of superpriority administrative expense claims to the DIP Agent, the DIP Lenders and the Roll-Up Noteholders pursuant to section 364(c)(1) of the Bankruptcy Code with respect to the DIP Obligations over any and all administrative expenses of any kind or nature including, without limitation, the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113 and 1114, subject and subordinate only to the payment of the Carve-Out Expenses on the terms and conditions set forth herein and in the DIP Loan Documents;

(f)       the grant of adequate protection to the beneficial holders ("***Senior Secured Noteholders***") of the 11.75% Senior Secured Notes due 2014 ("***Senior Secured Notes***") and U.S. Bank National Association, as trustee and collateral agent (the "***Senior Indenture Trustee***" and collectively with the Senior Secured Noteholders, the "***Adequate Protection Parties***"), on account of the priming by the Revolving DIP Loans of the liens and security interests held by the Senior Indenture Trustee on behalf of itself and the Senior Secured Noteholders under the Prepetition Collateral Documents (as defined below) and the Senior Indenture dated as of October 1, 2009 (as may be further amended, restated, supplemented or otherwise modified from time to time, the "***Senior Indenture***"), issued by Blockbuster Inc., the subsidiary guarantors party thereto, and the Senior Indenture Trustee;

(g)       authorization for the Debtors to use Cash Collateral in which the Adequate Protection Parties may have an interest and the grant of adequate protection to the Adequate Protection Parties with respect to, among other things, such use of their Cash Collateral and use and diminution in the value of the Prepetition Collateral (as defined below);

(h)     the limitation of the Debtors' and their estates' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or other applicable law, the grant of rights under section 552(b) of the Bankruptcy Code and the waiver of the Debtors' and their estates' rights under section 726 of the Bankruptcy Code;

(i)     pursuant to Bankruptcy Rule 4001, that an interim hearing (the "***Interim Hearing***") on the Motion be held before this Court to consider entry of the Interim Order (I) Authorizing Postpetition Superpriority Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (II) Authorizing Postpetition Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364 and (IV) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c) (the "***Interim Order***"), among other things, (i) authorizing the Borrower, on an interim basis, to borrow from the DIP Lenders pursuant to the DIP Credit Agreement up to a maximum outstanding principal amount of $45,000,000.00 of the Revolving DIP Loan (subject to the provisions of the DIP Loan Documents, including the Approved Budget then in effect); (ii) authorizing the Guarantors to guaranty the DIP Obligations; (iii) authorizing the Debtors' use of Cash Collateral; and (iv) granting the liens and claims provided for in the Interim Order; and

(j)     that this Court schedule a final hearing on the Motion (the "***Final Hearing***") to consider entry of an order granting the relief requested in the Motion on a final basis in form and substance acceptable to the Requisite DIP Lenders (as defined below) (the "***Final Order***"). "***Requisite DIP Lenders***" means the Requisite Lenders as defined under the DIP Credit Agreement.

Due and appropriate notice of the Motion, the relief requested therein and the Final Hearing having been served by the Debtors on, among others, (i) the Office of the United States Trustee for the Southern District of New York (the "***United States Trustee***"), (ii) the DIP Agent and its counsel Skadden, Arps, Slate, Meagher & Flom LLP, (iii) counsel to the Steering Group of Senior Secured Noteholders and proposed DIP Lenders, Sidley Austin LLP, (iv) the Senior Indenture Trustee, and its counsel Sheppard Mullin Richter & Hampton LLP, (v) any other entity asserting recorded liens against any of the Debtors' assets, and their counsel, if known, (vi) the Subordinated Indenture Trustee, and its counsel Emmet, Marvin & Martin, LLP, (vii) the official committee of unsecured creditors (the "***Creditors' Committee***"), (viii) the Internal Revenue Service, and (ix) the Securities and Exchange Commission in compliance with Bankruptcy Rules 4001(b) and (c) and the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "***Local Bankruptcy Rules***").

The Interim Hearing having been commenced by this Court on September 23, 2010 and continued and concluded on September 27, 2010.  Upon the record of the Interim Hearing on September 23, 2010, and after due deliberation and consideration and sufficient cause appearing therefor, the Court granted the Motion on an interim basis in accordance with the terms of that certain bridge order entered on September 24, 2010 [Doc. No. 74] (the "***Bridge Order***"), and upon the record of the Interim Hearing on September 23, 2010 and September 27, 2010, and after due deliberation and consideration and sufficient cause appearing therefor, the Court granted the Motion on an interim basis pursuant to the Interim Order entered on September 27, 2010 [Doc. No. 95].

Upon the record of the Final Hearing on October 27, 2010 and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.  <u>Disposition</u>. The Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the relief granted herein that have not been previously resolved or withdrawn are overruled on their merits and all reservation of rights included in such objections are denied and overruled. This Final Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry.

2.  <u>Jurisdiction</u>. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction to enter this Final Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief granted herein are sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014.

3.  <u>Statutory Committee</u>. On October 1, 2010, the United States Trustee appointed the Creditors' Committee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

4.  <u>Notice</u>. Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Final Hearing and the relief granted herein is necessary or required.

5.  <u>Debtors' Stipulations</u>. Subject to the rights of any other party (including those of the Creditors' Committee provided for in Paragraph 28 below), the Debtors admit, stipulate, and agree that:

(a)     As of the Commencement Date, the Debtors were party to or otherwise obligated under the Senior Indenture and the Senior Note Documents (as defined below) without defense, counterclaim or offset of any kind, and were indebted and liable to the Senior Secured Noteholders in the aggregate principal amount of not less than approximately $630 million in respect of the Senior Secured Notes issued under the Senior Indenture, exclusive of accrued and unpaid interest (including default interest), premium, if any, and certain fees, costs, indemnities, expenses (including fees and expenses of professionals reimbursable under the Senior Indenture), charges and all other Obligations (as defined in the Senior Indenture) incurred in connection therewith pursuant to the Senior Indenture (collectively, the "***Senior Secured Obligations***"), which Senior Secured Obligations are secured by first priority liens on and security interests in substantially all of the Debtors' assets (the "***Prepetition Collateral***") as more specifically described in the Prepetition Collateral Documents (as defined below).

(b)     The Senior Secured Obligations constitute legal, valid and binding obligations of the Debtors as set forth in the Senior Indenture, the Prepetition Collateral Documents and each other agreement or document entered into in connection with the Senior Indenture (collectively, the "***Senior Note Documents***").   Each Senior Note Document is enforceable in accordance with its terms by the Senior Indenture Trustee and the Senior Secured Noteholders against each of the Debtors.

(c)     No portion of the Senior Secured Obligations or any payment made or to be made to the Adequate Protection Parties or their professionals or applied to obligations owing under the Senior Note Documents, the Backstop Commitment Letter or the DIP Loan Documents prior to or following the Commencement Date is or will be subject to

avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law.

(d)        Each Debtor forever waives and releases any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses or setoff rights against the Adequate Protection Parties, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other provisions of applicable state or federal law.

(e)        The liens and security interests granted to the Senior Indenture Trustee in the Prepetition Collateral (collectively, the "***Prepetition Security Interests***") in connection with the Senior Note Documents, including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors or any non-debtor subsidiary of a Debtors in favor of the Senior Indenture Trustee or the Senior Secured Noteholders (collectively, the "***Prepetition Collateral Documents***"), for the benefit of the Adequate Protection Parties, are (i) valid, binding, perfected and enforceable liens and security interests in the real and personal property described in the Prepetition Collateral Documents; (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind; and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out Expenses and (C) valid, perfected and unavoidable liens and security interests otherwise permitted

under the terms of the applicable Senior Note Documents, but only to the extent that such liens and security interests are permitted by the applicable Senior Note Documents to be senior to or *pari passu* with the applicable Prepetition Security Interests. The Debtors each irrevocably waive, for themselves, and their subsidiaries and affiliates, any right to challenge or contest in any way the Prepetition Security Interests or the validity or enforceability of the Senior Secured Obligations and the Senior Note Documents.

6.      <u>Findings Regarding the Financing</u>.

(a)      Good cause has been shown for the entry of this Final Order.

(b)      The Debtors have an immediate and critical need to obtain the Financing and to use the Cash Collateral to, among other things: (i) permit the orderly continuation of their businesses; (ii) maintain business relationships with motion picture studios, vendors, suppliers and customers; (iii) make payroll; (iv) make capital expenditures; (v) make adequate protection payments; (vi) pay the costs of administration of their estates; and (vii) satisfy other working capital and general corporate purposes of the Debtors, all in accordance with the Approved Budget, then in effect. The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to the Debtors' successful reorganization.

(c)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the terms in the DIP Loan Documents and this Final Order and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also

unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Loan Documents without the Debtors granting to the DIP Agent, the DIP Lenders and the Roll-Up Noteholders, subject to the Carve-Out Expenses, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and the DIP Loan Documents. The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs.

(d) The DIP Lenders have indicated a willingness to provide the Debtors with the Financing and the requisite Senior Secured Noteholders have indicated a willingness to authorize the use Cash Collateral, but solely on the terms and conditions set forth in this Final Order and in the DIP Loan Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the Financing to be provided by the DIP Lenders and authorization to use Cash Collateral provided for herein and consented to by the Steering Group of Senior Secured Noteholders (constituting beneficial holders of over 75% of the Senior Secured Notes), represent the best financing presently available to the Debtors.

(e) The Steering Group of Senior Secured Noteholders has consented to, and has directed the Senior Indenture Trustee to consent to, conditioned on the entry of this Final Order, the entry into the DIP Loan Documents and the grants of liens and claims provided for herein, including: (i) the imposition of priming liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP Agent, for the benefit of itself and the DIP Lenders and the Roll-Up Noteholders, and (ii) the Debtors' use of Prepetition Collateral, including Cash Collateral.

(f)    The consent of the Steering Group of Senior Secured Noteholders to, and their direction to the Senior Indenture Trustee to consent to, the priming of their liens by the DIP Liens provided for in Paragraph 12 below is limited to the Financing presently before the Court, which includes the Roll-Up Notes and the entitlement for all Senior Secured Noteholders to participate in the Revolving DIP Loan as provided for in the Letter Regarding the Commitments for $125,000,000 Debtor in Possession Credit Facility, dated as of September 22, 2010, 2010 from certain Senior Secured Noteholders committing to backstop the Revolving DIP Loan (the "***Backstop Lenders***") to Blockbuster (the "***Backstop Commitment Letter***"), and shall not extend to any other post-petition financing (other than ordinary course, postpetition premium financing agreements incurred in connection with the maintenance of the Debtors' insurance programs during these Chapter 11 Cases, as authorized by other order of this Court) or to any modified version of the Financing, including with any party other than such Senior Secured Noteholders that elect to become DIP Lenders in accordance with the Backstop Commitment Letter.

(g)    The terms of the Financing, the DIP Loan Documents and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(h)    The Financing has been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the Steering Group of Senior Secured Noteholders, and the Backstop Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the Financing and the DIP Loan Documents,

including, without limitation, the Revolving DIP Loan, the Roll-Up Notes and all other loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents, the Bridge Order, the Interim Order, this Final Order, and all other obligations under the DIP Loan Documents (collectively, the "***DIP Obligations***", excluding obligations related to the Roll-Up Notes, the "***Revolving DIP Obligations***" and only including obligations related to the Roll-Up Notes, the "***Roll-Up Notes Obligations***") have been extended in good faith. The Revolving DIP Loan has been extended and the DIP Obligations have been incurred in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens and the Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise and will not be affected by the subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider, this Final Order.

(i)     The Debtors request entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Bankruptcy Rule 4001-2. Absent granting the relief sought by the Motion, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Financing and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order and the DIP Loan Documents are, therefore, in the best interests of the Debtors' estates, their creditors

and all parties in interest in these Chapter 11 Cases and are consistent with the Debtors' exercise of their fiduciary duties.

7.  <u>Authorization of the Financing and the DIP Loan Documents</u>.

(a)     The Debtors are expressly authorized and empowered to execute and deliver, and, on such execution and delivery, directed to perform all of their obligations under the DIP Credit Agreement and the DIP Loan Documents, which are approved and incorporated herein by reference.  In the event of any inconsistency between the DIP Loan Documents and this Final Order, this Final Order shall control.

(b)     The Borrower is authorized to borrow, and the Guarantors are authorized to guaranty, borrowings under the DIP Credit Agreement up to the $125,000,000.00 maximum principal amount of the Revolving DIP Loan (plus interest, fees and other expenses and amounts provided for in the DIP Credit Agreement), subject to and in accordance with the terms of this Final Order and the DIP Credit Agreement.

(c)     In accordance with the terms of this Final Order and the DIP Credit Agreement, all proceeds of the Financing shall be used solely for the purposes permitted under the DIP Credit Agreement and this Final Order, in accordance with the Approved Budget, then in effect.

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is lifted to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all fees, that may be required or necessary for the Debtors' performance of their obligations under the DIP Loan Documents and this Final Order, including without limitation:

(i)     the execution, delivery and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage contemplated thereby;

(ii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents for, among other things, the purpose of adding additional entities as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors and the holders of commitments under the Revolving DIP Loan, as specified in the DIP Loan Documents for the desired amendment, waiver, consent or other modification, may agree, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Loan Documents or the DIP Obligations that do not materially and adversely impair the Debtors' or their estates' rights thereunder;

(iii)     the non-refundable payment to the DIP Agent and the applicable DIP Lenders or Backstop Lenders, as the case may be, of the fees and costs and expenses provided for under the DIP Loan Documents as may be due from time to time, including, without limitation, reasonable fees and expenses of counsel, financial advisors and other professionals retained by the DIP Agent or the DIP Lenders as provided for in the DIP Loan Documents, including the reasonable fees and expenses of (x) (1) Sidley Austin LLP, as counsel (as further provided in the fee letter executed by BBI on February 26, 2010) to the Steering Group of DIP Lenders, Roll-Up Noteholders and Senior Secured Noteholders and (2) Jefferies

& Company, Inc., as financial advisor (as further provided in the fee letter dated as of September 24, 2010) to the Steering Group of DIP Lenders, Roll-Up Noteholders and Senior Secured Noteholders, and (y) Skadden, Arps, Slate, Meagher & Flom LLP, as counsel to the DIP Agent (as further provided in the fee letter executed by BBI on September 23, 2010). Such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court; provided, that copies of the applicable invoices have been provided at least five business days prior to their payment to each of (x) the United States Trustee and (y) counsel for the Creditors' Committee. Specifically, but without limiting the authorizations in this subparagraph (iii), the Debtors are authorized to and shall pay the following non-refundable fee pursuant to the DIP Credit Agreement in addition to the fees authorized and paid pursuant to the Interim Order, a 1.5% commitment fee on the entire commitment under the DIP Credit Agreement paid ratably to the DIP Lenders based on their respective commitments;

(iv)     the allocation, delivery and performance of the provisions of this Final Order related to the Roll-Up Notes;

(v)     the making of the adequate protection payments to the Adequate Protection Parties as provided for in this Final Order; and

(vi)     the performance of all other acts required under or in connection with the DIP Loan Documents.

In addition, and without further approval of this Court, the DIP Agent, Senior Indenture Trustee and DIP Lenders, as applicable, are authorized to give any notices provided for in the DIP Loan Documents, Senior Note Documents or Plan Support Agreement (as defined below), and the automatic stay imposed by section 362 of the Bankruptcy Code, if applicable, is lifted to the extent necessary to provide such notices.

(e)     Upon execution and delivery of the DIP Credit Agreement and the other DIP Loan Documents and entry of this Final Order, such DIP Loan Documents shall constitute valid, binding and non-avoidable obligations of the Debtors enforceable against each Debtor party thereto in accordance with their respective terms and the terms of this Final Order for all purposes during the Chapter 11 Cases, any subsequently converted Case of any Debtor under chapter 7 of the Bankruptcy Code or after the dismissal of any Case.  No obligation, payment, transfer or grant of security or claim under the DIP Credit Agreement, the other DIP Loan Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(f)     The Guarantors are authorized and directed to jointly, severally and unconditionally guarantee in full all of the DIP Obligations of the Borrower.

8.      <u>Roll-Up Notes</u>.

        (a)     <u>Grant of Roll-Up Notes Creation and Terms of Roll-Up Notes.</u>

                (i)     The Senior Secured Notes which constitute Roll-Up Notes shall be secured by the DIP Liens on the DIP Collateral (excluding Avoidance Action Proceeds) retroactive to the Commencement Date and the entire outstanding amount of the obligations under the Roll-Up Notes shall be allowed Superpriority Claims, as provided herein, as of any date of calculation in addition to their continuing claims and liens as Senior Secured Notes.  The DIP Liens and Superpriority Claims associated with the Roll-Up Notes have the relative priorities set forth in this Final Order.

                (ii)    The amount of the Roll-Up Notes and the identity of the holders thereof shall be determined as of the earliest to occur of (1) the date a Carve-Out Trigger Notice is delivered in accordance with Paragraph 19, or (2) at the election of the Requisite DIP Lenders, the date an order is entered by the Bankruptcy Court or applicable District Court approving the disclosure statement for any plan of reorganization or liquidation for any of the Debtors that is not a Conforming Plan (as defined below) (the earliest of any of the foregoing, the "***Roll-Up Event***").  Immediately upon the occurrence of a Roll-Up Event the DIP Agent shall notify each DIP Lender of the occurrence of the Roll-Up Event, the Roll-Up Date and the deadlines and procedures for receiving their Roll-Up Notes.

                (iii)   Each entity that is both a beneficial holder of Senior Secured Notes and a DIP Lender as of the occurrence of the Roll-Up Event (such date, the "***Roll-Up Date***") shall be entitled to receive all or any portion of such Senior Secured

Notes as Roll-Up Notes, up to an amount of Roll-Up Notes with an aggregate principal balance equal to the lesser of (1) the total outstanding principal amount of Senior Secured Notes held by such entity on the Roll-Up Date, or (2) the amount of such DIP Lender's Deemed Commitment (as defined below). The aggregate principal amount of Roll-Up Notes shall not exceed $125,000,000.

(iv)    The right to receive Roll-Up Notes shall be vested in the DIP Lenders in accordance with their Deemed Commitments, and any assignment of commitments under the DIP Credit Agreement prior to the Roll-Up Date shall automatically and without any further action or order constitute an assignment of the related right to receive Roll-Up Notes.

(v)    The right of a DIP Lender to receive Roll-Up Notes on the occurrence of a Roll-Up Event is indefeasible and cannot be revoked, avoided, curtailed or impaired by the satisfaction, repayment, termination or acceleration of the Revolving DIP Loan or the cancellation, reduction or termination of any commitments with respect thereto.

(vi)    Unless and until the occurrence of a Roll-Up Event, each Senior Secured Noteholder, whether or not entitled to claim Roll-Up Notes as a DIP Lender, is entitled to vote the entirety of its claim as a Senior Secured Noteholder as a member of the same class of creditors as all other Senior Secured Noteholders in any solicitation of acceptances for any plan of reorganization or liquidation.

(vii)    Notwithstanding any provision of the Senior Indenture to the contrary, as a consequence of becoming a DIP Lender, each DIP Lender agrees for

itself and its assignees that the Roll-Up Notes are not entitled to receive the Applicable Premium on any Redemption Date (as such terms are defined in the Senior Indenture) if the Redemption Date occurs as the result of the confirmation of a Conforming Plan.  In addition, the first day that the Roll-Up Notes are entitled to accrue interest is the Roll-Up Date.  Other than as expressly provided for herein, Roll-Up Notes shall continue to enjoy the same terms, conditions, entitlements and protections as all other Senior Secured Notes.

(viii)   As used herein:

"Deemed Commitment" of a DIP Lender as of the Roll-Up Date shall mean the aggregate commitment (including both funded and unfunded) such DIP Lender has to make DIP Loans under the DIP Facility, determined as of the Roll-Up Date, on the basis of the then outstanding commitments (but without giving effect to any reduction or termination of such commitments or the repayment of the outstanding Revolving DIP Loan) and after giving effect to all assignments of commitments under the DIP Credit Agreement and outstanding Revolving DIP Loans made prior to the Roll-Up Date.

(b)      Determination of Roll-Up Notes.  In order to receive their allocation of Roll-Up Notes, each entity that is both a beneficial holder of Senior Secured Notes and a DIP Lender as of the Roll-Up Date shall submit a notice to the DIP Agent within ten (10) Business Days following the Roll-Up Date certifying the amount of Senior Secured Notes held by such entity as of the Roll-Up Date and the Deemed Commitment of such entity as of the Roll-Up Date.  The record date for allocation of Roll-Up Notes is the Roll-Up

Date. The amount of any entity's Deemed Commitment shall be confirmed by the DIP Agent, and the records of the DIP Agent shall be final and conclusive evidence thereof. The amount of any entity's Senior Secured Notes shall be confirmed by the DIP Agent in conjunction with the list of beneficial holders of the Senior Secured Notes generated at the DIP Agent's request reflecting holdings as of the Roll-Up Date. Within three (3) Business Days after the receipt of the list of beneficial holders of the Senior Secured Notes, the DIP Agent shall complete its confirmation of the relevant holdings and shall notify the Debtors of the results. On the Business Day following the Debtors' receipt of the results, Roll-Up Notes shall be deemed to be allocated to each DIP Lender that timely submitted such a notice in accordance with the confirmed amount of their Deemed Commitments and Senior Secured Notes. The Roll-Up Notes shall have the rights and priorities set forth herein.

9. <u>Termination Event</u>.

(a) The Debtors' authority to use the proceeds of the Financing or any Prepetition Collateral, including Cash Collateral, and any commitment to make additional advances under the Revolving DIP Loan, shall each terminate upon (unless waived, forborne or consented to by the Requisite DIP Lenders) the earliest of (each a "***Termination Event***"):

(i) April 30, 2011;

(ii) the date of any acceleration of the Revolving DIP Loans in accordance with the terms of the DIP Loan Documents;

(iii) the date of any occurrence of an Event of Default under the DIP Loan Documents, including, without limitation, the provisions relating to these

Chapter 11 Cases in Section 8.1(k) of the DIP Credit Agreement, unless such Event of Default is waived within three (3) Business Days from the date of the occurrence thereof in a manner consistent with the terms of the DIP Credit Agreement;

(iv)     the breach of any obligations under this Final Order;

(v)     the date upon which any provision of this Final Order shall for any reason cease to be valid and binding, or any of the Debtors shall so assert in any pleading filed in any court;

(vi)     the effective date of a plan of reorganization or a plan of liquidation in any of the Chapter 11 Cases; and

(vii)     the occurrence of a "Termination Event" (as defined in the Plan Support Agreement, between Blockbuster and certain Senior Secured Noteholders, dated as of September 22, 2010 (the "***Plan Support Agreement***").

(b)     All Obligations, including the DIP Obligations and the Adequate Protection Obligations, shall be due and payable in immediately available funds upon the occurrence of a Termination Event, unless an alternative treatment is consented to in accordance with Paragraph 33 below.

10.     Unconditional Guarantee of Subsequently Acquired or Organized Subsidiaries. Except as otherwise agreed by the Requisite DIP Lenders, the DIP Obligations of the Debtors shall further be unconditionally guaranteed by each and every subsequently acquired or organized direct or indirect domestic subsidiary of any of the Debtors, and such entity shall be deemed a Guarantor immediately upon its acquisition and/or organization.

11.    <u>Superpriority Claims</u>.  Subject only to (i) the payment of the Carve-Out Expenses to the extent specifically provided for herein, and (ii) Paragraph 13(b) below, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims against each of the Debtors (the "***Superpriority Claims***") with priority over any and all administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations) and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall, for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition real property and personal property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "***Avoidance Actions***"); <u>provided</u>, <u>however</u>, that the Superpriority Claims on account of Roll-Up Notes Obligations shall not be paid or satisfied from Avoidance Action Proceeds.  Except as set forth in the Bridge Order, Interim Order and this Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

12.    <u>DIP Collateral</u>.  As security for the DIP Obligations, effective and perfected upon the date of this Final Order and without the necessity of the execution, recordation of filings by

the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent, the Senior Indenture Trustee or any DIP Lender or Roll-Up Noteholder of, or over, any present or future DIP Collateral, the following security interests and liens are granted by the Debtors to the DIP Agent, for the benefit of itself and the DIP Lenders and the Roll-Up Noteholders, subject to the payment of the Carve-Out Expenses (all such liens and security interests granted to the DIP Agent, for the benefit of itself, the DIP Lenders and the Roll-Up Noteholders, pursuant to this Final Order and the DIP Loan Documents, the "*DIP Liens*"):

(a)    <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all DIP Collateral that, on or as of the Commencement Date is not subject to valid, perfected and non-avoidable liens (collectively, "*Unencumbered Property*"), including, without limitation, any unencumbered cash of the Debtors and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Commencement Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, proceeds of interests in leaseholds (but not the interests in the leaseholds directly), real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and the proceeds, products, rents, issues or profits of all the foregoing.  Unencumbered Property shall exclude Avoidance Actions, but shall include any proceeds or property recovered in connection with the pursuit of any Avoidance Action ("*Avoidance Action Proceeds*"); however, such Avoidance Action Proceeds shall not secure the Roll-Up Notes Obligations.  For the avoidance of doubt, the

Unencumbered Property and the DIP Collateral do not include the Debtors' leasehold interests, only the proceeds thereof.

(b)     <u>Liens Priming Prepetition Secured Parties' Liens</u>.   Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all DIP Collateral (including, without limitation, Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Commencement Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, proceeds of interests in leaseholds (but not the interests in the leaseholds directly), real properties, patents, copyrights, trademarks, trade names, other intellectual property, equity interests, and the proceeds, products, rents, issues or profits of all the foregoing), whether now existing or hereafter acquired, that is subject to any existing lien presently securing the Senior Secured Obligations.  Such priming security interest and lien shall be senior in all respects to the interests in such property of the Adequate Protection Parties arising from current and future liens of the Adequate Protection Parties (including, without limitation, adequate protection liens granted hereunder).   However, such security interest and lien shall be junior to any valid, perfected, enforceable and unavoidable security interest and lien of any other entity (other than security interests and liens related to the Senior Secured Obligations), if any: (i) on such property existing immediately prior to the Commencement Date if and to the extent that such security interest and lien was senior to the lien securing the Senior Secured Obligations as of the Commencement Date, (ii) on such property arising out of a lien to which the security interest and lien presently securing the Senior Secured Obligations may become subject and subordinate to

subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code, or (iii) *ad valorem* tax liens in favor of state or local governmental entities on property of the Debtors' estates, whether arising pre- or post-petition, if and to the extent that such ad velorem tax lien was senior to the lien securing the Senior Secured Obligations as of the Commencement Date or would be senior to the Senior Secured Obligations on the date it arises pursuant to applicable non-bankruptcy law ("***Ad Valorem Liens***"). The first priority senior priming security interest in the Debtors' equity shall include liens on 100% of the equity of all domestic subsidiaries and liens on 100% of the equity of the Debtors' first tier foreign subsidiaries.

(c)     <u>Liens Junior to Certain Other Liens.</u>  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all DIP Collateral (other than the property described in clauses (a) or (b) of this Paragraph 12, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to any valid, perfected, enforceable and unavoidable security interest and lien of another party, if any: (i) on such property existing immediately prior to the Commencement Date if and to the extent that such security interest and lien was senior to the lien securing the Senior Secured Obligations as of the Commencement Date, (ii) on such property arising out of a lien to which the security interest and lien presently securing the Senior Secured Obligations may become subject and subordinate to subsequent to the Commencement Date as permitted by section 546(b) of the Bankruptcy Code, or (iii) Ad Valorem Liens.

(d)    <u>Liens Senior to Certain Other Liens.</u>  The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; (ii) any liens arising after the Commencement Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors (other than Ad Valorem Liens); or (iii) any intercompany or affiliate liens of the Debtors.

Except as set forth in the Bridge Order, the Interim Order, this Final Order or the DIP Loan Documents, no other liens shall be granted or allowed in these Chapter 11 Cases.

13.    <u>Protection of DIP Lenders' and Roll-Up Noteholders' Rights</u>.

(a)    All DIP Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances (i) expressly permitted under the DIP Loan Documents, the Bridge Order, the Interim Order or this Final Order, and (ii) Ad Valorem Liens.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified, without the need for further action of the Court, to the extent necessary to permit the DIP Agent, on behalf of itself and the DIP Lenders and the Roll-Up Noteholders, to give effect to any rights granted herein or under the DIP Loan Documents, including the exercise upon the occurrence and during the continuation of an Event of Default under the DIP Credit Agreement, after the expiration of the applicable grace period, if any, or the occurrence of a Termination Event, (i) the following immediate remedies under the DIP Loan Documents: (A) the termination of the Debtors'

authority to use Cash Collateral and proceeds from the Revolving DIP Loan, (B) the acceleration of all DIP Obligations (including both the Revolving DIP Loan and the Roll-Up Notes), (C) the termination of any outstanding commitments under the DIP Credit Agreement, and (D) the exercise of all other rights and remedies under the DIP Loan Documents other than those rights and remedies against the DIP Collateral provided in clause (ii) below, and (ii) the following remedies under the DIP Loan Documents at any time five (5) Business Days' after giving the Carve-Out Trigger Notice (as defined below): all rights and remedies against the DIP Collateral provided for in any DIP Loan Documents, including, without limitation, the disposition of the DIP Collateral solely for application to the DIP Obligations including by sweeping the Debtors' deposit accounts and securities accounts pursuant to the applicable control agreements (including those securing the Senior Secured Obligations) and otherwise exercising remedies against the DIP Collateral; provided, however, that notwithstanding anything in this Final Order, the DIP Credit Agreement or the DIP Loan Documents to the contrary, the exercise of any remedies by the DIP Agent, on behalf of itself, the DIP Lenders or the Roll-Up Noteholders, with respect to the use or occupancy of any premises then leased by the Debtors shall be subject to (i) rights of lenders and landlords under non-bankruptcy law (if any), (ii) any written agreement with any applicable landlord, or (iii) further order of this Court upon notice.  In no event shall the DIP Agent, the DIP Lenders, the Roll-Up Noteholders, or the Adequate Protection Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral; provided, however, that (i) the DIP Agent and the DIP Lenders shall not apply Avoidance Action Proceeds to satisfy the Revolving DIP Obligations (including, without limitation, the

Superpriority Claims on account thereof granted hereunder) unless their cash recoveries following the exercise of remedies with respect to the DIP Collateral are insufficient or they believe they will be insufficient to indefeasibly satisfy the Revolving DIP Obligations in full in cash,[3] and (ii) notwithstanding any provision in this Final Order to the contrary, in no event shall the Roll-Up Notes Obligations be paid or satisfied from Avoidance Action Proceeds.  The delay or failure to exercise rights and remedies under the DIP Loan Documents or this Final Order by the DIP Agent or any DIP Lender or Roll-Up Noteholder shall not constitute a waiver of the DIP Agent's or such DIP Lender's or Roll-Up Noteholder's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Loan Documents or this Final Order.

---

[3]  In the event that the Requisite DIP Lenders believe that the cash recoveries related to the DIP Collateral are insufficient or will be insufficient to indefeasibly satisfy the Revolving DIP Obligations in full in cash within a reasonable period of time following a Termination Event, then the DIP Agent, at the direction of the Requisite DIP Lenders, or the Requisite DIP Lenders, shall petition the Bankruptcy Court to estimate the net present value of the remaining DIP Collateral, less the Avoidance Action Proceeds, such net present value shall be calculated by taking into account the anticipated future recovery dates for the remaining elements of the DIP Collateral.  If the Bankruptcy Court estimates that the net present value of the remaining DIP Collateral, less Avoidance Action Proceeds, is less than the amount of the Revolving DIP Obligations at the time of the calculation, then the DIP Agent and the DIP Lenders are hereby authorized to apply the Avoidance Action Proceeds to the satisfaction of the Revolving DIP Obligations, in whole or in part, in accordance with this Final Order and the DIP Credit Agreement.  In connection with any such petition, the Debtors, Creditors' Committee, DIP Agent and Requisite DIP Lenders shall each be entitled to request entry of one or more orders to protect its interests, and as applicable the Debtors' estates' interests, in the Avoidance Action Proceeds, including, without limitation, by moving for a requirement that the Avoidance Action Proceeds be placed into an escrow account or other segregated account as received, pending a final determination of the value of the remaining DIP Collateral (less Avoidance Action Proceeds), whether through the sale or other disposition of such DIP Collateral or as determined by order of the Bankruptcy Court.

14. <u>Relative Priority and Intercreditor Rights Between Revolving DIP Loan and Roll-Up Notes</u>.

(a) For all purposes, as between the DIP Liens and DIP Obligations granted with respect to the Revolving DIP Loan and the DIP Liens and DIP Obligations granted with respect to the Roll-Up Notes, the Revolving DIP Loan shall be senior in priority and right to payment on account of both the DIP Liens granted to secure the DIP Obligations and the Superpriority Claims granted as additional sources of repayment of the DIP Obligations.

(b) The Roll-Up Noteholders' rights to payment of the Roll-Up Notes and the DIP Obligations granted with respect thereto are subordinated to all of the DIP Agent's and DIP Lenders' rights to payment of the DIP Obligations granted with respect to the Revolving DIP Loan. Following the Senior Indenture Trustee's receipt of a Carve-Out Trigger Notice, the Senior Indenture Trustee and the Roll-Up Noteholders shall not accept or receive payments (including, without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) from any of the Debtors, any Guarantor or from the DIP Collateral (other than in reimbursement of their reasonable professionals' fees as provided for herein) prior to the date that all DIP Obligations related to the Revolving DIP Loan (other than the Roll-Up Notes) shall be indefeasibly paid in full in cash or otherwise satisfied in full as set forth in Paragraph 29 or pursuant to a Conforming Plan (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) and all commitments related to the Revolving DIP Loan have terminated (the "**Satisfaction of the Revolving DIP Loan**").

(c)     Following the issuance of a Carve-Out Trigger Notice by the DIP Agent and the receipt of such notice by the Senior Indenture Trustee, the DIP Agent, Senior Indenture Trustee and Roll-Up Noteholders shall not take any action to foreclose upon or recover in connection with the DIP Liens granted to secure the DIP Obligations related to the Roll-Up Notes pursuant to the DIP Loan Documents or this Final Order, or otherwise exercise remedies against any DIP Collateral prior to the Satisfaction of the Revolving DIP Loan, unless consented to in writing by the Requisite DIP Lenders.

15.     <u>Relative Priority and Intercreditor Rights Between DIP Obligations and Adequate Protection Obligations</u>.

(a)     For all purposes, as between the DIP Liens and DIP Obligations and the Adequate Protection Liens and Adequate Protection Obligations, the DIP Liens and DIP Obligations shall be senior in priority and right to payment to the Adequate Protection Liens and Adequate Protection Obligations.

(b)     The Senior Secured Noteholders' rights to payment of the Adequate Protection Obligations are subordinated to all of the DIP Agent's, DIP Lenders' and Roll-Up Noteholders' rights to payment of the DIP Obligations.  Following the Senior Indenture Trustee's receipt of a Carve-Out Trigger Notice, the Senior Indenture Trustee and the Senior Secured Noteholders shall not (i) take any action to foreclose upon or recover in connection with the Adequate Protection Liens granted pursuant to this Final Order or Prepetition Security Interests granted pursuant to the Prepetition Collateral Documents, or otherwise exercise remedies against any of the collateral securing the Adequate Protection Liens or the Prepetition Security Interests, unless consented to in writing by the Requisite DIP Lenders; or (ii) accept or receive payments (including,

31

without limitation, whether in cash or other property and whether received directly, indirectly or by set-off, counterclaim or otherwise) from any of the Debtors, any Guarantor or from the DIP Collateral (other than in reimbursement of their reasonable professionals' fees as provided for herein) prior to the date that all DIP Obligations (including the Revolving DIP Loan and the Roll-Up Notes) shall be indefeasibly paid in full in cash or otherwise satisfied in full as set forth in Paragraph 29 or pursuant to a Conforming Plan (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid) and the commitments under the DIP Loan Documents have terminated (the "***Satisfaction of the DIP Loans***").

(c)     The Senior Indenture Trustee shall not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral on account of its Adequate Protection Liens or otherwise, unless the DIP Agent files financing statements or other documents to perfect the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests in the Prepetition Collateral in effect as of the Commencement Date.

16.     <u>Continuing Subordination of 9% Senior Subordinated Notes Due 2012</u>.    The subordination provisions in Article 10 of the Indenture, dated August 20, 2004, with respect to the 9% Senior Subordinated Notes Due 2012 ("***Subordinated Indenture***") remain in full force and effect for the benefit of all Senior Secured Notes, including all Roll-Up Notes. Notwithstanding any consents or grants provided for or evidenced in this Final Order, including without limitation, the Steering Group of Senior Secured Noteholders' consent to the (i) use of

Cash Collateral, (ii) issuance of DIP Liens to secure the DIP Obligations, (iii) grant of Superpriority Claims, and (iv) the grant and receipt of adequate protection claims and liens, the Senior Secured Noteholders' and Senior Indenture Trustee's rights as beneficiaries of the subordination provisions in Article 10 of the Subordinated Indenture shall not be impaired in any manner.

17.     <u>Priority of Distributions</u>.  The DIP Agent and the Senior Indenture Trustee shall pay out any money or property they receive pursuant to this Final Order, the DIP Loan Documents, the Senior Note Documents or otherwise, after provision for senior liens provided for in this Final Order (including Ad Valorem Liens), if not already reduced from the funds received, and subject to the Carve-Out Expenses (as defined below), in the following order:

(a)     First, on a pro rata basis, (i) to the DIP Agent or the Senior Indenture Trustee, as applicable, for amounts due to it for fees and expenses and indemnities under this Final Order or the DIP Loan Documents and Senior Indenture, as applicable, in order of their relative priorities, and (ii) (1) to Sidley Austin LLP for its fees and expenses (as further provided in the fee letter executed by BBI on February 26, 2010) as counsel to the Steering Group of DIP Lenders, Roll-Up Noteholders and Senior Secured Noteholders, and (2) to Jefferies & Company, Inc., for its fees and expenses (as further provided in the fee letter dated as of September 24, 2010) for the Steering Group of DIP Lenders, Roll-Up Noteholders and Senior Secured Noteholders for its fees and expenses.

(b)     Second, to the DIP Lenders, the Roll-Up Noteholders, Adequate Protection Parties or Senior Secured Noteholders, as applicable, for amounts due and unpaid under this Final Order, the DIP Loan Documents or the Senior Note Documents

and in accordance with their relative priorities set forth in this Final Order and in such documents, including Section 8.2 of the DIP Credit Agreement.

(c)     Third, to the Debtors' estates for distribution as provided by applicable law.   The DIP Agent and Senior Indenture Trustee shall be entitled to rely on the distribution scheme provided for in this Paragraph 17 notwithstanding any provision of the DIP Loan Documents or Senior Indenture to the contrary.   Neither the DIP Agent nor the Senior Indenture Trustee shall have any liability to any DIP Lender or Senior Secured Noteholder, as applicable, as a direct consequence of its compliance with this Paragraph 17.

18.     <u>Carve-Out Expenses</u>.   The term "***Carve-Out Expenses***" as used in this Final Order means the following collective amounts:

(a)     all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (without regard to the Carve-Out Trigger Notice);

(b)     fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the Carve-Out Trigger Notice);

(c)     to the extent allowed at any time, whether by interim order, procedural order or otherwise, all accrued but unpaid fees, disbursements, costs and expenses incurred at any time before or on the first Business Day following delivery of a Carve-Out Trigger Notice, by professionals or professional firms retained by (i) the Debtors pursuant to section 327 of the Bankruptcy Code and (ii) subject to the fee and expense restrictions in Paragraph 27 below, any Statutory Committee appointed in these Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code, which shall also include the

actual and necessary expenditures of members of the Creditors' Committee and their representatives incurred in furtherance of their statutory duties (collectively, the "***Professional Persons***"); and

(d)     to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees, disbursements, costs and expenses, subject to the fee and expense restrictions in Paragraph 27 below with respect to any Statutory Committee appointed in these Chapter 11 Cases pursuant to section 1103 of the Bankruptcy Code, incurred after the first Business Day following delivery of the Carve-Out Trigger Notice by the Professional Persons in an aggregate amount not to exceed $5,000,000 (the "***Post Carve-Out Trigger Cap***").

Neither this Paragraph 18 nor any other provision of this Final Order shall be construed as consent to the allowance of any fees, disbursements, costs or expenses of any Professional Persons, nor shall any such provision affect the rights of the Debtors, the Prepetition Agent or any other party in interest to object to the allowance and payment of any such fees, disbursements, costs or expenses.

19.     Carve-Out Trigger Notice.  The term "***Carve-Out Trigger Notice***" means written notice delivered at the direction of the Requisite DIP Lenders to the Debtors and their counsel, the United States Trustee, the Senior Indenture Trustee and its counsel, and the counsel for any Statutory Committee, which notice may be delivered following (a) the occurrence of a Termination Event and (b) the acceleration or maturity of the DIP Obligations, stating that (i) a Termination Event has occurred, (ii) the DIP Obligations have been accelerated or matured, and (iii) the Post Carve-Out Trigger Cap has been invoked.

20.     Limitation on Charging Expenses Against Collateral.

(a)     <u>Section 506(c) of the Bankruptcy Code</u>.  Except to the extent of the Carve-Out Expenses, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Requisite DIP Lenders, or the Requisite Noteholders, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Roll-Up Noteholders, the Senior Indenture Trustee or the Senior Secured Noteholders.

(b)     <u>Section 552 and 726 of the Bankruptcy Code</u>.  Pursuant to section 552 of the Bankruptcy Code, any proceeds of the Prepetition Collateral and the Adequate Protection Collateral are cash collateral of the applicable Adequate Protection Parties within the meaning of section 363(a) of the Bankruptcy Code.  In light of the DIP Agent's, DIP Lenders', Roll-Up Noteholders' and Steering Group of Senior Secured Noteholders' agreement to subordinate their DIP Liens, Adequate Protection Liens, Superpriority Claims and Adequate Protection Superpriority Claims to the Carve-Out Expenses, the DIP Lenders, Roll-Up Noteholders and the Adequate Protection Parties shall be entitled to all benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under sections 552(b)(i) and (ii) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, rents, issues or profits of any of their collateral.  Furthermore, (i) upon entry of this Final Order the Debtors and their estates shall be deemed to have irrevocably waived and have agreed not to assert any

claim or right under sections 552 or 726 of the Bankruptcy Code to avoid the imposition of the liens of the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties, and (ii) the Debtors and their estates shall be deemed to have irrevocably waived and have agreed not to assert any claim or right under sections 552 or 726 of the Bankruptcy Code to avoid the imposition of the liens of the Senior Indenture Trustee or the Senior Secured Noteholders, of any such entity on any property acquired by any of the Debtors or any of their estates or to seek to surcharge any costs or expenses incurred in connection with the preservation, protection or enhancement of, or realization by, the DIP Agent, the DIP Lenders, the Roll-Up Noteholders, the Senior Indenture Trustee or the Senior Secured Noteholders upon the DIP Collateral or the Prepetition Collateral.

21. <u>Use of Cash Collateral</u>. Subject to the terms of this Final Order and the DIP Credit Agreement, including, without limitation, (a) the limitations on the use of Cash Collateral in accordance with the Approved Budget, then in effect, and the Final Order, (b) the grant of the adequate protection set forth herein, (c) the potential termination of the authority to use Cash Collateral provided for in Paragraph 6 above, and (d) the provision for the Carve-Out Expenses, the Debtors are authorized to use all (i) funds of the Debtors (including any funds on deposit or maintained in any account by any of the Debtors, whether or not subject to a control agreement, and any funds that are proceeds, products, rents, issues or profits of the Collateral), including the contents of all of the deposit accounts and securities accounts of the Debtors; and (ii) proceeds, products, rents, issues or profits of Collateral and all other cash collateral (as defined in the Bankruptcy Code) of the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties (collectively, "***Cash Collateral***"). The Debtors are enjoined and prohibited from using

Cash Collateral in a manner not expressly authorized by this Final Order, the DIP Credit Agreement and the Approved Budget then in effect.

22.     <u>Adequate Protection</u>.  The Adequate Protection Parties are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in their respective Prepetition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value (each such diminution, a "***Diminution in Value***") of the Adequate Protection Parties' security interests in the Prepetition Collateral as a result of, among other things, the Debtors' sale, lease or use of Cash Collateral and any other Prepetition Collateral, the priming of the Adequate Protection Parties' security interests and liens in the Prepetition Collateral by the DIP Agent, the DIP Lenders and the Roll-Up Noteholders pursuant to the DIP Loan Documents and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code or otherwise.  As adequate protection, the Adequate Protection Parties are granted the following (collectively, the "***Adequate Protection Obligations***"):

(a)     <u>Adequate Protection Liens.</u>  As security for and solely to the extent of any Diminution in Value of the Prepetition Security Interests, the Senior Indenture Trustee (for itself and for the respective benefit of the applicable Adequate Protection Parties) are granted, effective and perfected upon the date of this Final Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements, a replacement security interest in and lien upon all the DIP Collateral other than the Avoidance Action Proceeds (together, the "***Adequate Protection Liens***"), subject and subordinate only to (i) the Carve-Out Expenses, (ii) the liens securing the DIP Obligations, and (iii) Ad Valorem Liens.

(b)     Section 507(b) Claims.  Solely to the extent of any Diminution in Value of the Prepetition Security Interests, the Adequate Protection Parties are granted, subject to the payment of the Carve-Out Expenses, allowed superpriority administrative expense claims (the "*Adequate Protection Superpriority Claims*") as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Agent, the DIP Lenders and the Roll-Up Noteholders; provided, however, the Adequate Protection Superpriority Claims shall not be paid or satisfied with Avoidance Action Proceeds.

(c)     Fees and Expenses.  The Debtors shall make current cash payments of all (i) reasonable fees and expenses payable to the Senior Indenture Trustee under the Senior Indenture and Senior Note Documents, including the reasonable and documented fees and expenses of its professionals, and (ii) reasonable and documented professional fees and expenses of the DIP Lenders and certain Senior Secured Noteholders to their professionals, consisting of their counsel, Sidley Austin LLP, and their financial advisor Jefferies & Company, Inc. and any other counsel required for specific jurisdictions, promptly upon delivery of invoices therefor (provided without waiver of any applicable privileges or the protection of the attorney work product doctrine) to the Debtors and the DIP Agent and without the necessity of filing motions or fee applications, including such amounts arising before and after the Commencement Date; provided that, with respect to fees and expenses of professionals retained by the Senior Indenture Trustee, such reimbursement shall be limited to (x) Sheppard Mullin Richter & Hampton LLP, as counsel for the Senior Indenture Trustee, and (y) BDO Consulting, as financial advisor for the Senior Indenture Trustee.  Copies of invoices for the professionals of (i) the DIP

Agent, (ii) the DIP Lenders and certain Senior Secured Noteholders, and (iii) the Senior Indenture Trustee shall be provided, subject to applicable privileges, to the United States Trustee and Creditor's Committee at least five business days prior to the payment of such invoices. All fees and expenses of the Senior Indenture Trustee and its professionals or fees and expenses of certain Senior Secured Noteholders and its professionals paid by the Debtors prior to the Commencement Date are deemed paid as Adequate Protection and are not subject to recharacterization and are not avoidable or recoverable under any applicable law from the Senior Indenture Trustee, the Senior Secured Noteholders or any of such professionals. All amounts paid as Adequate Protection are deemed permitted uses and expenditures for purposes of the Financing and are permitted uses of Cash Collateral.

(d) <u>Financial Reporting</u>. The Debtors shall provide the Senior Indenture Trustee with financial and other reporting substantially in compliance with the Senior Indenture and any reporting requirements provided of in this Final Order and the DIP Credit Agreement.

(e) <u>Accrual of Interest</u>. Interest at the non-default rate under the Senior Indenture shall accrue but not be payable after the Commencement Date until the Termination Date. Such interest shall not be treated as Adequate Protection Superpriority Claims. The Senior Indenture Trustee and Senior Secured Noteholders reserve the right to seek the accrual and payment of interest at the contract rate, including any applicable default rate, under the Senior Indenture. The Debtors reserve the right to oppose any such efforts.

23.    <u>Additional Liens</u>.  All intercompany/affiliate liens of the Debtors, if any (other than any liens securing the DIP Obligations), are subordinated in all respects to the repayment of the DIP Obligations and the Adequate Protection Obligations.  All intercompany/affiliate liens among the Debtors' non-debtor affiliates or between such non-debtor affiliate and a Debtor, if any (other than any liens securing the DIP Obligations), are hereby subordinated to the repayment of the DIP Obligations and the Adequate Protection Obligations on terms consented to by the Requisite DIP Lenders.

24.    <u>Reservation of Rights of Adequate Protection Parties</u>.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Adequate Protection Parties.  However, any Adequate Protection Party may request further or different adequate protection at any time following entry of this Final Order, and the Debtors or any other party may contest any such request; <u>provided</u> <u>that</u>, any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent, the DIP Lenders and the Roll-Up Noteholders granted under this Final Order and the DIP Loan Documents.  Except as expressly provided herein, nothing contained in this Final Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to any Adequate Protection Party, the DIP Agent or any DIP Lender or Roll-Up Noteholder.

25.    <u>Perfection of the DIP Liens and Adequate Protection Liens</u>.

(a)    The Debtors, the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties are authorized, but not required, to file or record

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent, DIP Lenders, the Roll-Up Noteholders or Adequate Protection Parties shall elect to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge or dispute or subordination, and shall be effective from and after the date of entry of this Final Order. Upon the request of the DIP Agent and/or the Senior Indenture Trustee, without any further consent of any party, each Debtor is authorized to take, execute, deliver and file such instruments to enable the DIP Agent and/or the Senior Indenture Trustee to further validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. The Debtors shall execute and deliver to the DIP Agent and the Senior Indenture Trustee all such agreements, financing statements, instruments and other documents as the DIP Agent and/or the Senior Indenture Trustee may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens and the Adequate Protection Liens. All such documents will be deemed to have been recorded and filed as of the Commencement Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agent or the Senior Indenture Trustee, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices

of lien or similar instruments, and all such filing or recording offices are authorized to accept such certified copy of this Final Order for filing and recording.

26. <u>Preservation of Rights Granted Under this Final Order</u>.

(a) No claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Agent, the DIP Lenders, the Roll-Up Noteholders or the Adequate Protection Parties shall be granted or allowed prior to the Satisfaction of the DIP Loans or while any portion of the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless and until the Satisfaction of the DIP Loans occurs and the Adequate Protection Obligations have been indefeasibly paid in cash in full or satisfied in a manner otherwise agreed to by beneficial holders of 75% in amount of the outstanding principal amount the Senior Secured Notes (excluding the Roll-Up Notes if a Roll-Up Event has occurred) (the "***Requisite Noteholders***") (the "***Satisfaction of the Adequate Protection Obligations***"), the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Loan Documents and a Termination Event under this Final Order if any of the Debtors seek, or if there is entered, (i) any modification or extension of this Final Order without the prior written consent of the Requisite DIP Lenders, or (ii) an order converting or dismissing any of the Chapter 11 Cases, unless otherwise consented to by the Requisite DIP Lenders.

(c)     If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the superpriority claims, priming liens, security interests and replacement security interests granted to the DIP Agent, the DIP Lenders and the Roll-Up Noteholders, and, as applicable, the Adequate Protection Parties pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until the Satisfaction of the DIP Loans and the Satisfaction of the Adequate Protection Obligations and that such superpriority claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in part (i) of this subsection.

(d)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect the validity, priority or enforceability of (i) any DIP Obligations or Adequate Protection Obligations, (ii) DIP Liens or Adequate Protection Liens, or (iii) Superpriority Claims or Adequate Protection Claims, related to or securing the use of any Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations, prior to the DIP Agent's and Senior Indenture Trustee's actual receipt of written notice of the effective date of such reversal, modification, vacation or stay.  All obligations and liens incurred or granted prior to the receipt of such notice shall continue to be governed in all respects by the original provisions of this Final Order and as applicable the DIP Loan Documents, and the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection

Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Loan Documents with respect to such obligations and liens.

(e) Except as expressly provided in this Final Order or in the DIP Loan Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, all other rights and remedies of the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties granted by the provisions of this Final Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization or a plan of liquidation in any of the Chapter 11 Cases (other than a Conforming Plan) and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations without the consent of the Requisite DIP Lenders and the consent of the Requisite Noteholders, as applicable. The terms and provisions of this Final Order and the DIP Loan Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Obligations, the DIP Liens, the Superpriority Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, the Roll-Up Noteholders or the Adequate Protection Parties granted by the provisions of this Final Order and the DIP Loan Documents shall continue in full force and effect until the

Satisfaction of the DIP Obligations and the Satisfaction of the Adequate Protection Obligations, as applicable, unless such obligations are satisfied as otherwise provided in this Final Order with the consent of the required parties.

27. <u>Limitation on Use of Financing Proceeds and Collateral</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Cash Collateral, Prepetition Collateral, DIP Collateral, proceeds of the Financing or part of the Carve-Out Expenses may be used for any of the following (each, a "***Lender Claim***") without the prior written consent of the Requisite DIP Lenders and Requisite Noteholders: (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under, or liens or claims granted under, this Final Order or any DIP Loan Document or Senior Note Document, (b) to assert any claim or cause of action against the DIP Agent, any DIP Lender, any Roll-Up Noteholder, the Senior Indenture Trustee or any Senior Secured Noteholder or their respective agents, affiliates, representatives, professionals, attorneys or advisors, (c) except to contest the occurrence or continuation of an Event of Default or Termination Event, to prevent, hinder or otherwise delay the DIP Agent's or the Senior Indenture Trustee's assertions, enforcement or realization on the Cash Collateral, the DIP Collateral or the Prepetition Collateral in accordance with the DIP Loan Documents, the Senior Note Documents or this Final Order, (d) to assert or prosecute any action for the establishment or avoidance of potential preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Senior Indenture Trustee or any Senior Secured Noteholder or their respective affiliates, representatives, professionals, attorneys or advisors in connection with matters related to the Senior Note Documents, the Senior Secured Obligations, the Prepetition Security Interests, or the Prepetition Collateral or (e) to seek to

modify any of the rights granted to the DIP Agent, the DIP Lenders, the Roll-Up Noteholders, or the Adequate Protection Parties hereunder or under the DIP Loan Documents or the Senior Note Documents; <u>provided</u> <u>that</u>, the Creditors' Committee and its professionals may investigate the Prepetition Security Interests and the Senior Secured Obligations, subject to any applicable law with respect to standing, commence any related proceedings as a representative of the Debtors' estates; <u>provided</u> <u>further</u> <u>that</u>, any costs and expenses incurred by the Creditors' Committee and its professional in such investigation, motion for standing or commencement of related proceedings shall not exceed $50,000.

28. <u>Deadline to Challenge the Debtors' Stipulations and the Binding Nature Thereof</u>.

(a) Subject to Paragraph 28(b) below, the stipulations and admissions contained in this Final Order, including, without limitation, in Paragraph 5, shall be binding on all entities (as defined in the Bankruptcy Code), including, without limitation, any Statutory Committee, unless, and solely to the extent that: (i) the Creditors' Committee or another party in interest has, subject to the limitations contained herein, including, among other things, in Paragraph 27, the requisite authority to and timely and properly files an adversary proceeding challenging the amount, validity, or enforceability of the Senior Secured Obligations, or the perfection or priority of the Prepetition Security Interests in the Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against the Senior Indenture Trustee or the Senior Secured Noteholders relating to the Senior Secured Obligations by no later than the date that is sixty (60) days after the entry of this Final Order (as applicable, the "***Challenge Period***"); and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed adversary proceeding. The applicable Challenge Period provided in

Paragraph 28(a)(i) may only be extended with the written consent of the Requisite Noteholders.

(b)     If no such adversary proceeding is timely and properly commenced during the Challenge Period, then, without further order of the Court, (i) the claims, liens and security interests of the Senior Indenture Trustee and the Senior Secured Noteholders shall be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any subsequent chapter 7 cases of any of the Debtors and shall not be subject to challenge by any party in interest as to validity, priority, extent, perfection or otherwise, and (ii) the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Senior Indenture Trustee and the Senior Secured Noteholders with respect to the Senior Note Documents or any conduct or transactions related thereto whether prepetition or postpetition.  However, if the Creditors' Committee or another party in interest commences an adversary proceeding within its respective Challenge Period, then such entity and only such entity shall not be bound by the stipulations and admissions expressly and specifically challenged in such timely adversary proceeding but only to the extent the Court rules in favor of such entity with respect to their specific challenge.  The stipulations and admissions shall remain binding on all other entities and shall have a preclusive effect as provided for in this Paragraph 28 on all entities that did not commence such an adversary proceeding within the applicable Challenge Period notwithstanding the commencement of any adversary proceedings by other entities. Notwithstanding the preceding sentence, if the Creditors' Committee commences a timely adversary proceeding during its Challenge Period, the stipulations and admissions expressly and specifically challenged in such timely adversary proceeding shall not be

binding on any party in interest to the extent the Court rules in favor of the Creditors' Committee with respect to its specific challenge. To the extent that the Creditors' Committee prevails on its timely filed adversary proceeding, the Bankruptcy Court may, consistent with applicable law and this Final Order, provide the Creditors' Committee, as plaintiff, with the remedies it seeks in its timely filed adversary proceeding. After the expiration of an entity's Challenge Period it may not join in any proceeding timely commenced by another entity, including by the Creditors' Committee.

(c)      Nothing in this Final Order vests or confers on any entity, including the Creditors' Committee and any other Statutory Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates with respect to the Senior Note Documents or the Senior Secured Obligations.

29.    <u>Credit Bid</u>.

(a)      The DIP Agent, upon the direction (and only upon the direction) of the Requisite DIP Lenders, and the Senior Indenture Trustee, upon the direction (and only upon the direction) of holders of 75% in amount of the Roll-Up Notes, if applicable, shall have the unqualified right to credit bid up to the full amount of the Revolving DIP Loan and the Roll-Up Notes separately or together and in any combination of the two in any sale of the DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the DIP Collateral that does not include an unqualified right to credit bid up to the full amount of the DIP Obligations by the DIP

Agent and the Senior Indenture Trustee, as provided for in this subparagraph, would not result in the DIP Agent or the DIP Lenders or the Roll-Up Noteholders receiving the indubitable equivalent of their claims and interests.

(b)     Notwithstanding anything to the contrary in the Senior Indenture, the Senior Indenture Trustee, upon the direction (and only upon the direction) of the Requisite Noteholders, shall have the unqualified right to credit bid up to the full amount of any remaining Adequate Protection Obligations and the Senior Secured Obligations separately or together and in any combination of the two in any sale of the DIP Collateral or Collateral, as applicable, subject to the Satisfaction of the DIP Loans, or as otherwise consented to by the Requisite DIP Lenders, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.  The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the DIP Collateral or Prepetition Collateral that does not include an unqualified right to credit bid up to the full amount of the Adequate Protection Obligations and/or the Senior Secured Obligations would not result in the Senior Indenture Trustee and the Senior Secured Noteholders receiving the indubitable equivalent of their claims and interests.  The rights and privileges granted in this paragraph shall survive and continue in full force and effect until the Adequate Protection Obligations and the Senior Secured Obligations have been indefeasibly paid in cash in full or satisfied in a manner otherwise agreed to by beneficial holders of 75% in amount of the outstanding principal amount of the Senior Secured Notes (excluding the Roll-Up Notes if a Roll-Up Event has occurred).

(c)     No person shall have the right or power to credit bid all or part of the Revolving DIP Loan, the Roll UP Notes, Adequate Protection Obligations or Prepetition Obligations, except as set forth above in this Paragraph 29.

30.     <u>Licenses</u>.  Without prejudice to the rights of any licensor to seek review at a final hearing to consider a Final Order, pursuant to sections 105, 363, 364 and 365 of the Bankruptcy Code, any provisions in any of the license agreements under which the Debtors is a licensee (other than a license agreement with respect to nonresidential real property, if any), that require the consent or approval of one or more of the Debtors' licensors, in order for Debtors to pledge or mortgage its interest in such agreement, or that prohibits or conditions the granting of any Liens herein, are and shall be deemed inconsistent with the provisions of the Bankruptcy Code and are and shall have no force and effect with respect to the transactions granting the DIP Liens and the Adequate Protection Liens by Debtors in accordance with this Final Order, the DIP Agreement and the other DIP Loan Documents; <u>provided</u>, <u>however</u>, that in the case of a license, the Debtors shall act under such license on behalf of the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties.

31.     <u>Continuing Liens in Favor of Senior Secured Notes</u>.  Until the payment in cash in full of all DIP Obligations, and until such time as the Senior Secured Obligations have been allowed or deemed to have been allowed in full in a final non-appealable order, the Debtors shall not make any payments on any of their other prepetition obligations other than to critical vendors, employees or other parties as provided in orders approved by the Requisite DIP Lenders and entered by the Bankruptcy Court.  The Prepetition Security Interests remain valid and enforceable in accordance with the terms of the Senior Indenture and related documents but with the relative priorities provided for in this Final Order.

32.     Conforming Plan.

(a)     A "***Conforming Plan***" is a plan of reorganization or a plan of liquidation for the Debtors that either (i) reflects the terms contained in the Plan Term Sheet attached to the Plan Support Agreement as *Exhibit "A"* or (ii) reflects terms consented to in writing by the Requisite DIP Lenders, and in either case, the filed form and substance of which is consented to by the Requisite DIP Lenders.

(b)     In the absence of the confirmation of a Conforming Plan and the occurrence of the effective date on or prior to a Termination Event, all DIP Obligations and Adequate Protection Obligations must be paid in full in cash following a Termination Event except as provided for in Paragraph 33 below.

(c)     A plan of reorganization or a plan of liquidation is not a Conforming Plan if it provides any preference or priority to any DIP Lender over any other DIP Lender or to any Roll-Up Noteholder or any Senior Secured Noteholder over any other Senior Secured Noteholder, in each case within each such class of holders of such claims and except to the extent otherwise expressly provided in the DIP Credit Agreement.

33.     Treatment of DIP Obligations and Adequate Protection Obligations. Notwithstanding anything contained herein and otherwise applicable provisions of the Bankruptcy Code to the contrary, including section 1129, (i) the treatment of the Revolving DIP Loan and the Roll-Up Notes under a chapter 11 plan (whether or not a Conforming Plan) shall not require the satisfaction of such Superpriority Claims in cash in full on the effective date if the treatment of such claims is otherwise acceptable to the Requisite DIP Lenders, and (ii) the treatment of the Adequate Protection Superpriority Claims under a chapter 11 plan (whether or not a Conforming Plan) shall not require the satisfaction of such Adequate Protection

Superpriority Claims in cash in full on the effective date if the treatment of such claims is otherwise acceptable to the Requisite Noteholders. Notwithstanding the foregoing, all Obligations under the DIP Credit Agreement owed to the DIP Agent, in its capacity as such, on account of its fees and costs are Superpriority Claims and may only be satisfied by payment in full in cash.

34. <u>Consent</u>. Any consent, election or agreement of any party provided for in this Final Order may be given or withheld in its sole discretion unless an alternative standard for the giving or withholding of such consent, election or agreement is expressly provided for herein. Furthermore, no consent to any action or provision provided for in this Final Order shall be implied by any action, inaction or acquiescence by the party empowered to give or withhold such consent.

35. <u>Order Governs</u>. In the event of any inconsistency between the provisions of this Final Order and the DIP Loan Documents, the provisions of this Final Order shall govern.

36. <u>Amendments to the DIP Credit Agreement</u>.

(a) The definition of "Current Period" appearing in the DIP Credit Agreement is amended and restated in its entirety to read as follows:

""<u>Current Period</u>" means, with respect to any Approved Budget, the first Fiscal Month covered thereby and the immediately following fiscal week of the Borrower; <u>provided</u>, <u>however</u>, if the Proposed Budget for the succeeding Fiscal Month has been neither approved nor expressly rejected by the Requisite Lenders in accordance with Section 5.13(a) by the last day of such fiscal week, then the Current Period for such Approved Budget shall also include the second Fiscal Month covered by such Approved Budget if and only if the Borrower, in good

faith, delivers to the Agent a further revised Proposed Budget and variance report within three Business Days of notice from the Agent that the original Proposed Budget has been neither approved nor expressly rejected by the Requisite Lenders."

(b)     The definition of "First Milestone Date" appearing in the DIP Credit Agreement is amended and restated in its entirety to read as follows:

""First Milestone Date" means the date that is 45 days after the Petition Date."

(c)     The definition of "Third Milestone Date" appearing in the DIP Credit Agreement is amended and restated in its entirety to read as follows:

""Third Milestone Date" means November 30, 2010."

37.     Binding Effect; Successors and Assigns. The DIP Loan Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Roll-Up Noteholders, the Adequate Protection Parties, any Statutory Committee, and the Debtors and each of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties, provided, however, that except to the extent expressly set forth in this Final Order with respect to the Carve-Out Expenses, the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties shall not have any obligation to permit the use of Cash Collateral or extend any financing to any chapter 7

trustee or similar responsible person appointed for the estate of any Debtor. In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise), to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Loan Documents, the DIP Agent, the DIP Lenders, the Roll-Up Noteholders and the Adequate Protection Parties shall not (i) be deemed to be in control of the operations of the Debtors, or (ii) owe any fiduciary duty to any of the Debtors, their respective creditors, shareholders or estates.

38. _Effectiveness_. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable _nunc pro tunc_ to the Commencement Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

Dated: October 27, 2010     /s/Burton R. Lifland_____
   New York, New York    UNITED STATES BANKRUPTCY JUDGE