Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                          :
**In re**                                 :       **Chapter 11**
                                          :
**BLOCKBUSTER INC., et al.,**[1]          :       **Case No. 10-14997 (BRL)**
                                          :
                                          :       **(Jointly Administered)**
              **Debtors.**                :
-----------------------------------------------------------x

## SUMMARY SHEETS PURSUANT TO
## UNITED STATES TRUSTEE GUIDELINES
## FOR REVIEWING APPLICATIONS FOR COMPENSATION
## AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

### FIRST INTERIM APPLICATION

NAME OF APPLICANT:          Weil, Gotshal & Manges LLP

TIME PERIOD:                September 23, 2010 through and including January 31,
                            2011

ROLE IN THE CASE:           Attorneys for the Debtors

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

CURRENT APPLICATION:     Total Fees Requested: $3,078,770.25

                    Total Expenses Requested: $102,072.66

PRIOR APPLICATIONS:     N/A

## COMPENSATION BY PROFESSIONAL
## SEPTEMBER 23, 2010 THROUGH JANUARY 31, 2011

| NAME OF PROFESSIONAL<br><br>PARTNERS & OF COUNSELS: | DEPARTMENT AND YEAR ADMITTED[2] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Baer, Lawrence J. | L-1984 | $780.00 | 3.80 | $2,964.00 |
| Ballack, Karen N. | C-1987 | $900.00 | 2.00 | $1,800.00 |
| Ballack, Karen N. | C-1987 | $845.00 | 7.10 | $5,999.50 |
| Beagles, Vance L. | L-1993 | $875.00 | 138.30 | $110,206.25 |
| Beagles, Vance L. | L-1993 | $845.00 | 9.00 | $7,605.00 |
| Dicker, Howard B. | C-1989 | $925.00 | 0.40 | $370.00 |
| Friedlander, Gilbert | C-1972 | $925.00 | 152.10 | $136,067.50 |
| Gold, Simeon | C-1972 | $1,075.00 | 12.50 | $13,437.50 |
| Gold, Simeon | C-1974 | $990.00 | 20.00 | $19,800.00 |
| Goldring, Stuart J. | T-1984 | $1,075.00 | 5.00 | $5,375.00 |
| Goldring, Stuart J. | T-1984 | $990.00 | 29.00 | $28,710.00 |
| Himelfarb, P.J. | C-1991 | $780.00 | 1.30 | $1,014.00 |
| Horton, Jr., William H. | T-1976 | $925.00 | 3.40 | $3,145.00 |
| Horton, Jr., William H. | T-1976 | $865.00 | 43.60 | $37,714.00 |
| Kam, Michael K. | T-1981 | $1,000.00 | 3.10 | $3,100.00 |
| Karotkin, Stephen | BFR-1977 | $1,075.00 | 53.50 | $57,512.50 |
| Karotkin, Stephen | BFR-1977 | $990.00 | 144.10 | $142,659.00 |
| Rusman, Jared M. | T-1994 | $975.00 | 1.60 | $1,560.00 |
| Rusman, Jared M. | T-1994 | $900.00 | 0.70 | $630.00 |

[2] BFR – Business Finance & Restructuring, C – Corporate, LR – Litigation/Regulatory, T – Tax

| Sosland, Martin A. | BFR-1984 | $975.00 | 109.70 | $97,158.75 |
|---|---|---|---|---|
| Sosland, Martin A. | BFR-1984 | $900.00 | 323.20 | $268,110.00 |
| Stangland, Elaine | C-1978 | $975.00 | 1.20 | $1,170.00 |
| Stangland, Elaine | C-1978 | $900.00 | 7.00 | $6,300.00 |
| Tsekerides, Theodore E. | L-1994 | $740.00 | 0.40 | $296.00 |
| Waksman, Ted S. | C-1973 | $1,075.00 | 0.10 | $107.50 |
| **Total Partners and Of Counsel** | | | **1,072.10** | **$952,811.50** |

| NAME OF PROFESSIONAL | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| **ASSOCIATES:** | | | | |
| Arons, Andrew | C-2009 | $560.00 | 0.70 | $392.00 |
| Bharj, Amardeep K. | BFR-2009 | $495.00 | 56.50 | $27,967.50 |
| Bharj, Amardeep K. | BFR-2009 | $395.00 | 359.10 | $141,844.50 |
| Bishop, Andrew | C-2007 (London) | $665.00 | 5.80 | $3,857.00 |
| Borun, Katherine G. | C-2008 | $455.00 | 11.50 | $5,232.50 |
| Bronder, Vigdis | C-2007 | $515.00 | 1.70 | $875.50 |
| Burke, Kathlene | BFR-2008 | $560.00 | 76.90 | $43,064.00 |
| Burke, Kathlene | BFR-2008 | $455.00 | 332.70 | $150,718.75 |
| Burns, Gregory C. | T-2006 | $550.00 | 0.30 | $165.00 |
| Carter, William J. | C-2009 (London) | $530.00 | 4.40 | $2,332.00 |
| Chen, Charlie | BFR-2007 | $515.00 | 8.20 | $4,223.00 |
| Dummer, David W. | L-1999 | $750.00 | 38.80 | $29,100.00 |
| Dummer, David W. | L-1999 | $695.00 | 21.10 | $14,664.50 |
| Eckols, Erin D. | L-2003 | $740.00 | 15.50 | $11,470.00 |
| Eckols, Erin D. | L-2003 | $665.00 | 10.80 | $7,182.00 |
| Feit, Adam J. | C-2009 | $560.00 | 4.60 | $2,576.00 |
| Fusco, Sandra Y. | L-2009 | $495.00 | 12.20 | $6,039.00 |
| Ger, Kwang-chien B. | C-2003 | $740.00 | 5.10 | $3,774.00 |
| Ghose, Dev A. | C-2007 | $515.00 | 43.10 | $22,196.50 |
| Goren, Matthew | BFR-2007 | $645.00 | 0.20 | $129.00 |
| Gray, Edward K. | C-2006 | $645.00 | 8.20 | $5,289.00 |
| Gray, Edward K. | C-2006 | $550.00 | 23.50 | $12,925.00 |
| Hall, Dana | BFR-2009 | $495.00 | 31.20 | $15,444.00 |
| Hall, Dana | BFR-2009 | $395.00 | 273.70 | $107,933.75 |
| Hoehne, Debora | BFR-2007 | $600.00 | 107.20 | $63,840.00 |
| Hoehne, Debora | BFR-2007 | $515.00 | 397.70 | $203,811.25 |
| Kaplan, Jaime S. | L-2006 | $595.00 | 0.50 | $297.50 |
| Khan, Kamran A. | Contract Attorney | $250.00 | 22.30 | $5,575.00 |
| Larson, Michelle V. | BFR-1996 | $750.00 | 3.60 | $2,700.00 |

iv

| Larson, Michelle V. | BFR-1996 | $695.00 | 6.20 | $4,309.00 |
|---|---|---|---|---|
| Mapes, Justin G. | C-2003 | $740.00 | 5.20 | $3,848.00 |
| Merson, Regina | BFR-2007 | $600.00 | 120.60 | $72,360.00 |
| Merson, Regina | BFR-2007 | $515.00 | 439.90 | $226,188.00 |
| Meyrowitz, Melissa | C-1999 | $695.00 | 2.50 | $1,737.50 |
| Nagar, Roshelle A. | C-1989 | $695.00 | 0.30 | $208.50 |
| Napalkova, Ekaterina | T-2009 | $430.00 | 7.60 | $3,268.00 |
| Ortiz, Heather L. | Contract Attorney | $250.00 | 26.00 | $6,500.00 |
| Persons, Charles M. | BFR-2007 | $600.00 | 124.00 | $74,400.00 |
| Persons, Charles M. | BFR-2007 | $515.00 | 94.90 | $48,873.50 |
| Petherbridge, Vaughan | C-2008 | $740.00 | 0.30 | $222.00 |
| Pohl, Joshua | T-2006 | $645.00 | 1.60 | $1,032.00 |
| Pohl, Joshua | T-2006 | $550.00 | 27.20 | $14,960.00 |
| Quinn, Georgia D. | C-2007 | $515.00 | 0.90 | $463.50 |
| Saavedra, Andrea C. | BFR-2006 | $645.00 | 109.40 | $70,563.00 |
| Saavedra, Andrea C. | BFR-2006 | $550.00 | 398.10 | $218,680.00 |
| Shachar, Sharon | T-2003 | $740.00 | 3.50 | $2,590.00 |
| Shachar, Sharon | T-2003 | $665.00 | 25.00 | $16,625.00 |
| Shiffman, Jonathan | L-2000 | $750.00 | 7.00 | $5,250.00 |
| Shim, Suhan | C-2009 | $495.00 | 6.80 | $3,366.00 |
| Shim, Suhan | C-2009 | $395.00 | 53.00 | $20,935.00 |
| Shulzhenko, Oleksandr | C-2000 | $750.00 | 15.20 | $11,400.00 |
| Shulzhenko, Oleksandr | C-2000 | $695.00 | 165.40 | $114,953.00 |
| Stewart, Benjamin L. | L-2004 | $685.00 | 10.30 | $7,055.50 |
| Stewart, Benjamin L. | L-2004 | $595.00 | 16.80 | $9,996.00 |
| Thomas, Rebecca A. | BFR-2006 | $550.00 | 144.60 | $79,337.50 |
| Vigneaux, Rachel S. | C-2010 | $430.00 | 1.50 | $645.00 |
| Ward, Monty A. | C-2005 | $685.00 | 105.40 | $67,746.50 |
| Ward, Monty A. | C-2005 | $595.00 | 64.10 | $38,139.50 |
| **Total Associates** | | | **3,860.40** | **$2,021,270.25** |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff And Other Non-Legal Staff | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Aliseo, Nicole K. | Paralegal | $210.00 | 4.00 | $840.00 |
| Amponsah, Duke | Paralegal | $230.00 | 3.20 | $736.00 |
| Amponsah, Duke | Paralegal | $200.00 | 3.30 | $660.00 |
| Bartram, Lyle S. | Paralegal | $250.00 | 20.20 | $5,050.00 |
| Bartram, Lyle S. | Paralegal | $230.00 | 17.90 | $4,117.00 |
| Bennett, Victoria A. | Paralegal | $230.00 | 2.00 | $460.00 |
| Bettini, Elio | Library Staff | $125.00 | 1.30 | $162.50 |
| Blakey, Lewis | Law Clerk (London) | $295.00 | 1.00 | $295.00 |
| Burns, Jo Nan | Paralegal | $260.00 | 1.90 | $494.00 |
| Cade, Nancy P. | Paralegal | $265.00 | 8.50 | $2,252.50 |
| Carmant, Marie J. | Library | $145.00 | 1.20 | $174.00 |
| Etienne, Donald | Paralegal | $200.00 | 6.80 | $1,360.00 |
| Etienne, Donald | Paralegal | $180.00 | 22.80 | $3,987.00 |
| Ghodasara, Priya K. | Paralegal | $175.00 | 85.50 | $14,962.50 |
| Ghodasara, Priya K. | Paralegal | $160.00 | 278.00 | $44,480.00 |
| Haiken, Lauren C. | Litigation Support | $210.00 | 9.00 | $1,890.00 |
| Lee, Kathleen | Paralegal | $275.00 | 13.60 | $3,740.00 |
| Losick, Merrill | Library | $195.00 | 1.70 | $331.50 |
| Lyon, Andrew H. | Paralegal | $160.00 | 12.10 | $1,936.00 |
| McLeland, Janet | Paralegal | $215.00 | 20.40 | $4,386.00 |
| Merritt, Lindsay | Law Clerk (London) | $255.00 | 1.00 | $255.00 |
| Roberts, Sarah B. | Paralegal | $265.00 | 0.20 | $53.00 |
| Roberts, Sarah B. | Paralegal | $230.00 | 2.00 | $460.00 |
| Robin, Artur | Litigation Support | $215.00 | 4.10 | $881.50 |
| Schoenfeld, Matthew | Paralegal | $160.00 | 3.50 | $560.00 |
| Shapiro, Rachel | Paralegal | $160.00 | 5.10 | $816.00 |
| Shrestha, Christine | Paralegal | $275.00 | 1.70 | $467.50 |

| | | | | |
|---|---|---|---|---|
| Stauble, Christopher A. | Paralegal | $290.00 | 0.30 | $87.00 |
| Stauble, Christopher A. | Paralegal | $275.00 | 7.50 | $2,062.50 |
| Tily, Michael T. | Paralegal | $180.00 | 10.10 | $1,818.00 |
| Wilmer, Andrea | Paralegal | $180.00 | 27.30 | $4,914.00 |
| **Total Paraprofessionals** | | | **577.20** | **$104,688.50** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $888.73 | 1,072.10 | $952,811.50 |
| Associates | $523.59 | 3,860.40 | $2,021,270.25 |
| Paraprofessionals | | 577.20 | $104,688.50 |
| **Total Fees Incurred** | | **5,509.70** | **$3,078,770.25** |
| **Blended Attorney Rate** | **$602.96** | | |

## COMPENSATION BY PROJECT CATEGORY
### SEPTEMBER 23, 2010 THROUGH JANUARY 31, 2011

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 001 | Case Administration | 824.00 | $ 345,758.00 |
| 002 | Creditors' Committee/Unsecured Creditors Issues | 404.20 | 278,807.50 |
| 003 | Secured Creditors Issues/Meetings/Communications | 17.70 | 16,898.00 |
| 004 | General Case Strategy | 186.90 | 130,789.50 |
| 005 | Hearings and Court Matters | 328.30 | 167,043.00 |
| 006 | WG&M Retention/Billing/Fee Applications | 139.00 | 44,423.50 |
| 007 | Retention/Fee Application: Ordinary Course Professionals | 51.90 | 23,486.00 |
| 008 | Retention/Fee Application: Other Professionals | 294.00 | 146,772.00 |
| 009 | Schedules/Statement of Financial Affairs | 43.00 | 21,525.50 |
| 010 | US Trustee | 37.40 | 17,866.50 |
| 011 | General Business Operations (including international) | 130.40 | 98,976.50 |
| 012 | Corporation Governance and Securities Issues | 311.70 | 241,293.50 |
| 013 | DIP Financing | 398.40 | 246,755.00 |
| 014 | Insurance Issues | 100.20 | 47,640.50 |
| 015 | Employee/ERISA/Benefits Issues | 34.30 | 20,797.00 |
| 016 | Asset Dispositions/363 Sales | 153.90 | 100,009.50 |
| 017 | De Minimus Asset Sales | 12.10 | 4,450.50 |
| 018 | Real Property & Lease Issues | 538.80 | 304,893.00 |
| 019 | Executory Contracts other than Store Leases | 90.20 | 42,826.00 |
| 020 | Adversary Proceedings | 19.90 | 8,079.50 |
| 021 | Claims Objections Litigation | 20.40 | 12,832.00 |
| 022 | Bar Date Motion and Claims Reconciliation Issues | 22.20 | 12,944.00 |
| 023 | Automatic Stay | 16.80 | 10,480.00 |
| 024 | Business Plan | 17.50 | 8,470.50 |
| 025 | Disclosure Statement & Plan of Reorganization | 132.20 | 68,895.50 |
| 026 | Exclusivity | 37.90 | 20,402.00 |
| 027 | Tax Issues | 156.00 | 117,995.50 |
| 028 | Utility Issues | 397.10 | 206,327.50 |
| 029 | Vendor, Reclamation and Critical Vendor Issues (Studios) | 126.00 | 82,717.50 |
| 030 | Vendor, Reclamation and Critical Vendor Issues (Non-Studios) | 140.90 | 69,706.50 |
| 031 | Customer Issues | 1.00 | 610.00 |
| 032 | Non-Bankruptcy Litigation | 183.60 | 97,973.00 |
| 033 | Non-Working Travel | 128.10 | 107,838.50 |
| 034 | Administrative Claims | 13.70 | 6,406.50 |
| **Subtotal for all Task Codes:** | | **5,509.70** | **$3,132,689.50** |
| **(Less 50% Reduction for Non-Working Travel):** | | | **$  53,919.25** |
| **ADJUSTED TOTAL FOR ALL TASK CODES:** | | **5,509.70** | **$3,078,770.25** |

**EXPENSE SUMMARY**
**SEPTEMBER 23, 2010 THROUGH JANUARY 31, 2011**

| EXPENSES | AMOUNTS |
|---|---|
| Local Transportation | $4,931.08 |
| Conference Meals | 2,980.00 |
| Duplicating and Related Services | 19,328.24 |
| Express Mail, Postage, and Messenger Service | 987.34 |
| Corporation Service | 145.29 |
| Telephone and Facsimile Copies | 263.09 |
| Court Reporting | 2,456.80 |
| Electronic Research | 21,457.69 |
| Domestic Travel | 36,016.13 |
| Filing Fees | 13,507.00 |
| **Total Expenses Requested:** | **$102,072.66** |

x

Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **Blockbuster Inc., *et al.*,**[1] | : | **Case No. 10-14997 (BRL)** |
|  | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.** | : |  |

-------------------------------------------------------------x

**FIRST APPLICATION OF**
**WEIL, GOTSHAL & MANGES LLP,**
**ATTORNEYS FOR THE DEBTORS, FOR INTERIM**
**ALLOWANCE OF COMPENSATION FOR PROFESSIONAL**
**SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY**
**EXPENSES INCURRED FROM SEPTEMBER 23, 2010 THROUGH JANUARY 31, 2011**

TO THE HONORABLE BURTON R. LIFLAND,
UNITED STATES BANKRUPTCY JUDGE:

        Weil, Gotshal & Manges LLP ("*WGM*"), attorneys for Blockbuster Inc. and its

debtor affiliates, as debtors and debtors in possession (collectively, "*Blockbuster*" or the

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B² LLC (5219).

"***Debtors***"),[2] hereby files this application (the "***Application***") and respectfully represents as follows:

## I.

## PRELIMINARY STATEMENT

1.      WGM requests, pursuant to sections 330(a) and 331 of chapter 11 of the Bankruptcy Code and Bankruptcy Rule 2016, the interim allowance of compensation for professional services performed by WGM for the period commencing September 23, 2010 through and including January 31, 2011 (the "***Compensation Period***"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period.

2.      Since the Commencement Date, WGM has expended significant time and attention in these chapter 11 cases.  Specifically, in the first 131 days of these cases, WGM has, among other things:  (i) resolved various disputes relating to the Debtors' debtor-in-possession financing (the "***DIP Facility***"); (ii) requested and subsequently implemented relief with respect to significant operational matters, including entering into accommodation agreements with certain studios and agreements with certain other essential vendors, the establishment of store closing sale procedures, and others; (iii) resolved numerous requests for relief from the automatic stay; (iv) prepared the Debtors' schedules of assets and liabilities and statements of financial affairs; (v) facilitated the Debtors' entry into the Purchase Agreement (as defined herein) and drafted a motion to obtain Court approval of the Debtors' expedited sale of substantially all of

---

[2] Information regarding Blockbuster's business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the *Affidavit of Jeffery J. Stegenga Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions* [Docket No. 3] (the "***First Day Affidavit***"), filed on September 23, 2010 (the "***Commencement Date***"), the date on which each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").  The Debtors are authorized to continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").  Further, on October 1, 2010, the United States Trustee for Region 2 (the "***U.S. Trustee***") appointed a statutory committee of unsecured creditors (the "***Creditors' Committee***").

their assets (the "**363 Sale**"); and (vi) otherwise devoted extensive time and attention to the

administration of these chapter 11 cases in order to maximize the value of the Debtors' estates.

3.    During the Compensation Period, WGM (i) prepared and filed 56 motions,

applications, responses, and supplements, as well as 19 declarations, affidavits, notices of filing,

monthly operating reports, and related matters; (ii) participated in and prepared for 8 hearings;

(iii) obtained 56 interim and final orders on the Debtors' behalf, ensuring the efficient

administration of these cases and securing much needed relief for the Debtors; and (iv)

performed all of the other professional services described in this Application.

## II.

## BACKGROUND

4.    On September 23, 2010, the Debtors filed the *Debtors' Application*

*Pursuant to 11 U.S.C. §§ 327(a) and 328(a) of the Bankruptcy Code and Fed. R. Bankr. P.*

*2014(a) and 2016 for Authorization to Employ and Retain Weil, Gotshal & Manges LLP as*

*Attorneys for the Debtors Nunc Pro Tunc to the Commencement Date* [Docket No. 22].

5.    By Order of this Court, entered October 27, 2010, the Debtors were

authorized to retain WGM as their attorneys to render legal services in connection with these

chapter 11 cases.[3]  The Retention Order authorized WGM to be compensated on an hourly basis

and to be reimbursed for actual and necessary out-of-pocket expenses, in accordance with

sections 330 and 331 of the Bankruptcy Code, applicable provisions of the Bankruptcy Rules, the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), and the

Guidelines (as defined below).

---

[3] *Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Fed. R. Bankr. P. 2014(a) and 2016 Authorizing the Employment of Weil, Gotshal & Manges LLP as Attorneys for the Debtors, Nunc Pro Tunc to the Commencement Date* [Docket No. 429] (the "**Retention Order**").

3

6.      The Debtors have advised WGM that, to date, they have paid all quarterly fees due to the U.S. Trustee and have filed all monthly operating reports with the U.S. Trustee.

7.      As further detailed in the First Day Affidavit, the commencement of these chapter 11 cases was the result of months-long negotiations between the Debtors and certain of the holders (the "*Steering Committee*") of approximately 80% in principal amount of the 11.75% Senior Secured Notes due 2014 issued by Blockbuster Inc. (the "*Senior Secured Notes*"). Specifically, immediately prior to the Commencement Date, Blockbuster entered into a Plan Support Agreement (the "*PSA*") with the Steering Committee pursuant to which they agreed to the terms of a chapter 11 plan (the "*Plan*"). The Plan contemplated the substantial deleveraging of Blockbuster by, among other things, converting all of the Senior Secured Notes into equity of the reorganized Blockbuster, thus providing the reorganized Blockbuster with a capital structure designed to have the financial flexibility necessary to enable pursuit of its business plan in an optimal manner.

8.      In connection with the PSA, the Steering Committee also agreed, subject to the participation rights of all holders of the Senior Secured Notes (collectively, the "*DIP Lenders*"), to provide the DIP Facility to the Debtors so as to ensure that Blockbuster's business had sufficient liquidity for ordinary course operations during the restructuring, which financing was approved by the Court after extensive negotiations with, and concessions to, the Creditors' Committee.[4]

---

4 The DIP Facility was approved pursuant to that certain *Final Order (I) Authorizing Postpetition Superpriority Secured Financing Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (II) Authorizing Postpetition Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364*, entered October 27, 2010 [Docket No. 432] (the "*DIP Order*").

9.      Due to, among other things, poor holiday sales, deteriorating business operations, the inability to reach a consensus with the DIP Lenders with respect to a long-term business plan and the failure to meet certain other milestones required by the PSA, the Debtors, in conjunction and in consultation with the Steering Committee, determined that the Plan was no longer feasible.  The Debtors and the Steering Committee thus agreed, in an effort to maximize the value of the Debtors' estates, to pursue a sale of substantially all of the Debtors' assets on an expedited basis under section 363 of the Bankruptcy Code.

10.     On February 21, 2011, the Debtors entered into that certain Asset Purchase and Sale Agreement (the "*Purchase Agreement*") providing for the sale of substantially all of their assets or the proceeds of those assets to a newly formed entity (the "*Purchaser*").  On February 21, 2011, the Debtors filed the Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363, 364, and Fed. R. Bankr. P. 2002, 4001, 6004, 6006, 9008, and 9014, for Entry of: (I) An Order Approving (A) Bid Procedures, (B) Stalking Horse Expense Reimbursement, (C) Notice of Sale, Auction, and Sale Hearing, (D) Assumption Procedures and Related Notices, (E) Incurrence of Sale-Related Administrative Priority Claims, and (F) Imposition of an Administrative Stay; and (II) An Order Approving the Sale of Substantially All of the Debtors' Assets [Docket No. 947] (the "*363 Sale Motion*").

11.     At a hearing before the Court on March 10, 2011, and after resolving or otherwise addressing numerous objections, the Court approved bidding procedures and an auction process in connection with the 363 Sale Motion.  In contemplation of the 363 Sale, an auction is currently scheduled to be held on April 4, 2011 and a subsequent hearing to approve the Debtors' 363 Sale is scheduled to be held on April 7, 2011.

## III.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

12.    This Application has been prepared in accordance with the U.S. Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "*UST Guidelines*"), the Bankruptcy

Court's *Amended Guidelines for Fees and Disbursements for Professionals in Southern District

of New York Bankruptcy Cases, M-389*, dated November 25, 2009 (the "*Local Guidelines*"), and

the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals*, entered October 20, 2010

[Docket No. 364] (the "*Administrative Order*", and together with the UST Guidelines and the

Local Guidelines, the "*Guidelines*").  Pursuant to the UST Guidelines, the Debtors have been

provided with a copy of the Application for their review and will have completed their review of

the same prior to the hearing on the Application.

13.    By this Application, WGM requests allowance of interim compensation

for professional services rendered to the Debtors during the Compensation Period in the amount

of $3,078,770.25 and expense reimbursements of $102,072.66.  During the Compensation

Period, WGM attorneys and paraprofessionals expended a total of approximately 5,509.70 hours

for which compensation is sought.

14.    In accordance with the Administrative Order, WGM has received

payments totaling $1,784,602.10 for the Compensation Period, which amount consists of

$1,713,509.40 representing 80% of the fees invoiced for the period from the Commencement

Date through and including December 31, 2010 and $71,092.70 representing 100% of the

expenses invoiced for the period from the Commencement Date through and including

6

December 31, 2010.  As of the date hereof, WGM has not received payment for the period of January 1, 2011 through and including January 31, 2011.  Pursuant to WGM's monthly statements for such period, WGM invoiced a total of $780,486.76 which amount consists of $749,506.80 representing 80% of the fees incurred, and $30,979.96 representing 100% of the expenses incurred.

15.    There is no agreement or understanding between WGM and any other person, other than members of the Firm, for the sharing of compensation to be received for services rendered in these cases.  Except as explained in the following paragraph, during the Compensation Period, other than pursuant to the Administrative Order, WGM has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

16.    Prior to the Commencement Date, Blockbuster Inc. paid WGM an aggregate amount of approximately $4.6 million on account of professional services rendered and as retainers for services to be rendered and for disbursements incurred and expenses advanced for disbursements to be incurred in connection with (i) Blockbuster's efforts prior to the commencement of these chapter 11 cases to restructure its obligations out of court, (ii) preparation for Blockbuster's chapter 11 cases, and (iii) certain other related matters.  As of the Commencement Date, WGM had a retainer balance in the amount of approximately $270,000.00 that, after being applied to outstanding amounts relating to the period prior to the Commencement Date which were not processed through WGM's billing system as of the Commencement Date, now amounts to $261,297.58.  The remaining amount may be applied against payment for services to be rendered and expenses to be incurred.

17.    The fees charged by WGM in these cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. The rates WGM charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

18.    Annexed hereto as *Exhibit "A"*, pursuant to the Local Guidelines, is a certification regarding compliance with the Guidelines.

19.    Annexed hereto as *Exhibit "B"*, pursuant to the UST Guidelines, is a schedule of WGM professionals and paraprofessionals who have performed services for the Debtors during the Compensation Period, the capacities in which each such individual is employed by WGM, the department in which each individual practices, the hourly billing rate charged by WGM for services performed by such individuals, the year in which each professional was first licensed to practice law, and the aggregate number of hours expended in this matter and fees billed therefor.

20.    Annexed hereto as *Exhibit "C"* is a schedule specifying the categories of expenses for which WGM is seeking reimbursement and the total amount for each such expense category.

21.    Annexed hereto as *Exhibit "D"*, pursuant to the UST Guidelines, is a summary of WGM's time records billed during the Compensation Period using project categories hereinafter described. WGM maintains computerized records of the time spent by all WGM attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

11 cases. Subject to redaction where necessary to preserve the attorney-client privilege, WGM

has provided itemized time records for WGM's services for the Debtors during the

Compensation Period to this Court, the U.S. Trustee, and the attorneys for the Creditors'

Committee.[5]

      22.    All entries itemized in WGM's time records comply with the requirements

set forth in the Guidelines, including the use of separate matter numbers for different project

types, as hereinafter described. WGM's itemized time records also detail expenses incurred on

behalf of the Debtors during the Compensation Period. All entries itemized in WGM's expense

records comply with the requirements set forth in the Guidelines.

## IV.

## SUMMARY OF SERVICES PERFORMED BY
## WGM DURING THE COMPENSATION PERIOD

      23.    As described above, in the first 131 days of these chapter 11 cases, WGM

has rendered an extraordinary level of professional services relating to matters arising during the

initial stages of these cases, stabilizing the Debtors' businesses and operations while

simultaneously downsizing the Debtors' brick-and-mortar retail operations, addressing the

various administrative and other issues typically confronted by debtors during chapter 11 cases,

and, finally, pursuing the 363 Sale on an expedited basis. Certain issues and responsibilities of

heightened importance to the Debtors' chapter 11 cases required significant attention from

WGM. Descriptions of some of the more important tasks performed by WGM with regard to

these issues are set forth in the preliminary statement and below.

---

[5] Due to the voluminous nature of WGM's Billing Summary Report ("*BSR*"), the BSR is not annexed as an exhibit to this Application. Copies of the BSR have been provided to this Court, the U.S. Trustee, and the attorneys for the Creditors' Committee. A summary of WGM's time billed during the Compensation Period by project category is included in the Summary Sheets filed contemporaneously with this Application, and described in detail below.

24.    <u>Debtor in Possession Financing</u>.  On the Commencement Date, WGM
filed the Debtors' motion seeking, among other things, approval of the DIP Facility.  Due to a
number of objections and various concerns expressed by interested parties, including various
landlords, taxing authorities, and the Creditors' Committee, WGM continued to engage in a
concerted effort to improve on the terms of such proposed financing in order to resolve such
objections, where possible, and obtain court approval of the DIP Facility.  Following WGM's
continued efforts and after extensive negotiations with, and concessions to, the Creditors'
Committee, on October 27, 2010, the Court issued the DIP Order, thereby approving the
Debtors' financing.

25.    <u>Asset Sales Other Than the 363 Sale</u>.  As further detailed in the First Day
Affidavit, prior to the Commencement Date, Blockbuster operated approximately 3,000 retail
store locations across the United States.  On October 21, 2010, the Court entered an order
approving certain procedures for the Debtors' rejection of unexpired leases of nonresidential real
property.[6]  Since that date, the Debtors have rejected more than 400 leases. Although many of
the stores associated with these leases had been closed prior to the Commencement Date, the
Debtors have closed more than 150 additional stores since the commencement of these chapter
11 cases.  In furtherance of the Debtors' efforts to downsize their brick-and-mortar retail
presence in the United States, WGM, on December 17, 2010, filed a motion seeking (i) authority
to continue to conduct store closing sales and bulk inventory sales and (ii) approval of
procedures with respect to ordinary course store closing sales (the "***Store Closing Motion***").
After extensive negotiations with landlords and taxing authorities regarding the Debtors' store

---

[6] *Order Establishing and Authorizing Procedures for the Rejection of Unexpired Leases of Nonresidential Real Property*, entered October 21, 2010 [Docket No. 362] (the "***Lease Rejection Procedures Order***").

closing procedures, on January 20, 2011, the Court entered an order approving the Store Closing Motion.[7]

26.    <u>Case Administration and Strategy</u>.  Additionally, due to the size and complexity of these cases, administration of the chapter 11 process is a large task that requires a significant expenditure of WGM's time and resources.  Keeping up to date with the case docket to ensure that matters are appropriately assigned and that deadlines are not missed is an important task involving both WGM attorneys and paraprofessionals.  For example, throughout the Compensation Period, WGM has held regular internal conference calls, as well as regular conference calls among the Debtors and their professionals, to manage case developments and provide an efficient forum for development of strategy on all aspects of these cases.  During the initial stages of these cases, WGM paraprofessionals and junior attorneys also worked to create, organize, and maintain systems to facilitate the orderly management of the volume of pleadings, correspondence, and documents generated by these cases.  In this regard, various calendars and dockets are kept and distributed to advise WGM professionals of upcoming deadlines, responsibilities, and hearings.

27.    <u>Continuation of Prepetition Business Practices and Retail Downsizing</u>.  WGM prepared and filed several motions to allow the Debtors to continue certain of their principal operations and to facilitate the Debtors' downsizing of their domestic brick-and-mortar retail operations.  In particular, and in addition to the Store Closing Motion and typical relief ordinarily sought at the outset of a chapter 11 case, WGM prepared and filed the Debtors' motions: (i) seeking authority to pay certain prepetition claims of secured and certain unsecured

---

[7] *Order Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 6004 Authorizing the Debtors to Continue to Conduct Store Closing Sales and Bulk Inventory Sales. Approving Procedures With Respect to Ordinary Course Store Closing Sales and Granting Ancillary and Related Relief*, entered January 20, 2011 [Docket No. 864].

movie studios and game providers and granting administrative expense priority status to all

undisputed obligations arising on account of such studios' claims on a postpetition basis (the

"***Studios Motion***"); (ii) requesting approval of procedures for the rejection of unexpired leases

(the "***Lease Rejection Procedures Motion***"); (iii) requesting approval of the Debtors' rejection

of certain unexpired leases as of the Commencement Date and authorization to abandon certain

property (the "***Omnibus Lease Rejection Motion***").    In October 2010, the Court entered orders

approving the Studios Motion, the Lease Rejection Procedures Motion, and the Omnibus Lease

Rejection Motion, and pursuant to these orders the Debtors were able to reduce expenses related

to burdensome leases and continue to operate their business and maintain their preexisting

relationship with various movie studios.

      28.    <u>Retention of Ordinary Course and Other Professionals</u>.  The efforts of

WGM attorneys were essential in the coordination and retention of the Debtors' 32 ordinary

course professionals (the "***Ordinary Course Professionals***").  The Ordinary Course

Professionals are law firms representing the Debtors in matters such as litigation, corporate,

intellectual property, labor and employment, and anti-trust matters.  Coordinating the retention of

these Ordinary Course Professionals required significant diligence and effort on the part of

WGM.  During the Compensation Period, it was also necessary for the Debtors to employ 11

other professionals who did not fall within the limitations set for the Ordinary Course

Professionals. WGM spent significant amounts of time working and preparing applications for

these professionals' retentions.  WGM worked with the U.S. Trustee to ensure that the requisite

disclosures and applications were adequate and, to the extent that more information was

required, worked with the professional to file supplemental affidavits.

29.    Exclusivity. WGM prepared and filed the Debtors' motion, pursuant to section 1121(d) of the Bankruptcy Code, seeking an extension of the Debtors' exclusive period to file a plan of reorganization and solicit acceptances thereof through and including March 21, 2011 and May 21, 2011, respectively, without prejudice to the right of the Debtors to seek further extension of such periods. On January 20, 2011, this Court granted the Debtors' requested extension of the exclusive periods.

30.    WGM rendered a substantial amount of other professional services in furtherance of the Debtors' chapter 11 cases during the Compensation Period. The following is a summary of the professional services rendered by WGM during the Compensation Period. This summary is organized in accordance with the internal system of work codes set up by WGM at the outset of these chapter 11 cases. If a work code listed on the Summary Sheets of this Application does not appear below, then WGM did not bill more than twenty (20) hours for that work code during the Compensation Period, but may bill a more significant amount of time for that work code during subsequent periods of compensation.

a.    Case Administration (Task Code 001)
Fees: $345,758.00; Hours: 824.00

- Prepared and filed chapter 11 petitons and related documents for 13 affiliate entities, including a corporate ownership statement and board resolutions;

- Coordinated and supervised service of notice of commencement of cases and first day pleadings;

- Reviewed and revised various proposed orders following filing of first day pleadings;

- Coordinated with Kurtzman Carson Consultants LLC ("*KCC*"), the Debtors' claims and noticing agent, to maintain and update the master service list;

- Prepared, filed, and coordinated service of various pleadings with KCC;

- Engaged in various e-mail and telephone communications with the Debtors, the Creditors' Committee, and the U.S. Trustee;

- Conducted internal team meetings, conferences, and teleconferences with the Debtors, their professionals, the Creditors' Committee, and other parties in interest regarding case administration, status of the chapter 11 cases, and various business-related issues;

- Prepared, reviewed, coordinated with the Debtors' professionals, and filed the Debtors' schedules of assets and liabilities and statements of financial affairs;

- Responded to numerous requests for information from parties in interest;

- Assisted KCC in establishing and maintaining websites and hotlines containing information regarding the Debtors, their professionals and management, the meeting of creditors pursuant to section 341 of the Bankruptcy Code (the "*341 Meeting*"), and copies of relevant documents, including proofs of claim;

- Maintained a case calendar and project tracking chart to promote efficiency in the administration of the chapter 11 cases;

- Maintained a call log to ensure that inquiries from creditors and other parties in interest were handled in an efficient and timely manner;

- Attended and participated in the Debtors' meetings with employees;

- Prepared and filed hearing agendas and various notices, including notices of scheduled, cancelled, and adjourned hearings and 341 Meeting;

- Tracked, reviewed, and provided the Debtors and their professionals with summaries of significant pleadings filed in the chapter 11 cases; and

- Consulted and corresponded with the Debtors regarding the preparation of the Debtors' monthly operating reports.

b.    Creditors' Committee/Unsecured Creditors Issues (Task Code 002)
      Fees: $278,807.50; Hours: 404.20

- Prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding the status and administration of the cases, settlement of estate causes of action, document demands, and various other issues;

- Coordinated with the Debtors' professionals to maintain a data room and respond to the Creditors' Committee's diligence requests in an efficient and timely manner;

- Engaged in review of various documents for purposes of responding to Creditors' Committee's discovery requests;

- Prepared objection to motion seeking discovery pursuant to Bankruptcy Rule 2004;

- Prepared for and participated in depositions conducted by the Creditors' Committee;

- Prepared for and participated in 341 Meetings; and

- Responded to a significant volume of telephone and e-mail inquiries from creditors regarding the chapter 11 cases.

c.    General Case Strategy (Task Code 004)
      Fees: $130,789.50; Hours: 186.90

- Prepared for and participated in meetings and teleconferences with WGM team, Debtors, Creditors' Committee, and Debtors' professionals regarding general case strategy, business structure, and strategy for reorganization of the Debtors' business; and

- Corresponded internally and with the Debtors regarding strategy for dealing with various discovery requests presented by the Creditors' Committee and other creditors.

d.    Hearings and Court Matters (Task Code 005)
      Fees: $167,043.00; Hours: 328.30

- Prepared for and attended court hearings, including the first day hearing, continued first day hearing, and 5 omnibus hearings;

- Obtained order establishing notice and case management procedures;

- Coordinated with the Court regarding hearings and agenda items;

- Monitored dockets for main cases and adversary proceeding;

e.    WG&M Retention/Billing/Fee Applications (Task Code 006)
Fees: $44,423,50; Hours: 139.00

- Prepared and filed WGM retention application, affidavit, and
  supplemental affidavits and conducted related research;

- Maintained and updated list of parties in interest for conflicts purposes for
  WGM and other retained professionals; and

- Reviewed monthly billing summary reports and prepared fee
  statements.

f.    Retention/Fee Application: Ordinary Course Professionals (Task Code 007)
Fees: $23,486.00; Hours: 51.90

- Reviewed and assessed the Debtors' needs to retain professionals and
  drafted and filed motion to retain professionals in the ordinary course of
  business;

- Drafted and reviewed retention questionnaire and form declaration in
  connection with same and conducted related research; and

- Conferred with the Debtors and ordinary course professionals regarding
  retention procedures and conflicts issues.

g.    Retention/Fee Application: Other Professionals (Task Code 008)
Fees: $146,772.00; Hours: 294.00

- Drafted, filed, and prosecuted motion and proposed order approving
  procedures for interim compensation of retained professionals and
  conducted related research;

- Drafted the Debtors' applications to retain various professionals,
  including, among others, Alvarez & Marsal North America, LLP
  ("*A&M*"), Rothschild Inc., Deloitte Tax LLP, Deloitte FAS LLP, and
  PricewaterhouseCoopers LLP, and assisted with the preparation and filing
  of supplemental affidavits and monthly fee statements;

- Participated in hearings regarding the Creditors' Committee's retention of
  FTI Consulting, Inc.;

- Conferred with various applicants regarding scope of retention, terms of
  compensation, and related issues;

- Conferred with U.S. Trustee regarding various retention issues;

- Drafted application and obtained Court approval to retain KCC;

- Responded to inquiries regarding monthly fee statements and assisted in the review, filing, and service of such statements for retained professionals; and

- Responded to formal and informal objections to retention applications and facilitated resolution thereof.

h.    Schedules/Statement of Financial Affairs (Task Code 009)
      Fees: $21,525.50; Hours: 43.00

- Prepared and filed motions requesting additional time to file schedules and statements of financial affairs and coordinated with the U.S. Trustee regarding same;

- Filed the First Date Affidavit and all related schedules and exhibits;

- Prepared and filed schedules required in connection with chapter 11 petitions;

- Reviewed drafts of and participated in conferences and teleconferences with A&M and the Debtors regarding preparation of schedules and statements; and

- Reviewed interrogatories filed by creditor regarding the Debtors' schedules and prepared responses to same.

i.    U.S. Trustee (Task Code 010)
      Fees: $17,866.50; Hours: 37.40

- Conferred on a regular basis with U.S. Trustee regarding all case matters, including retention issues, employee matters, hearing items, schedules and statements, case management procedures, interim compensation procedures, bank accounts, and proposed investments;

- Ensured compliance with U.S. Trustee Guidelines and payment of U.S. Trustee fees; and

- Assisted the Debtors in preparation and filing of monthly operating reports.

j.    General Business Operations (Including International) (Task Code 011)
Fees: $98,976.50; Hours: 130.40

- Advised the Debtors on continuation of their business operations while in chapter 11;

- Assisted Blockbuster in its bid for certain assets;

- Prepared, filed, and prosecuted motion authorizing continued use of cash management system;

- Conferred internally, with A&M, and with the Debtors regarding a potential wind-down plan for Argentina entity and the effect of the Debtors' chapter 11 cases on Blockbuster Inc.'s international operations and non-debtor affiliates; and

- Conferred with the Debtors and A&M regarding case administration and general operations in the ordinary course of business.

k.    Corporation Governance and Securities Issues (Task Code 012)
Fees: $241,293.50; Hours: 311.70

- Reviewed documents related to numerous transactions with respect to the Debtors' business and provided related advice;

- Prepared various documents, including Form 8-K and Form 10-Q, for filing with the Securities and Exchange Commission;

- Negotiated, drafted, and reviewed various nondisclosure agreements;

- Prepared a draft disclosure statement;

- Prepared amendments to the PSA and prepared an 8-K filing regarding disclosure of amendments to the PSA and DIP Facility; and

- Prepared for and attended Debtors' board meetings.

l.    DIP Financing (Task Code 013)
Fees: $246,755.00; Hours: 398.40

- Negotiated terms of DIP Facility and drafted, revised, and reviewed documentation for DIP Facility, including loan documents, closing deliverables, deposit account control agreements, and amendments;

- Prepared new officers' certificates for execution;

- Coordinated and reviewed various lien searches;

- Reviewed and coordinated compliance with reporting requirements under the DIP Facility agreement;

- Drafted a motion and proposed interim and final order, responded to objections, and prepared for and participated in hearing to obtain authorization for the Debtors' postpetition financing and use of cash collateral and conducted related research;

- Corresponded and participated in meetings and teleconferences regarding the DIP Facility and budget; and

m.    Insurance Issues (Task Code 014)
      Fees: $47,640.50; Hours: 100.20

- Prepared, filed, and prosecuted motion and proposed order to obtain authority for the Debtors to continue their workers compensation, liability, property, and other insurance programs and to pay certain prepetition obligations in connection therewith;

- Prepared, filed, and prosecuted Debtors' emergency motion granting First Insurance Funding Corporation lift stay relief in the event of Debtors' default and a lien in certain related insurance premiums;

- Prepared, filed, and prosecuted motion to assume certain existing insurance programs;

- Participated in numerous calls and other correspondence regarding various requests for additional collateral;

- Reviewed and analyzed the Debtors' various insurance policies and coverage, and corresponded and participated in meetings and teleconferences with the Debtors regarding same;

- Addressed issues and responded to multiple inquiries from the Debtors regarding insurance coverage;

- Engaged in multiple telephone calls and discussions with the Debtors and obtained extensions/renewals of certain insurance policies; and

- Performed research regarding various insurance-related issues.

n.    Employee/ERISA/Benefits Issues (Task Code 015)
      Fees: $20,797.00; Hours: 34.30

- Prepared, filed, and prosecuted motion to authorize payment of employee wages, benefit programs, and other obligations and conducted related research;

- Evaluated employee benefit programs and counseled the Debtors with respect to such programs; and

- Researched and participated in conferences and teleconferences regarding employee issues arising out of proposed 363 Sale.

o.    Asset Dispositions/363 Sale (Task Code 016)
      Fees: $100,009.50; Hours: 153.90

- Reviewed and conducted research regarding various regulatory and real estate issues relating to asset sales;

- Attended auction and assisted Blockbuster in its bid for certain assets;

- Prepared, filed, and prosecuted the Debtors' Store Closing Motion, responded to objections, and prepared for and participated in hearing to obtain Court approval of Debtors' store closing procedures;

- Researched various issues in connection with proposed 363 Sale;

- Participated in numerous conferences and teleconferences regarding issues surrounding the Debtors' proposed 363 Sale;

- Drafted, reviewed, and revised Purchase Agreement in contemplation of the proposed 363 Sale; and

- Drafted 363 Sale Motion and related pleadings.

p.    Real Property & Lease Issues (Task Code 018)
      Fees: $304,893.00; Hours: 538.80

- Prepared, filed, and prosecuted Debtors' Lease Rejection Procedures Motion and responded to objections thereto;

- Prepared, filed, and prosecuted Debtors' Omnibus Lease Rejection Motion;

- Prepared and filed numerous notices of rejection of unexpired leases;

- Participated in conferences and teleconferences regarding various issues surrounding the Debtors' leases;

- Conducted research regarding Debtors' obligations to pay obligations pursuant to various lease agreements;

- Prepared and filed several applications to retain real estate professionals pursuant to section 327(e);

- Objected to and negotiated to resolve motion seeking to compel the Debtors to assume or reject certain unexpired leases; and

- Prepared, filed, and prosecuted Debtors' motion seeking to extend the time to assume or reject unexpired leases and prepared and filed an omnibus response to objections.

q.    Executory Contracts Other Than Store Leases (Task Code 019)
Fees: $42,826.00; Hours: 90.20

- Reviewed information technology contracts and franchise contracts with respect to certain chapter 11 issues;

- Negotiated the terms of amendments to various of the Debtors' executory contracts;

- Reviewed various of the Debtors' executory contracts for termination provisions, extension provisions, and termination damages; and

- Researched issues and drafted research memo regarding assumption and rejection issues.

r.    Claims Objections Litigation (Task Code 021)
Fees: $12,832.00; Hours: 20.40

- Conducted research regarding class actions and class proofs of claim in bankruptcy;

- Corresponded internally regarding Debtors' response to class certification motion; and

- Corresponded with Debtors regarding the contours of a possible motion to establish alternative dispute resolution procedures.

s.    Bar Date Motion and Claims (Task Code 022)
Fees: $12,944.00; Hours: 22.20

- Drafted, filed, and prosecuted motion to establish bar dates, proposed bar date order, and notices regarding same;

- Corresponded internally and with the Debtors regarding the bar date and claims process; and

- Responded to inquiries regarding service of the bar date order, the filing of proofs of claim, and the scheduling of a bar date.

t.  Disclosure Statement and Plan of Reorganization (Task Code 025)
    Fees: $68,895.50; Hours: 132.20

- Prepared draft Plan and draft disclosure statement and researched various issues in connection therewith; and

- Participated in conferences and teleconferences regarding the preparation of Plan and disclosure statement.

u.  Exclusivity (Task Code 026)
    Fees: $20,402.00; Hours: 37.90

- Prepared, filed, and prosecuted motion to extend Debtors' period of exclusivity to propose a chapter 11 plan of reorganization.

v.  Tax Issues (Task Code 027)
    Fees: $117,995.50; Hours: 156.00

- Prepared, filed, and prosecuted motion to restrict transfers of interests in the Debtors and revised proposed orders relating thereto;

- Assisted in responding to state taxing authorities with respect to certain of the Debtors' state tax liabilities;

- Researched and analyzed issues regarding property taxes and prepetition tax issues;

- Analyzed and researched Plan-related tax considerations and participated in conferences and teleconferences regarding same;

- Reviewed DIP Facility documents and other corporate agreements and advised on tax implications of same;

- Researched and analyzed state tax issues, tax basis issues, net operating loss carryforwards, and other tax issues, and advised the Debtors with respect to same; and

- Reviewed Purchase Agreement and 363 Sale term sheet and advised on tax issues regarding same.

w.    <u>Utility Issues (Task Code 028)</u>
Fees: $206,327.50; Hours: 397.10

- Drafted motion to establish procedures for resolving objections by utility companies, and prohibit utilities from altering, refusing, or discontinuing service;

- Responded to objections to the Debtor's utility motion and negotiated adequate assurance payments;

- Drafted omnibus response to various utility objections;

- Researched utilities issues and conferred with client and utility providers regarding same; and

- Responded to termination notices from utilities.

x.    <u>Vendor, Reclamation and Critical Vendor Issues (Studios) (Task Code 029)</u>
Fees: $82,717.50; Hours: 126.00

- Prepared, filed, and prosecuted Studios Motion, interim order, and final order;

- Prepared response to creditor objection to Studios Motion;

- Researched various issues relating to studios' rights to reclamation and 503(b)(9) claims;

- Reviewed and revised various studio accommodation agreements; and

- Participated in conferences and teleconferences regarding various studio issues.

y.    <u>Vendor, Reclamation and Critical Vendor Issues (Non-Studios) (Task Code 030)</u>
Fees: $69,706.50; Hours: 140.90

- Prepared, filed, and prosecuted motion to obtain authorization to pay prepetition claims of certain essential vendors;

- Responded to inquiries from vendors;

- Participated in teleconferences and conferences with the Debtors and the Debtors' professionals to resolve vendor disputes and other inquiries; and

- Reviewed vendor contracts and corresponded with vendors regarding various issues.

z.   Non-Bankruptcy Litigation (Task Code 032)
     Fees: $97,973.00; Hours: 183.60

- Responded to requests of various litigants to lift the automatic stay and drafted and reviewed stipulations consenting to certain limited requests;

- Drafted motion seeking authority to establish alternative dispute resolution procedures for the resolution of various litigation matters; and

- Drafted and filed objection to motion seeking to certify classes of plaintiffs and allow class proof of claim.

aa.   Non-Working Travel (033)
      Fees: $53,919.25; Hours: 128.10

- Traveled to and from meetings, depositions, and hearings. WGM is requesting compensation for non-working travel at 50% of customary hourly rates.

31.     The foregoing professional services performed by WGM were actual, necessary, and appropriate to the administration of the Debtors' chapter 11 cases. The professional services performed by WGM were in the best interests of the Debtors, their estates, and other parties in interest. Compensation for such services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved. The professional services were performed expeditiously and efficiently.

32.     The majority of services performed by partners and associates of WGM were rendered by the Business Finance and Restructuring Department. With approximately 70 attorneys specializing in this area of law, WGM has a preeminent practice in this area and enjoys a national reputation for its expertise in financial reorganizations and restructurings of troubled entities. As a consequence, WGM brings to these cases a high level of expertise and experience that inures to the benefit of the Debtors and all parties in interest.

33.     Professional services performed by WGM on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 5,509.70 recorded hours by

WGM's partners, associates, and paraprofessionals. Of the aggregate time expended, 1072.10 recorded hours were expended by partners of WGM, 3,860.40 recorded hours were expended by associates and contract attorneys, and 577.20 recorded hours were expended by paraprofessionals of WGM.

34.    During the Compensation Period, WGM's hourly billing rates for attorneys ranged from $250 to $1,075 per hour. Allowance of compensation in the amount requested would result in a blended hourly rate for attorneys of approximately $602.96 (based on 4,932.50 recorded hours at WGM's regular billing rates in effect at the time of the performance of services).

## V.

## ACTUAL AND NECESSARY DISBURSEMENTS

35.    As set forth in Exhibit "C" hereto, WGM has disbursed $102,072.66 as expenses incurred in providing professional services during the Compensation Period. WGM's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine. For example, with respect to black-and-white duplication charges, WGM will charge $0.10 per page because the actual cost is difficult to determine. Similarly, as it relates to computerized research, WGM believes that it does not make a profit on that service as a whole although the cost of any particular search is difficult to ascertain. Other reimbursable expenses (whether the service is performed by WGM in-house or through a third party vendor) include, but are not limited to, facsimiles, toll calls, overtime meals, deliveries, court costs, transcript fees, discovery and temporary legal staffing services, travel, and clerk fees.

## VI.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

36.     Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a Court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1)(A).  Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

> In determining the amount of reasonable compensation to be
> awarded … the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the
> administration of, or beneficial at the time at
> which the service was rendered toward the
> completion of, a case under this title;
>
> (D)     whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed;
>
> (E)     with respect to a professional person, whether the
> person is board certified or otherwise has
> demonstrated skill and expertise in the bankruptcy
> field; and
>
> (F)     whether the compensation is reasonable based on
> the customary compensation charged by
> comparably skilled practitioners in cases other than
> cases under this title.

26

11 U.S.C. § 330(a)(3).

37.    In the instant case, WGM respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the Debtors' orderly administration of their estates. WGM has worked assiduously to anticipate or respond to the issues that have arisen in the Debtors' chapter 11 cases and has played and continues to play a critical role in assuring that the Debtors' chapter 11 cases are administered expeditiously and economically. Such services and expenditures were necessary to and in the best interests of the Debtors' estates and creditors. In light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest, WGM submits that the compensation requested herein is reasonable.

38.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, WGM sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration. Groups of the same WGM attorneys were utilized for similar tasks in these cases to minimize the costs of intra-WGM communication and education about the Debtors' circumstances.

39.    As mentioned above, the fees charged by WGM in these cases are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. The rates WGM charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

27

40.    In sum, the services rendered by WGM were necessary and beneficial to the Debtors' estates, were consistently performed in a timely manner, and are reasonable in light of the value of such services to the Debtors, their estates, and all parties in interest, WGM's demonstrated skill and expertise in the bankruptcy field, and the customary compensation charged by comparably skilled practitioners at WGM. Accordingly, WGM submits that approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## VII.

## RESERVATION

41.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or WGM has for any other reason not sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, WGM reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## VIII.

## NOTICE

42.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Application has been provided to parties in interest in accordance with the *Order Pursuant to 11 U.S.C. § 105(a) of the Bankruptcy Code and Fed. R. Bankr. P. 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures*, entered October 20, 2010 [Docket No. 365]. WGM submits that no further notice need be provided.

43.    No previous request for the relief sought herein has been made by WGM to this or any other Court.

## IX.

## CONCLUSION

WHEREFORE WGM respectfully requests (i) an interim allowance of compensation for professional services rendered during the Compensation Period in the amount of $3,078,770.25 and expense reimbursement in the amount of $102,072.66; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to WGM's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) such other and further relief as is just.

Dated: New York, New York
      March 15, 2011

                           Stephen Karotkin
                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone: (212) 310-8000
                           Facsimile: (212) 310-8007

                           and

                           Martin A. Sosland (*admitted pro hac vice*)
                           WEIL, GOTSHAL & MANGES LLP
                           200 Crescent Court, Suite 300
                           Dallas, Texas 75201
                           Telephone: (214) 746-7700
                           Facsimile: (214) 746-7777

                           Attorneys for Debtors and Debtors in Possession

29

**<u>Exhibit "A"</u>**

**Certification of Martin A. Sosland**

Stephen Karotkin
Martin A. Sosland (*admitted pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007


Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                                                           :
**In re**                                                  :    **Chapter 11**
                                                           :
**BLOCKBUSTER INC., *et al.*,**[1]                         :    **Case No. 10-14997 (BRL)**
                                                           :
                                                           :    **(Jointly Administered)**
              **Debtors.**                                 :
-----------------------------------------------------------x

## CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIRST APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Martin A. Sosland, hereby certify that:

1.      I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("***WGM***"), with responsibility for the chapter 11 cases of Blockbuster Inc., and its debtor

affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***" or the "***Debtors***").

2.      In accordance with the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

adopted on January 30, 1996 (the "*UST Guidelines*"), the Bankruptcy Court's *Amended*

*Guidelines for Fees and Disbursements for Professionals in Southern District of New York*

*Bankruptcy Cases, M-389*, dated November 25, 2009 (the "*Local Guidelines*"), and the *Order*

*Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and*

*Reimbursement of Expenses of Professionals*, entered October 20, 2010 [Docket No. 364] (the

"*Administrative Order*", and together with the UST Guidelines and the Local Guidelines, the

"*Guidelines*"), this certification is made with respect to WGM's application, dated March 15,

2011 (the "*Application*"),[2] for interim compensation and reimbursement of expenses for the

period of September 23, 2011 through and including January 31, 2011 (the "*Compensation*

*Period*").

3.    In respect of section A.1 of the Local Guidelines, I certify that:

a.    I have read the Application;

b.    to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines and the UST Guidelines;

c.    the fees and disbursements sought are billed at rates in accordance with those customarily charged by WGM and generally accepted by WGM's clients; and

d.    in providing a reimbursable service, WGM does not make a profit on that service, whether the service is performed by WGM in-house or through a third party.

4.    In accordance with section A.2 of the Local Guidelines and as required by

the Administrative Order, I certify that WGM has complied with those provisions requiring it to

provide the Debtors and the Creditors' Committee with a statement of WGM's fees and

disbursements accrued during the previous month, although, due to administrative limitations

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application

and the exigencies of these cases, such statements were not always provided within the exact

timetables set forth in the Administrative Order.

    5.     In respect of section A.3 of the Local Guidelines, I certify that the

Debtors, the Office of the United States Trustee for the Southern District of New York, and

counsel for the Creditors' Committee are each being provided with a copy of the Application at

least fourteen days before the date set by this Court to consider interim fee applications filed in

these chapter 11 cases.

Dated: New York, New York
      March 15, 2011

                           Stephen Karotkin
                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone: (212) 310-8000
                           Facsimile: (212) 310-8007

                               and

                           Martin A. Sosland (*admitted pro hac vice*)
                           WEIL, GOTSHAL & MANGES LLP
                           200 Crescent Court, Suite 300
                           Dallas, Texas 75201
                           Telephone:  (214) 746-7700
                           Facsimile:  (214) 746-7777

                           Attorneys for Debtors and Debtors in Possession

3

## Exhibit "B"

### Summary of Professional Services Rendered by Weil, Gotshal & Manges LLP for the Period September 23, 2010 Through January 31, 2011

| NAME OF PROFESSIONAL<br><br>PARTNERS & OF COUNSELS: | DEPARTMENT AND YEAR ADMITTED[1] | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Baer, Lawrence J. | L-1984 | $780.00 | 3.80 | $2,964.00 |
| Ballack, Karen N. | C-1987 | $900.00 | 2.00 | $1,800.00 |
| Ballack, Karen N. | C-1987 | $845.00 | 7.10 | $5,999.50 |
| Beagles, Vance L. | L-1993 | $875.00 | 138.30 | $110,206.25 |
| Beagles, Vance L. | L-1993 | $845.00 | 9.00 | $7,605.00 |
| Dicker, Howard B. | C-1989 | $925.00 | 0.40 | $370.00 |
| Friedlander, Gilbert | C-1972 | $925.00 | 152.10 | $136,067.50 |
| Gold, Simeon | C-1972 | $1,075.00 | 12.50 | $13,437.50 |
| Gold, Simeon | C-1974 | $990.00 | 20.00 | $19,800.00 |
| Goldring, Stuart J. | T-1984 | $1,075.00 | 5.00 | $5,375.00 |
| Goldring, Stuart J. | T-1984 | $990.00 | 29.00 | $28,710.00 |
| Himelfarb, P.J. | C-1991 | $780.00 | 1.30 | $1,014.00 |
| Horton, Jr., William H. | T-1976 | $925.00 | 3.40 | $3,145.00 |
| Horton, Jr., William H. | T-1976 | $865.00 | 43.60 | $37,714.00 |
| Kam, Michael K. | T-1981 | $1,000.00 | 3.10 | $3,100.00 |
| Karotkin, Stephen | BFR-1977 | $1,075.00 | 53.50 | $57,512.50 |
| Karotkin, Stephen | BFR-1977 | $990.00 | 144.10 | $142,659.00 |
| Rusman, Jared M. | T-1994 | $975.00 | 1.60 | $1,560.00 |
| Rusman, Jared M. | T-1994 | $900.00 | 0.70 | $630.00 |
| Sosland, Martin A. | BFR-1984 | $975.00 | 109.70 | $97,158.75 |
| Sosland, Martin A. | BFR-1984 | $900.00 | 323.20 | $268,110.00 |
| Stangland, Elaine | C-1978 | $975.00 | 1.20 | $1,170.00 |
| Stangland, Elaine | C-1978 | $900.00 | 7.00 | $6,300.00 |

[1] BFR – Business Finance & Restructuring, C – Corporate, LR – Litigation/Regulatory, T – Tax

| Tsekerides, Theodore E. | L-1994 | $740.00 | 0.40 | $296.00 |
|---|---|---|---|---|
| Waksman, Ted S. | C-1973 | $1,075.00 | 0.10 | $107.50 |
| **Total Partners and Of Counsel** | | | **1,072.10** | **$952,811.50** |

| NAME OF PROFESSIONAL<br><br>ASSOCIATES: | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Arons, Andrew | C-2009 | $560.00 | 0.70 | $392.00 |
| Bharj, Amardeep K. | BFR-2009 | $495.00 | 56.50 | $27,967.50 |
| Bharj, Amardeep K. | BFR-2009 | $395.00 | 359.10 | $141,844.50 |
| Bishop, Andrew | C-2007 (London) | $665.00 | 5.80 | $3,857.00 |
| Borun, Katherine G. | C-2008 | $455.00 | 11.50 | $5,232.50 |
| Bronder, Vigdis | C-2007 | $515.00 | 1.70 | $875.50 |
| Burke, Kathlene | BFR-2008 | $560.00 | 76.90 | $43,064.00 |
| Burke, Kathlene | BFR-2008 | $455.00 | 332.70 | $150,718.75 |
| Burns, Gregory C. | T-2006 | $550.00 | 0.30 | $165.00 |
| Carter, William J. | C-2009 (London) | $530.00 | 4.40 | $2,332.00 |
| Chen, Charlie | BFR-2007 | $515.00 | 8.20 | $4,223.00 |
| Dummer, David W. | L-1999 | $750.00 | 38.80 | $29,100.00 |
| Dummer, David W. | L-1999 | $695.00 | 21.10 | $14,664.50 |
| Eckols, Erin D. | L-2003 | $740.00 | 15.50 | $11,470.00 |
| Eckols, Erin D. | L-2003 | $665.00 | 10.80 | $7,182.00 |
| Feit, Adam J. | C-2009 | $560.00 | 4.60 | $2,576.00 |
| Fusco, Sandra Y. | L-2009 | $495.00 | 12.20 | $6,039.00 |
| Ger, Kwang-chien B. | C-2003 | $740.00 | 5.10 | $3,774.00 |
| Ghose, Dev A. | C-2007 | $515.00 | 43.10 | $22,196.50 |
| Goren, Matthew | BFR-2007 | $645.00 | 0.20 | $129.00 |
| Gray, Edward K. | C-2006 | $645.00 | 8.20 | $5,289.00 |
| Gray, Edward K. | C-2006 | $550.00 | 23.50 | $12,925.00 |
| Hall, Dana | BFR-2009 | $495.00 | 31.20 | $15,444.00 |
| Hall, Dana | BFR-2009 | $395.00 | 273.70 | $107,933.75 |

| | | | | |
|---|---|---|---|---|
| Hoehne, Debora | BFR-2007 | $600.00 | 107.20 | $63,840.00 |
| Hoehne, Debora | BFR-2007 | $515.00 | 397.70 | $203,811.25 |
| Kaplan, Jaime S. | L-2006 | $595.00 | 0.50 | $297.50 |
| Khan, Kamran A. | Contract Attorney | $250.00 | 22.30 | $5,575.00 |
| Larson, Michelle V. | BFR-1996 | $750.00 | 3.60 | $2,700.00 |
| Larson, Michelle V. | BFR-1996 | $695.00 | 6.20 | $4,309.00 |
| Mapes, Justin G. | C-2003 | $740.00 | 5.20 | $3,848.00 |
| Merson, Regina | BFR-2007 | $600.00 | 120.60 | $72,360.00 |
| Merson, Regina | BFR-2007 | $515.00 | 439.90 | $226,188.00 |
| Meyrowitz, Melissa | C-1999 | $695.00 | 2.50 | $1,737.50 |
| Nagar, Roshelle A. | C-1989 | $695.00 | 0.30 | $208.50 |
| Napalkova, Ekaterina | T-2009 | $430.00 | 7.60 | $3,268.00 |
| Ortiz, Heather L. | Contract Attorney | $250.00 | 26.00 | $6,500.00 |
| Persons, Charles M. | BFR-2007 | $600.00 | 124.00 | $74,400.00 |
| Persons, Charles M. | BFR-2007 | $515.00 | 94.90 | $48,873.50 |
| Petherbridge, Vaughan | C-2008 | $740.00 | 0.30 | $222.00 |
| Pohl, Joshua | T-2006 | $645.00 | 1.60 | $1,032.00 |
| Pohl, Joshua | T-2006 | $550.00 | 27.20 | $14,960.00 |
| Quinn, Georgia D. | C-2007 | $515.00 | 0.90 | $463.50 |
| Saavedra, Andrea C. | BFR-2006 | $645.00 | 109.40 | $70,563.00 |
| Saavedra, Andrea C. | BFR-2006 | $550.00 | 398.10 | $218,680.00 |
| Shachar, Sharon | T-2003 | $740.00 | 3.50 | $2,590.00 |
| Shachar, Sharon | T-2003 | $665.00 | 25.00 | $16,625.00 |
| Shiffman, Jonathan | L-2000 | $750.00 | 7.00 | $5,250.00 |
| Shim, Suhan | C-2009 | $495.00 | 6.80 | $3,366.00 |
| Shim, Suhan | C-2009 | $395.00 | 53.00 | $20,935.00 |
| Shulzhenko, Oleksandr | C-2000 | $750.00 | 15.20 | $11,400.00 |
| Shulzhenko, Oleksandr | C-2000 | $695.00 | 165.40 | $114,953.00 |
| Stewart, Benjamin L. | L-2004 | $685.00 | 10.30 | $7,055.50 |
| Stewart, Benjamin L. | L-2004 | $595.00 | 16.80 | $9,996.00 |
| Thomas, Rebecca A. | BFR-2006 | $550.00 | 144.60 | $79,337.50 |
| Vigneaux, Rachel S. | C-2010 | $430.00 | 1.50 | $645.00 |
| Ward, Monty A. | C-2005 | $685.00 | 105.40 | $67,746.50 |

| Ward, Monty A. | C-2005 | $595.00 | 64.10 | $38,139.50 |
|---|---|---|---|---|
| **Total Associates** | | | **3,860.40** | **$2,021,270.25** |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff And Other Non-Legal Staff | DEPARTMENT | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Aliseo, Nicole K. | Paralegal | $210.00 | 4.00 | $840.00 |
| Amponsah, Duke | Paralegal | $230.00 | 3.20 | $736.00 |
| Amponsah, Duke | Paralegal | $200.00 | 3.30 | $660.00 |
| Bartram, Lyle S. | Paralegal | $250.00 | 20.20 | $5,050.00 |
| Bartram, Lyle S. | Paralegal | $230.00 | 17.90 | $4,117.00 |
| Bennett, Victoria A. | Paralegal | $230.00 | 2.00 | $460.00 |
| Bettini, Elio | Library Staff | $125.00 | 1.30 | $162.50 |
| Blakey, Lewis | Law Clerk (London) | $295.00 | 1.00 | $295.00 |
| Burns, Jo Nan | Paralegal | $260.00 | 1.90 | $494.00 |
| Cade, Nancy P. | Paralegal | $265.00 | 8.50 | $2,252.50 |
| Carmant, Marie J. | Library | $145.00 | 1.20 | $174.00 |
| Etienne, Donald | Paralegal | $200.00 | 6.80 | $1,360.00 |
| Etienne, Donald | Paralegal | $180.00 | 22.80 | $3,987.00 |
| Ghodasara, Priya K. | Paralegal | $175.00 | 85.50 | $14,962.50 |
| Ghodasara, Priya K. | Paralegal | $160.00 | 278.00 | $44,480.00 |
| Haiken, Lauren C. | Litigation Support | $210.00 | 9.00 | $1,890.00 |
| Lee, Kathleen | Paralegal | $275.00 | 13.60 | $3,740.00 |
| Losick, Merrill | Library | $195.00 | 1.70 | $331.50 |
| Lyon, Andrew H. | Paralegal | $160.00 | 12.10 | $1,936.00 |
| McLeland, Janet | Paralegal | $215.00 | 20.40 | $4,386.00 |
| Merritt, Lindsay | Law Clerk (London) | $255.00 | 1.00 | $255.00 |
| Roberts, Sarah B. | Paralegal | $265.00 | 0.20 | $53.00 |
| Roberts, Sarah B. | Paralegal | $230.00 | 2.00 | $460.00 |
| Robin, Artur | Litigation Support | $215.00 | 4.10 | $881.50 |
| Schoenfeld, Matthew | Paralegal | $160.00 | 3.50 | $560.00 |

| Shapiro, Rachel | Paralegal | $160.00 | 5.10 | $816.00 |
|---|---|---|---|---|
| Shrestha, Christine | Paralegal | $275.00 | 1.70 | $467.50 |
| Stauble, Christopher A. | Paralegal | $290.00 | 0.30 | $87.00 |
| Stauble, Christopher A. | Paralegal | $275.00 | 7.50 | $2,062.50 |
| Tily, Michael T. | Paralegal | $180.00 | 10.10 | $1,818.00 |
| Wilmer, Andrea | Paralegal | $180.00 | 27.30 | $4,914.00 |
| **Total Paraprofessionals** | | | **577.20** | **$104,688.50** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| Partners and Of Counsel | $888.73 | 1,072.10 | $952,811.50 |
| Associates | $523.59 | 3,860.40 | $2,021,270.25 |
| Paraprofessionals | | 577.20 | $104,688.50 |
| **Total Fees Incurred** | | **5,509.70** | **$3,078,770.25** |
| **Blended Attorney Rate** | **$602.96** | | |

**Exhibit "C"**

**Expense Summary by Weil, Gotshal & Manges LLP
for the Period September 23, 2010 Through January 31, 2011**

| EXPENSES | AMOUNTS |
|---|---|
| Local Transportation | $4,931.08 |
| Conference Meals | 2,980.00 |
| Duplicating and Related Services | 19,328.24 |
| Express Mail, Postage, and Messenger Service | 987.34 |
| Corporation Service | 145.29 |
| Telephone and Facsimile Copies | 263.09 |
| Court Reporting | 2,456.80 |
| Electronic Research | 21,457.69 |
| Domestic Travel | 36,016.13 |
| Filing Fees | 13,507.00 |
| **Total Expenses Requested:** | **$102,072.66** |

**Exhibit "D"**

**Summary of First Interim Fee Application of Weil, Gotshal & Manges LLP for Services Rendered for the Period September 23, 2010 Through January 31, 2011**

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 001 | Case Administration | 824.00 | $ 345,758.00 |
| 002 | Creditors' Committee/Unsecured Creditors Issues | 404.20 | 278,807.50 |
| 003 | Secured Creditors Issues/Meetings/Communications | 17.70 | 16,898.00 |
| 004 | General Case Strategy | 186.90 | 130,789.50 |
| 005 | Hearings and Court Matters | 328.30 | 167,043.00 |
| 006 | WG&M Retention/Billing/Fee Applications | 139.00 | 44,423.50 |
| 007 | Retention/Fee Application: Ordinary Course Professionals | 51.90 | 23,486.00 |
| 008 | Retention/Fee Application: Other Professionals | 294.00 | 146,772.00 |
| 009 | Schedules/Statement of Financial Affairs | 43.00 | 21,525.50 |
| 010 | US Trustee | 37.40 | 17,866.50 |
| 011 | General Business Operations (including international) | 130.40 | 98,976.50 |
| 012 | Corporation Governance and Securities Issues | 311.70 | 241,293.50 |
| 013 | DIP Financing | 398.40 | 246,755.00 |
| 014 | Insurance Issues | 100.20 | 47,640.50 |
| 015 | Employee/ERISA/Benefits Issues | 34.30 | 20,797.00 |
| 016 | Asset Dispositions/363 Sales | 153.90 | 100,009.50 |
| 017 | De Minimus Asset Sales | 12.10 | 4,450.50 |
| 018 | Real Property & Lease Issues | 538.80 | 304,893.00 |
| 019 | Executory Contracts other than Store Leases | 90.20 | 42,826.00 |
| 020 | Adversary Proceedings | 19.90 | 8,079.50 |
| 021 | Claims Objections Litigation | 20.40 | 12,832.00 |
| 022 | Bar Date Motion and Claims Reconciliation Issues | 22.20 | 12,944.00 |
| 023 | Automatic Stay | 16.80 | 10,480.00 |
| 024 | Business Plan | 17.50 | 8,470.50 |
| 025 | Disclosure Statement & Plan of Reorganization | 132.20 | 68,895.50 |
| 026 | Exclusivity | 37.90 | 20,402.00 |
| 027 | Tax Issues | 156.00 | 117,995.50 |
| 028 | Utility Issues | 397.10 | 206,327.50 |
| 029 | Vendor, Reclamation and Critical Vendor Issues (Studios) | 126.00 | 82,717.50 |
| 030 | Vendor, Reclamation and Critical Vendor Issues (Non-Studios) | 140.90 | 69,706.50 |
| 031 | Customer Issues | 1.00 | 610.00 |
| 032 | Non-Bankruptcy Litigation | 183.60 | 97,973.00 |
| 033 | Non-Working Travel | 128.10 | 107,838.50 |
| 034 | Administrative Claims | 13.70 | 6,406.50 |
| **Subtotal for all Task Codes:** | | **5,509.70** | **$3,132,689.50** |
| **(Less 50% Reduction for Non-Working Travel):** | | | **$    53,919.25** |
| **ADJUSTED TOTAL FOR ALL TASK CODES:** | | **5,509.70** | **$3,078,770.25** |