# Exhibit B

# Bid Procedures

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re : Chapter 11
:
BLOCKBUSTER INC., et al.,[1] : Case No. 10-14997 (BRL)
:
: (Jointly Administered)
Debtors. :
:
------------------------------------------------------------x

## BID PROCEDURES FOR THE SALE
## OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Blockbuster Inc. and certain of its direct or indirect domestic subsidiaries, as debtors and debtors in possession (collectively, "*Blockbuster*" or the "*Debtors*"), set forth the following bid procedures (the "*Bid Procedures*") to be employed in connection with an auction (the "*Auction*") for the sale of substantially all of the Debtors' assets. At a hearing following the Auction (the "*Sale Hearing*"), the Debtors will seek the entry of an order or orders (the "*Sale Order*") from the United States Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*") authorizing and approving the sale to the Qualified Bidder(s) (as defined below) that the Debtors, in consultation with the statutory committee of unsecured creditors (the "*Creditors' Committee*") and the Senior Secured Indenture Trustee (as defined below) and, subject to the conditions described below, the holders of approximately 80% in principal amount of the 11.75% Senior Secured Notes due 2014 issued by Blockbuster Inc. (the "*Steering Committee*"), determine to have made the highest or otherwise best bid(s) (each, a "*Successful Bidder*"), recognizing that, in determining the highest or otherwise best bid, a critical consideration shall be the bid that provides the greatest net proceeds available for distribution to creditors by the estates after the payment of the Carve-Out Expenses, the Critical Expenses, the Estimated Wind Down Expenses, the Administrative Priority Expenses and the Expense Reimbursement (each as defined and more fully described in the motion seeking, among other things, entry of the Sale Order (the "*Sale Motion*")).[2]

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B$^2$ LLC (5219).

[2] Capitalized terms used but not defined in these Bid Procedures shall have the meanings ascribed to them in the Sale Motion.

**Approvals**

The proposed sale(s) shall in all respects be subject to approval by the Bankruptcy Court and in compliance with: (i) the applicable provisions of the Bankruptcy Code; (ii) the Bankruptcy Rules; and (iii) other applicable rules and law, including, without limitation, the Local Rules and Orders of the Bankruptcy Court.

**Assets to Be Sold**

The Auction shall consist of all of the assets (the "*Assets*") used in Blockbuster's business operations, including but not limited to, its inventory, cash, intellectual property, digital rights, executory contracts, unexpired leases of nonresidential real property (including its distribution centers), owned real property, and the Debtors' equity interests in their non-Debtor foreign subsidiaries.

**Confidentiality Agreements**

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to the Debtors, any party that the Debtors deem in their discretion capable of submitting a Qualified Bid (as defined below) that wishes to conduct due diligence on any of the Assets may be granted access to all material information that has been or will be provided to the Stalking Horse Bidder (as defined below) and other such bidders.

**Bid Deadline**

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined below) on or before March 31, 2011 at 5:00 p.m. (New York Time) (the "*Bid Deadline*") in writing, to: (i) (A) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, at (x) 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq.) and (y) 200 Crescent Court, Suite 300, Dallas, Texas 75201 (Attn: Martin A. Sosland, Esq.), and (B) the financial advisors to the Debtors, Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020-1104 (Attn: Neil Augustine and Bernard Douton); (ii) the attorneys for the Creditors' Committee, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036 (Attn: Jay R. Indyke, Esq., Richard S. Kanowitz, Esq., and Cathy Hershcopf, Esq.); and (iii) the attorneys for the Steering Committee, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: James Seery, Esq.). The Debtors, in their discretion, may furnish copies of Qualified Bids to the attorneys for the Ad Hoc Studio Committee.

**Qualified Bids**

In order to participate in the bidding process and be deemed a "*Qualified Bidder*," each potential bidder (other than the Stalking Horse Bidder, as defined below) must submit a "*Qualified Bid*" by the Bid Deadline. To constitute a Qualified Bid, a bid must:

(a) be in writing;

(b) state that such bidder offers to purchase the Assets, or some substantial portion thereof;

(c) state that such bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of such Assets on terms and conditions no less favorable in the aggregate to the Debtors than the terms and conditions contained in that certain Amended and Restated Asset Purchase and Sale Agreement (the "***Stalking Horse APA***" or the "***Purchase Agreement***"),[3] dated as of _____, by and among Blockbuster Inc., the Debtor Subsidiaries Party thereto and Cobalt Video Holdco LLC (the "***Stalking Horse Bidder***"), including: (i) taking into account payment of the Expense Reimbursement plus at least $1 million in additional value; (ii) provision for a cash component, after projected adjustments, sufficient to deliver expected cash recoveries under each of subparagraphs 16(a)-(k) of the Order of the Bankruptcy Court entered on March \_\_, 2011 [ECF No. \_\_\_] (the "***Bid Procedures Order***") at least equivalent to the cash recoveries, after projected adjustments, expected to be delivered under each of subparagraphs 16(a)-(k) of the Bid Procedures Order under the Stalking Horse Bid; and (iii) provision for the payment in cash to each Specified Studio[4] (in each case based on such Specified Studio's compliance with the Studio Condition and the Support Condition (as those terms are defined in Bid Procedures Order) an amount equal to such Specified Studio's ratable share (based on the Specified Studios' aggregate Frozen Balances[5] of an aggregate amount of no less than $11.5 million (provided that, for the avoidance of doubt, the Stalking Horse Bid pursuant to the Stalking Horse APA, including its obligation under the Stalking Horse APA to pay 24% of the Frozen Balances to the Specified Studios, shall be deemed to satisfy such requirement). For the avoidance of doubt, payment of such amounts in subparagraphs 16(g) and (h) of the

---

[3] A copy of the Stalking Horse APA is available on the Debtors' claims agent's website at www.kccllc.net/blockbuster.

[4] "***Specified Studios***" shall mean Twentieth Century Fox Home Entertainment LLC, Sony Pictures Home Entertainment Inc., Warner Home Video, a Division of Warner Bros. Home Entertainment Inc., Paramount Home Entertainment Inc., Universal Studios Home Entertainment LLC, The Walt Disney Company, and Summit Entertainment LLC together with their respective Studio Affiliates that are engaged in the distribution of packaged and digital audio-visual media. For purposes of this Order, (i) "*Studio Affiliate*" means, with respect to any Specified Studio, any direct or indirect subsidiary of such Specified Studio, and any other Person (as such term is defined in the Purchase Agreement) that, directly or through one or more intermediaries, is controlled by such Specified Studio; and (ii) "*controlled*" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies (whether through ownership of securities or partnership or other ownership interests, by Contract (as such term is defined in the Purchase Agreement) or representation on the board or similar governing body).

[5] The "***Frozen Balance***" of each of the Studios is set forth on Schedule A annexed hereto.

3

Bid Procedures Order shall entitle the Successful Bidder to sell product otherwise subject to post-Closing Date Revenue Share, PRP and other end of term obligations and/or CFD free and clear of any liabilities or obligations to the Specified Studios, and the Debtors shall not be required to destroy any CFDs and shall not be subject to any penalties based on any failure to destroy CFDs;

(d) include a clean and duly executed Asset Purchase Agreement (the "**Modified APA**") and a marked Modified APA reflecting the variations from the Stalking Horse APA;

(e) provide that such bidder's offer is terminable only in accordance with its terms as agreed to by the Debtors and otherwise irrevocable until (i) the closing of the purchase of the Assets if such bidder is the Successful Bidder (as defined below) and (ii) for two (2) business days after the earlier of the closing of the Sale Transaction with the Successful Bidder or the termination of the Successful Bid, if such bidder is designated the Back-Up Bidder (as defined below) at the conclusion of the Auction;

(f) state that such bidder is financially capable of consummating the transactions contemplated by the Modified APA and detail the source(s) of funds that will be used to consummate the transaction;

(g) include such financial and other information that will allow the Debtors to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transaction contemplated by the Modified APA;

(h) for any bid that requires the assumption and assignment of executory contracts or unexpired leases, the bidder must identify which executory contracts and/or unexpired leases are to be assumed and assigned and provide evidence establishing its ability to provide adequate assurance of performance of such executory contracts or unexpired leases (an "**Adequate Assurance Package**");

(i) not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(j) fully disclose the identity of each entity that will be bidding for the applicable Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(k) not contain any due diligence or financing contingencies of any kind;

(l) include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified APA; and

4

(m) include a cash deposit in an amount equal to ten (10%) percent of the value of the consideration offered to purchase the Assets (the "**Good Faith Deposit**").

The Debtors, in their discretion, may accept a single Qualified Bid or multiple bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid.

Notwithstanding the requirement set forth above that a Qualified Bid must include an offer to purchase all or a substantial portion of the Assets, the Debtors will consider bids for less than a substantial (but nevertheless a material) portion of the Assets. In this regard, with the goal and primary purpose of selling substantially all of the Assets, the Debtors, in their discretion, may accept as a single Qualified Bid, multiple bids for non-overlapping material portions of the Assets such that, when taken together in the aggregate, such bids would otherwise meet the standards for a single Qualified Bid. The Debtors may permit otherwise Qualified Bidders who submitted bids by the Bid Deadline for less than a substantial (but nevertheless a material) portion of the Assets but who were not identified as a component of a single Qualified Bid consisting of such multiple bids, to participate in the Auction and to submit higher or otherwise better bids that in subsequent rounds of bidding may be considered, together with other bids for non-overlapping material portions of the Assets, as part of such a single Qualifying Bid for overbid purposes.

In accordance with section 363(k) of the Bankruptcy Code, a credit bid (in this Auction and solely in this Auction) may be submitted on behalf of all of the holders of the Senior Secured Notes to the extent any such credit bid is authorized by the terms of paragraph 29 of the DIP Order, the Indenture, and any other documents governing such notes; *provided, however*, in order to be considered, any such credit bid must include a cash component adequate to fund the payment in full, in cash of the unpaid Carve-Out Expenses, Critical Expenses, Administrative Priority Expenses, Expense Reimbursement, Estimated Wind Down Expenses, Approved Sale Expenses, all outstanding tax obligations to the extent such tax obligations are secured by a lien in the Assets which is senior in priority to the liens securing the Senior Secured Notes, and the payments to be made to the Studios pursuant to subparagraphs 16(g) and (h) of the Bid Procedures Order. A credit bid may also be submitted on behalf of all holders of the Roll-Up Notes or all of the DIP Lenders only to the extent any such credit bid is authorized by the terms of paragraph 29 of the DIP Order, and subject to the foregoing requirements as to the cash component. A credit bid consistent with this paragraph shall be deemed to be a Qualified Bid. To the extent that any credit bid is deemed to be the Successful Bid, it also must include a cash component equal to the amount that otherwise would be paid into the Administrative Account pursuant to subparagraphs 16(k)-(l) of the Bid Procedures Order as if the credit bid were an all cash bid.

The Debtors, in consultation with the Creditors' Committee, the Indenture Trustee with respect to the Senior Secured Notes (the "**Senior Secured Indenture Trustee**"), and, as applicable, the Steering Committee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than 5:00 p.m. (New York Time) on April 3, 2011. The Stalking Horse Bidder

5

is deemed a Qualified Bidder and the Stalking Horse APA constitutes a Qualified Bid for all purposes.

**Stalking Horse Bidder Expense Reimbursement**

Recognizing the Stalking Horse Bidder's expenditure of time, energy, and resources, the Debtors have agreed that if the Stalking Horse Bidder is not the Successful Bidder, the Debtors will, in certain circumstances, pay to the Stalking Horse Bidder an Expense Reimbursement not to exceed $5,000,000.

**No Qualified Bids**

If no timely, conforming Qualified Bids, other than the Stalking Horse APA, are submitted by the Bid Deadline with respect to any of the Assets, the Debtors shall not hold the Auction and, instead, shall request at the Sale Hearing that the Bankruptcy Court approve the Stalking Horse APA with the Stalking Horse Bidder.

**Auction**

In the event that the Debtors timely receive one or more Qualified Bids other than the Stalking Horse APA for any of the Assets, the Debtors shall conduct the Auction. The Auction will be conducted at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Courtroom 623 (the "**Bankruptcy Court**") on April 4, 2011 at 10:00 a.m. (New York Time); *provided, however*, that the Debtors shall have the right to cancel the Auction at any time by delivering notice of such cancellation to all Qualified Bidders; *provided further*, that the Debtors shall have the right to conduct any number of Auctions on such date to accommodate Qualified Bids for certain, but less than all, of the Debtors' Assets if the Debtors determine, in their business judgment and in consultation with the Creditors' Committee, the Senior Secured Indenture Trustee, and the Steering Committee (subject to the description of the consultation rights provided on page 9 of these Bid Procedures), that such process would be in the best interest of the Debtors' estates.

The Auction shall be governed by the following procedures, subject to modification by the Debtors at the Auction:

(a) The Stalking Horse Bidder and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(b) Only representatives of the Debtors, the Creditors' Committee, the Stalking Horse Bidder, holders of Qualified Bids, the DIP Lenders, the Steering Committee, the Senior Secured Indenture Trustee, the Ad Hoc Studio Committee and the Specified Studios shall be entitled to be present at the Auction (the "**Permitted Parties**"); *provided, however*, that as per the Court's statements on the record at the hearing on the Bid Procedures Order, any parties present at such hearing who are not Permitted Parties may only be entitled to observe the Auction in another room located at the

Bankruptcy Court, with such room to be identified no later than the date of the Auction.

(c) Only the Stalking Horse Bidder and Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

(d) Each Qualified Bidder (including the Stalking Horse Bidder) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(e) Bidding shall commence at the amount of the highest Qualified Bid submitted by the Qualified Bidders prior to the Auction.

(f) Qualified Bidders may then submit successive bids higher than the previous bid in increments of no less than $1 million. The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, to announce reductions or increases in minimum incremental bids at any time during the Auction.

(g) All Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Stalking Horse APA or their respective Modified APA, as applicable, at the Auction to improve such bids.

(h) The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(i) The Debtors reserve the right to (x) determine, in their reasonable discretion and in consultation with the Creditors' Committee, the Senior Secured Indenture Trustee, and the Steering Committee (subject to the description of the consultation rights provided on page 9 of these Bid Procedures), which bid is the highest or otherwise best (recognizing that, in determining same, a critical consideration shall be which bid provides the greatest net proceeds available for distribution to creditors by the estates after payment of, *inter alia*, the Carve-Out Expenses, the Critical Expenses, the Estimated Wind Down Expenses, the Administrative Priority Expenses, and the Expense Reimbursement, if any), and (y) reject at any time, without liability, any offer, other than the Stalking Horse Bid, that the Debtors, in their reasonable discretion and in consultation with the Creditors' Committee, the Senior Secured Indenture Trustee, and, as applicable, the Steering Committee, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or in the Bid Procedures Order, or (2) contrary to the best interests of the Debtors and their estates.

(j) The Auction shall continue until the Debtors determine, in consultation with the Creditors' Committee, the Senior Secured Indenture Trustee, and,

7

as applicable, the Steering Committee, and subject to Bankruptcy Court approval, that the Debtors have received the highest or otherwise best offer or offers for the Assets from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at the Auction (the "***Successful Bid(s)***") (recognizing that, in determining same, a critical consideration shall be which bid provides the greatest net proceeds available for distribution to creditors by the estates after payment of, *inter alia*, the Carve-Out Expenses, Critical Expenses, Estimated Wind Down Expenses, Administrative Priority Expenses, and the Expense Reimbursement, if any). In making this decision, the Debtors may, in consultation with the Creditors' Committee, the Senior Secured Indenture Trustee, and, as applicable, the Steering Committee, consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidders' ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Debtors with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified APA requested by each Qualified Bidder, and the net benefit to the Debtors' estates. The Qualified Bidder(s) submitting such Successful Bid(s) for the Assets shall become the "**Successful Bidder(s)**," and shall have such rights and responsibilities of a purchaser, as set forth in the Modified APA or Purchase Agreement, as applicable.

After adjournment of the Auction, but prior to the Sale Hearing, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) were made and make and pay for all necessary filings with all applicable governmental or other authorities. Bids made after the close of the Auction shall not be considered by the Debtors.

**Reservation of Rights**

The Debtors reserve the right, in their reasonable discretion and subject to the exercise of their business judgment, to make non-material alterations to these Bid Procedures and/or to terminate discussions with any and all prospective acquirers and investors (including the Stalking Horse Bidder) at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures set forth herein *provided, however,* that no material modifications to the Bid Procedures as they relate to the Specified Studios may be made without the prior consent of the Ad Hoc Studio Committee.

**Back-Up Bidder and Return of Good Faith Deposits**

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Assets at the Auction (the "***Back-Up Bid***") shall be required to serve as the back-up bidder (the "***Back-Up Bidder***") for such Assets and keep such Back-Up Bid open and irrevocable for either (i) two (2) business days after the closing of the Sale Transaction with the Successful Bidder, or (ii) five (5) business days after the termination of the Successful Bid, whichever applies. Following the Sale Hearing, if the Successful Bidder fails to

8

consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court. For the avoidance of doubt, absent participation in the Auction and the making of an overbid, the Stalking Horse Bidder cannot be designated the Back-Up Bidder, unless it consents to such designation.

Except as otherwise provided herein, Good Faith Deposits shall be returned to each bidder not selected by the Debtors as the Successful Bidder or the Back-Up Bidder by no later than the fifth (5th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtors until one (1) business day after the closing of the sale transaction with the Successful Bidder.

**Steering Committee**

In connection with any consultation rights provided to the Steering Committee herein, neither the Stalking Horse Bidder nor any other holder of the Senior Secured Notes who has submitted, or participated in the submission of, a bid may participate in the Steering Committee's consultation rights unless and until such time as the Stalking Horse Bidder or such other bidder informs the Debtors and the Steering Committee that it has irrevocably withdrawn from participating in the Auction.

**Sale Hearing**

The Successful Bid(s) (or the Stalking Horse APA, if no Qualified Bid other than that of the Stalking Horse Bidder is received or accepted) will be subject to approval by the Bankruptcy Court. The Sale Hearing will take place on April 7, 2011 at 10:00 a.m. (New York Time) before the Honorable Burton R. Lifland, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, Courtroom 623. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

# Schedule A

**Specified Studios' Frozen Balances**

## Schedule A

## Studios' Frozen Balances

| Studio Name | Frozen Claim Balance |
|---|---|
| Paramount Home Entertainment | $4,429,066 |
| Sony Pictures Home Entertainment | $28,033,000 |
| Summit Entertainment | $9,347,000 |
| Twentieth Century Fox Home Entertainment | $20,057,648 |
| Universal Studios Home Entertainment | $15,989,000 |
| Walt Disney Company, The | $9,447,000 |
| Warner Home Video | $19,200,000 |