UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                  :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| BLOCKBUSTER INC., *et al.*,[1] | : | Case No. 10-14997 (BRL) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014 AUTHORIZING AND APPROVING (A) THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF INTERESTS AND (B) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO THE PURCHASER

Upon the Motion, dated February 21, 2011,[2] of Blockbuster Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, "***Blockbuster***", or the "***Debtors***"), pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. 2002, 4001, 6004, 6006, and 9014 for (I) an order authorizing and approving, among other things, (A) Bid Procedures in connection with the sale of substantially all of the Debtors' assets (the "***Assets***"), (B) the notice of sale, auction and sale hearing (the "***Sale Notice***"), (C) Assumption Procedures and Assumption, Assignment and Cure Notices, (D) incurrence of sale-related Administrative Priority Claims and related liens, and (E) imposition of an injunction enjoining any collection efforts (the "***Administrative Stay***") with respect to the payment of administrative expenses

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Blockbuster Inc. (5102); Blockbuster Canada Inc. (1269); Blockbuster Digital Technologies Inc. (9222); Blockbuster Distribution, Inc. (0610); Blockbuster Gift Card, Inc. (1855); Blockbuster Global Services Inc. (3019); Blockbuster International Spain Inc. (7615); Blockbuster Investments LLC (6313); Blockbuster Procurement LP (2546); Blockbuster Video Italy, Inc (5068); Movielink, LLC (5575); Trading Zone Inc. (8588); and B[2] LLC (5219).

[2]    Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Motion, the Bid Procedures Order or the Purchase Agreement (as defined herein), as applicable.

during the period from the Commencement Date through February 24, 2011 (the "***Pre-Sale***

***Period***"); and (II) an order (A) authorizing and approving the sale, and transactions related

thereto, of the Debtors' Assets free and clear of all liens, claims and encumbrances (the "***Sale***

***Transaction***") to DISH Network Corporation, the Successful Bidder at the conclusion of the

Auction (hereinafter, and together with any permitted assignee under the Purchase Agreement,

the ***"Purchaser"***), (B) authorizing and approving the assumption and assignment of certain

executory contracts and unexpired leases (collectively, "***Contracts***") to the Purchaser, and

(C) granting related relief; and the Court having entered an order on March 17, 2011 (Docket No.

1223) (the "***Bid Procedures Order***") approving, *inter alia*, (i) Bid Procedures, (ii) the Expense

Reimbursement, (iii) the Sale Notice, and (iv) the Assumption Procedures and related notice; and

the Auction having been held beginning on April 4, 2011 and concluding on April 6, 2011 for

the consideration of Qualified Bids and the selection of a Successful Bidder (all as provided in

the Bid Procedures Order); and the Purchaser having submitted the highest or otherwise best

offer in the form of that certain Asset Purchase and Sale Agreement by and among Blockbuster

Inc., the debtor subsidiaries party thereto and the Purchaser, dated April 6, 2011 (as amended, the

"***Purchase Agreement***") and the Ancillary Agreements (as defined below); and upon the Court's

consideration of the Motion, the Purchase Agreement, a copy of which is attached hereto as

***Exhibit "A"***, and the record of the hearing held on April 7, 2011 with respect to the Motion (the

"***Sale Hearing***") (at which time all interested parties were offered an opportunity to be heard

with respect to the Motion), including the testimony and evidence admitted at the Sale Hearing;

and the record of the hearing held on April 14, 2011 with respect to this Sale Order; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their stakeholders and all other parties-in-interest; and it appearing that the Court has

jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in

the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due

deliberation thereon,

#### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion

under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion

are Bankruptcy Code sections 105(a), 363, 364(c)(i), and 365, Bankruptcy Rules 2002, 6004,

6006, and 9014 and the applicable Local Rules for the United States Bankruptcy Court for the

Southern District of New York (the "*Local Rules*").

C.    **Notice**.  As evidenced by the affidavits of service and publication filed with this

Court and based upon the representations of counsel at the Sale Hearing:  (i) due, proper, timely,

adequate and sufficient notice of the Motion, the Bid Procedures, the Objection Deadline, the

Auction, the Sale Hearing and the Sale Transaction, including the proposed assumption and

assignment of any Designated Contracts (as defined below) by the Stalking Horse Bidder prior to

the date hereof and the Cure Amounts (as defined below) with respect thereto, has been provided

in accordance with the Bid Procedures Order; (ii) that no other or further notice need be provided

(except as provided under paragraph 8 below); and (iii) such notice was and is good, sufficient

and appropriate under the circumstances of the Debtors' chapter 11 cases.

D.    **Opportunity to Object**.  A reasonable opportunity to object and to be heard with

respect to the Sale Transaction, the Motion and the relief requested therein has been given to all

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

interested persons and entities, including, without limitation, the following:  (i) the U.S. Trustee, (ii) the DIP Lenders, (iii) the DIP Agent, (iii) the Creditors' Committee, (iii) the Steering Committee, (iv) the Senior Secured Indenture Trustee, (v) the Senior Subordinated Indenture Trustee, (vi) the Stalking Horse Bidder, (vii) the Ad Hoc Studio Committee; (viii) all State attorney generals in States in which the Debtors conduct business; (ix) various federal and state tax authorities, including the Internal Revenue Service; (x) all known creditors of the Debtors and all entities known to have asserted any claims against the Assets or the Debtors' interest in the Assets and other entities known to have asserted a lien, interest or encumbrance in or upon the Assets, (xi) all counterparties to Designated Contracts, (xii) the Office of the United States Attorney for the Southern District of New York, (xii) all persons, if any, who have filed objections to the Motion, and (xiii) all persons who have filed a notice of appearance in these chapter 11 cases.

E.    **Auction.**  The Debtors engaged in a reasonable and appropriate marketing of the Assets.  Potential bidders had a full, fair and reasonable opportunity to submit bids and participate in the Auction.  The Debtors considered any bids submitted before, on and after the Bid Deadline.  The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bid Procedures Order, and afforded a full, fair and reasonable opportunity for any party to make a higher or otherwise better offer to purchase the Assets and assume all of the Assumed Liabilities.  At the Auction, Purchaser was selected as the Successful Bidder.  The Debtors' determination (in consultation with the Creditors' Committee and Senior Secured Indenture Trustee) that the Purchase Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.  Further, the Debtors, in the exercise of their business judgment, in determining the Successful Bid,

4

appropriately took into account that a critical consideration was which bid would provide the greatest net proceeds available for distribution to creditors by the estates after payment of, *inter alia*, the Carve-Out Expenses, the Critical Expenses, the Estimated Wind Down Expenses, the Administrative Priority Expenses and the Expense Reimbursement.  Similarly, the Debtors, in the valid and sound exercise of their business judgment, appropriately weighed the above criteria in determining that the bid (as such bid was further amended or modified at the Auction) submitted by Cobalt Video Holdco LLC, with an outside closing date of April 27, 2011 (the "***Cobalt Bid***"), (i) was the next highest and best bid submitted at the Auction, and (ii) should serve as the Back-Up Bid.

F.    **Arm's-Length Sale**.  The Purchase Agreement and any related agreements thereto, including, without limitation, a purchase or other similar transfer agreement relating to the equity interest of Blockbuster Canada Co. on terms to be agreed by the Debtors and Purchaser pursuant to the Purchase Agreement (collectively, the "***Ancillary Agreements***"), were or will be negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  None of the Debtors, the Purchaser or their respective Affiliates or Representatives (each as defined in the Purchase Agreement) has engaged in any conduct that would cause or permit the Purchase Agreement or any Ancillary Agreements to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person.  The terms and conditions of the Purchase Agreement, Ancillary Agreements and the Sale Transactions, including, without limitation, the consideration provided in respect thereof, are fair and reasonable and may not be avoided under Bankruptcy Code section 363(n).

G.    **Good Faith Purchaser**.  Neither the Purchaser, its Affiliates and their respective representatives is an "insider" of any of the Debtors as that term is used in section 101(31) of the Bankruptcy Code.  The Purchaser, its Affiliates and their respective Representatives have proceeded in good faith and without collusion in all respects in connection with this proceeding.  Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction (including, without limitation, the Ancillary Agreements and the assumption and assignment of the Purchaser Assumed Contracts to Purchaser, unless such authorization is duly stayed pending such appeal prior to the Closing).

H.    **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute the Purchase Agreement, Ancillary Agreements and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the Sale Transaction, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement, Ancillary Agreements and the Sale Transaction, and (iv) no consents or approvals, other than those expressly provided for in the Purchase Agreement and Ancillary Agreements, are required to consummate such Sale Transaction.

I.    **Sale in Best Interests**.  Good and sufficient reasons for approval of the Purchase Agreement, Ancillary Agreements and the Sale Transaction have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

J.      **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient

and sound business purposes and justifications and (ii) compelling circumstances for the Sale

Transaction other than in the ordinary course of business under Bankruptcy Code section

363(b)(1) before, and outside of, a plan of reorganization in that, among other things, the

immediate approval by the Bankruptcy Court of the Sale Transaction with the Purchaser is

necessary and appropriate to maximize the value of the Debtors' estates, particularly given the

wasting nature of the Assets.  Entry of an order approving the Purchase Agreement and the

Ancillary Agreements, and all the provisions thereof is a necessary condition precedent to the

Purchaser's consummation of the Sale Transactions.

K.      **Consideration**.  The consideration provided by the Purchaser to the Debtors

pursuant to the Purchase Agreement constitutes reasonably equivalent value or fair and adequate

consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform

Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession

thereof or the District of Columbia.  The Purchase Agreement represents a fair and reasonable

offer to purchase the Assets under these circumstances, and was not entered into for the purpose

of, nor does it have the effect of, hindering, delaying or defrauding creditors of any of the

Debtors under any applicable laws.  Approval of the Motion, the Purchase Agreement, the

Ancillary Agreements and the Sale Transaction by this Court is in the best interests of the

Debtors, their estates, their creditors and all other parties in interest.

L.      **Free and Clear**.  The transfer of the Assets to the Purchaser under the Purchase

Agreement will be a legal, valid, and effective transfer, and vests or will vest the Purchaser with

all right, title, and interest of the Debtors to the Assets free and clear of all Liens (as defined in

the Purchase Agreement), Claims (as defined in section 101(5) of the Bankruptcy Code),

encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise (collectively, including without limitation, Liens, Claims and other interests, the "***Interests***"), including, but not limited to, (i) those that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Assets, or any similar rights, (ii) all Excluded Liabilities, (iii) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (iv) those arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or Representatives including, but not limited to, Interests arising under any bulk-transfer laws, doctrines of successor or transferee liability or similar theories, except for Permitted Liens.

M.    **Free and Clear Findings Needed by Purchaser**.  The Purchaser asserts that it would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Assets to the Purchaser, the assumption and assignment or transfer of any executory contracts or unexpired leases to the Purchaser was not free and clear of all Interests of any kind or nature

whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests

(other than as agreed to in the Purchase Agreement).

N.    **Satisfaction of Section 363(f) Standards**.  The Assets constitute property of the

Debtors' estates and title thereto is currently vested in the Debtors' estates within the meaning of

section 541(a) of the Bankruptcy Code.  The Debtors may sell the Assets free and clear of any

Interests of any kind or nature whatsoever because in each case one or more of the standards set

forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  The person or entity

with any Interest in the Assets:  (i) has, subject to the terms and conditions of this Sale Order,

consented to the Sale Transaction or is deemed to have consented to the Sale Transaction;

(ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such

Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

Those holders of Interests who did not object to the Motion are deemed, subject to the terms of

this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All

holders of Interests are adequately protected by having their Interests attach to the proceeds

ultimately attributable to the Assets against or in which such Interests are asserted and the terms

of such Interests, with the same validity, force and effect, and in the same order of priority

(subject and subordinate in all respects to the Carve-Out Expenses, the Critical Expenses, the

Estimated Wind Down Expenses, and the Administrative Priority Expenses), which such

Interests now have against the Assets or their proceeds, subject to any rights, claims and defenses

the Debtors or their estates, as applicable, may possess with respect thereto.

O.    **No Successor Liability**.  Except for the Assumed Liabilities, the transfer of the

Assets to the Purchaser under the Purchase Agreement shall not result in the Purchaser having

any liability or responsibility for (i) any Interest against the Debtors or against an insider of the

Debtors, (ii) the satisfaction in any manner, whether at law or in equity, whether by payment,

setoff or otherwise, directly or indirectly, of any Interest or Excluded Liability, or (iii) to third

parties or the Debtors, except as is expressly set forth in the Purchase Agreement.  Without

limiting the effect or scope of the foregoing, the transfer of the Assets from the Debtors to the

Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or

their respective properties (including the Assets) to any liability for Interests against the Debtors

or the Debtors' Interests in such Assets by reason of such transfer under the laws of the United

States or any state, territory, possession thereof, or the District of Columbia applicable to such

Sale Transactions, including, without limitation, any bulk-transfer laws, successor liability or

similar theories.  The Purchaser is not a continuation of the Debtors or their respective estates

and there is no continuity between the Purchaser and the Debtors.  The Purchaser is not holding

itself out to the public as a continuation of the Debtors or their respective estates and the Sale

Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and

the Debtors.  Notwithstanding the foregoing, nothing in this Order or the Purchase Agreement

releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under

environmental laws or regulations (or any associated liabilities for penalties, damages, cost

recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or

operator of the property after the date of entry of this Order.  Nothing contained in this Order or

in the Purchase Agreement shall in any way (i) diminish the obligation of any entity to comply

with environmental laws, or (ii) diminish the obligations of the Debtors to comply with

environmental laws consistent with their rights and obligations as debtors in possession under the

Bankruptcy Code.  Notwithstanding the foregoing sentence, nothing in this Order shall be

interpreted to deem the Purchaser as the successor to the Debtors under any state law successor

liability doctrine with respect to any liabilities under environmental laws or regulations for

penalties for days of violation prior to entry of this Order.  Nothing in this paragraph should be

construed to create for any governmental unit any substantive right that does not already exist

under law.

P.    **Assumption/Assignment**.  The assumption and assignment procedures set forth

herein are fair and reasonable and provide interested parties with adequate notice and ample

opportunity to protect their respective rights and Interests in the Contracts and unexpired leases

of real property.  The assumption and assignment or transfer of the Purchaser Assumed Contracts

is integral to the Purchase Agreement, does not constitute unfair discrimination, and is in the best

interests of the Debtors and their estates, creditors and all other parties in interest, and represents

the reasonable exercise of sound and prudent business judgment by the Debtors.

Q.    **Personally Identifiable Information**.  The sale includes the transfer of

"*Personally Identifiable Information*" (as defined in section 101(41A) of the Bankruptcy Code.

The sale is consistent with the Debtors' policy in existence as of the Commencement Date

prohibiting the transfer of certain Personally Identifiable Information.

R.    **Immediate Consummation of Sale**.  There is no legal or equitable reason to

delay the Sale Transaction.

S.    **Sale Hearing**.  All findings of fact and conclusions of law made or announced by

the Court at the Sale Hearing are incorporated herein.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.    **Motion is Granted**.  The Motion and the relief requested therein is GRANTED

and APPROVED, as set forth herein.

2.      **Objections Overruled**.  Other than objections related to the assumption and assignment of Purchaser Assumed Contracts which shall be heard in connection with the assumption and assignment of the Purchaser Assumed Contracts, any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits, with prejudice.

3.      **Approval**.  The Purchase Agreement and the Ancillary Agreements and all of the terms and conditions thereto are hereby approved.  Debtors are hereby authorized to (i) execute the Purchase Agreement and the Ancillary Agreements, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, *provided* that such additional documents do not materially change its terms; (ii) consummate the Sale Transaction in accordance with the terms and conditions of the Purchase Agreement, the Ancillary Agreements, and the other agreements contemplated thereby; (iii) subject to paragraph 8 below, assume and assign to Purchaser the Purchaser Assumed Contracts; and (iv) take all other and further actions as may be reasonably necessary to implement the Sale Transaction.  The Debtors' selection of the Cobalt Bid as the Back-Up Bid is hereby approved.

4.      **Valid Transfer**.  As of the Closing, (i) the Sale Transaction effects a legal, valid, enforceable and effective sale and transfer of the Assets to Purchaser, and shall vest Purchaser with title to such Assets free and clear of all Interests of any kind whatsoever other than as provided in the Purchase Agreement and (ii) the Purchase Agreement, the Ancillary Agreements, the Sale Transaction and any instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor trustee

appointed with respect thereto.  All persons or entities, presently or on or after Closing, in

possession of some or all of the Assets are directed to surrender possession of the Assets to the

Purchaser or its designee on the Closing or at such time thereafter as the Purchaser requests.

5.    **General Assignment**.  On the Closing, this Sale Order shall be construed and

shall constitute for any and all purposes a full and complete general assignment, conveyance and

transfer of the Debtors' interests in the Assets.  Each and every federal, state, and local

governmental agency or department is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the Sale Transaction.

6.    **Injunction**.  Except as expressly permitted by the Purchase Agreement or by this

Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity

security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation

claimants and other persons holding Interests of any kind or nature whatsoever against or in the

Debtors or the Debtors' interests in the Assets (whether known or unknown, legal or equitable,

matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or

unasserted, whether arising prior to or subsequent to the commencement of these chapter 11

cases, whether imposed by agreement, understanding, law, equity or otherwise), arising under or

out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the

Debtors' businesses before the Closing or the transfer of the Debtors' interests in the Assets to

the Purchaser, shall be and hereby are forever barred, estopped and permanently enjoined from

asserting, prosecuting or otherwise pursuing Interests against the Purchaser or its property

(including the Assets).  Except as expressly provided in the Purchase Agreement, following the

Closing, no holder of an Interest against the Debtors shall interfere with Purchaser's title to or

use and enjoyment of the Debtors' interests in the Assets based on or related to such Interests or

13

based on any actions the Debtors may take in their chapter 11 cases, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Sale Transaction in the order of their priority, with the same validity, force and effect which they have against such Assets as of the Closing, subject and subordinate in all respects to the Carve-Out Expenses, the Critical Expenses, the Estimated Wind Down Expenses, the Administrative Priority Expenses, and any other rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

7.     **<u>No Successor Liability</u>**.  Except for the Assumed Liabilities, the transfer of the Assets to Purchaser under the Purchase Agreement shall not result in (i) the Purchaser or the Assets having any liability or responsibility for any Interest against the Debtors or against an insider of the Debtors, (ii) the Purchaser or the Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, or (iii) the Purchaser or the Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.   Without limiting the effect or scope of the foregoing, as a result of the closing of the Sale Transaction, the Purchaser shall have no successor, derivative or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of successor or transferee liability, antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement,

14

understanding, law, equity or otherwise with respect to the Debtors or any obligations of the

Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising,

accruing or payable under, out of, in connection with, or in any way relating to the operation of

the Assets prior to the Closing or any taxes in connection with, or in any way relating to the

cancellation of debt of the Debtors or their Affiliates.

8.    **Assumption and Assignment Procedures for Purchaser Assumed Contracts**.

The Purchaser shall have the right to designate any Contract as a Purchaser Assumed Contract in

accordance with the following procedures:

(a)    As soon as possible after entry of this Order, but no later than (i) two (2) Business Days prior to Closing, or (ii) April 16, 2011 in the case of any Purchaser Assumed Contract the assumption and assignment of which is to be considered at the April 21 Hearing (as defined below), the Purchaser shall provide the Debtors in writing with a schedule (the "***PAC Designation Schedule***") of Contracts to be included as Purchaser Assumed Contracts, subject to the Purchaser's right to add or remove Contracts pursuant to the Purchase Agreement, including, without limitation, under sections 2.5(b)-2.5(d) thereof.

(b)    Within two (2) calendar days after receipt of the PAC Designation Schedule, the Debtors shall file with the Court and serve on each counterparty to a Purchaser Assumed Contract and their counsel of record, if known, by email, facsimile or overnight mail and publish on the website maintained by the Debtors' court-appointed claims agent, Kurtzman Carson Consultants, at www.kccllc.net/blockbuster, a copy of the applicable Assumption, Assignment, and Cure Notice and Adequate Assurance Package, which shall include the name of the assignee, the proposed use of the premises if a real property lease and evidence of adequate assurance of future performance.  Affected Counterparties may file a written objection to the proposed assumption and assignment of their Purchaser Assumed Contract no later than the later of (i) two calendar days following the date of the filing of the Assumption, Assignment and Cure Notice, or (ii) April 19, 2011 at 12:00 p.m. noon (New York Time); *provided, however,* that to the extent that any Contract was included on either (x) the Amended Designated Contracts – Other Than Store Leases [Docket No. 1435] or (y) Amended Designated Contracts – Stores Leases [Docket No. 1436] (each, a "***Designated Contract***" and, collectively, the "***Designated Contracts***" and (x) and (y), together, being the "***Designated Contracts Schedules***") any counterparty to any Designated Contract may only file further objections to the assumption and assignment of its

15

Purchaser Assumed Contract on the basis of the identity of the Purchaser and its ability to perform thereunder and any additional Cure Amounts accrued if the Closing Date occurs after April 21, 2011 or, to the extent that the counterparty's Contract is on the PAC Designation Schedule and the Cure Amount set forth therein has changed since the filing of the Designated Contracts Schedule, such counterparty may file a further objection with respect to such amended Cure Amount.

(c)     If no objection is timely received, (i) the counterparty to such Purchaser Assumed Contract shall be deemed to have consented to the assumption and assignment of its Contract as a Purchaser Assumed Contract to the Purchaser and shall be forever barred from asserting any objection with regard to such assumption and assignment, and (ii) the Cure Amount set forth in the Assumption, Assignment and Cure Notice (or, to the extent applicable, the Designated Contracts Schedules, as amended, if applicable, by the PAC Designation Schedule) shall be controlling, notwithstanding anything to the contrary in any Purchaser Assumed Contract, or any other document, and the counterparty to such  Purchaser Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other Claims or Cure Amount related to such Purchaser Assumed Contract against the Debtors or the Purchaser, or the property of any of them.

(d)     Any objections that (i) are timely filed pursuant to subparagraph (b) above, or (ii) were filed prior to the date hereof and in accordance with paragraph 13(b) of the Bid Procedures Order, are preserved and will be heard by the Court at a hearing prior to the assumption and assignment of such Purchaser Assumed Contracts; *provided, however*, that if the terms and conditions of the assumption and assignment of any Purchaser Assumed Contract are not acceptable to the Purchaser, the Purchaser may remove such Contract from the PAC Designation Schedule.  The Court shall hold a hearing on April 21, 2011 at 11:00 a.m. (New York time) (the "***April 21 Hearing***"), at which time the Court shall consider the approval of the assumption and assignment of the Purchaser Assumed Contracts to Purchaser.

(e)     In the event that Purchaser removes a Purchaser Assumed Contract from the PAC Designation Schedule prior to Closing, the Court shall not consider the assumption and assignment of such Contract to Purchaser.  In the event that Purchaser adds a Contract to the PAC Designation Schedule with insufficient time to meet the notice requirements set forth in sub-paragraph (b) hereof before the April 21 Hearing, the Court shall set a hearing (which may occur before or after the Closing) to consider the approval of the assumption and assignment of any such Purchaser Assumed Contract consistent with the notice requirements set forth in sub-paragraph (b) hereof.

(f)     If the Closing occurs before the Court has approved the assumption and assignment of a Purchaser Assumed Contract to Purchaser, the Purchaser

16

shall pay, or promptly reimburse the Debtors for, the Contract Maintenance Costs associated with any such Purchaser Assumed Contract for the period between the date of Closing and the earlier of (i) the assumption and assignment of any such Purchaser Assumed Contract to Purchaser, or (ii) the date the Purchaser notifies the Debtors in writing of its election not to assume such Purchaser Assumed Contract.

(g)    Subject to the foregoing, the Purchaser Assumed Contracts, whether entered into before or after the Commencement Date, shall be assigned to the Purchaser, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities, and shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Purchaser Assumed Contracts (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions any assignment, transfer or sublease.  Pursuant to Bankruptcy Code section 365(k), to the extent allowable under applicable law, the Debtors shall be relieved from any further liability whatsoever with respect to the Purchaser Assumed Contracts after such assignment to the Purchaser whether related to the period prior to or after the Commencement Date.  The Debtors are authorized to execute and deliver to the Purchaser such documents or other instruments and to take such other actions as may be necessary to assign the Purchaser Assumed Contracts to the Purchaser at Closing.

(h)    Upon the Closing (or, if later, upon the assignment of such Purchaser Assumed Contract to Purchaser) and the payment of the relevant Cure Amounts by the Purchaser, Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Purchaser Assumed Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, to the extent allowable under applicable law, from any liability under the Purchaser Assumed Contracts.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to Purchaser solely as a result of the assumption and assignment of the Purchaser Assumed Contracts.  The assignments of each of the Purchaser Assumed Contracts are made in good faith under sections 363(b) and 363(m) of the Bankruptcy Code.

If an objection is or has been timely filed with respect to any Purchaser Assumed Contract pursuant to subparagraph (b) above or prior to the date hereof and in accordance with paragraph 13(b) of the Bid Procedures Order, the ability of the Debtors to assume and assign such Purchaser Assumed Contract to the Purchaser, the Cure Amount, and adequate assurance of performance by the Purchaser are subject to further orders of this Court governing the

assumption and assignment of such Purchaser Assumed Contract.  Upon entry of an order

approving the assumption and assignment of any Purchaser Assumed Contract to Purchaser and

unless such order provides otherwise, all findings of fact and conclusions of law of this Sale

Order shall apply in full force and effect to such Purchaser Assumed Contract.

9.      **Payment of Cure Amounts.**  Subject to the right of the Purchaser to remove any

Purchaser Assumed Contract from the schedule of Purchaser Assumed Contracts (including as

set forth in the proviso to paragraph 8(d) hereof), the Purchaser shall be obligated to pay or cause

to be paid any and all Assumed Cure Costs (collectively, the "***Cure Amounts***") under any

Purchaser Assumed Contracts assumed by the Debtors and assigned to the Purchaser.  The

Purchaser shall pay any Cure Amount for each Purchaser Assumed Contract on or prior to

Closing, or if later, the date the Court enters an order approving the assumption and assignment

of a Purchaser Assumed Contract; provided, however, that if the Purchaser consents to the

assignment of a Purchaser Assumed Contract prior to the resolution of a disputed Cure Amount,

the Purchaser shall pay the undisputed portion of the Cure Amount as set forth in the preceding

clause and shall pay any disputed portion of the Cure Amount as soon as reasonably practicable

after (i) the date on which the contracting counterparty consents in writing to the Cure Amount,

(ii) the date on which the counterparty is deemed to have consented, or (iii) the date on which the

Court enters an order determining the Cure Amount.

10.     **Cure Amounts for Purchaser Assumed Contracts**.  Subject to Court approval

of the assumption and assignment of a Purchaser Assumed Contract , each counterparty to a

Purchaser Assumed Contract, whether entered before or after the Commencement Date, will be

forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the

Purchaser, or the property of either of them, any default existing as of Closing; or, against the

Purchaser, any counterclaim, defense, setoff or any other Interest asserted or assertable against

the Debtors; and (ii) imposing or charging against Purchaser or its Affiliates any accelerations,

assignment fees, increases or any other fees solely as a result of the Debtors' assumption and

assignment to Purchaser of the Purchaser Assumed Contract.  To the extent that any counterparty

failed to object timely to the Cure Amount with respect to a Designated Contract by the

Objection Deadline and further fails to object to any subsequent notice of assumption and

assignment on the terms set forth in paragraph 8 above, such counterparty is deemed to have

consented to such Cure Amount and the assignment of such Designated Contract to the

Purchaser.

11.    **Ipso Facto Clauses Ineffective**.  Upon the Debtors' assignment of the Purchaser

Assumed Contracts to the Purchaser under the provisions of this Sale Order and any additional

order contemplated by this Sale Order or the Purchase Agreement, and subject to the timely

payment of the applicable Cure Amount, no default shall exist under any Purchaser Assumed

Contract, and no counterparty to any Purchaser Assumed Contract shall be permitted to declare a

default thereunder, or otherwise take action against the Purchaser, as a result of any Debtor's

financial condition, bankruptcy or failure of the Debtor to perform any of its obligations under

the relevant Purchaser Assumed Contract.  Any provision in a Purchaser Assumed Contract that

prohibits or conditions an assignment or sublease of such Purchaser Assumed Contract

(including without limitation, the granting of a lien therein) or allows the counterparty thereto to

terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term

or condition on account of such assignment or sublease, constitutes an unenforceable anti-

assignment provision in connection with the Sale Transaction that is void and of no force and

effect.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or

conditions of any Purchaser Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Purchaser Assumed Contract.

12.    **Rejection Deadline Extension**.  The deadline for assuming or rejecting an unexpired lease of nonresidential real property under which a Debtor is the lessee shall be extended to such date as agreed in writing between the applicable lessor and the Debtor pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code.  Solely with respect to unexpired leases of nonresidential real property where no such extension was granted, the deadline to assume or reject such leases is April 21, 2011.

13.    **Binding Effect of Order**.  This Sale Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.  The terms and provisions of the Purchase Agreement, the Ancillary Agreements and this Sale Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in either the Debtors, Purchaser and their respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of the Debtors under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding.

14.    **Release of Interests**.  This Sale Order shall be effective as a determination that, on the Closing, except as otherwise provided in the Purchase Agreement, all Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests against or in the Assets shall not have delivered to the Debtors prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests that the person or entity has with respect to the Assets, or otherwise, (a) the Debtors are hereby authorized and directed and the Purchaser is authorized to execute such statements, instruments, releases and other documents and take all other actions as may be reasonably necessary on behalf of such person or entity to release such Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist, (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests against the applicable Assets, and (c) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all Interests with respect to the Assets other than Assumed liabilities.  To the maximum extent permitted under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets.

15.    **Retention of Jurisdiction**.  In addition to the provisions of Section 12.5 of the Purchase Agreement, this Court retains jurisdiction, pursuant to its statutory powers under 28

U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and

provisions of this Sale Order, the Purchase Agreement and the Ancillary Agreements, all

amendments thereto and any waivers and consents thereunder, including, but not limited to,

retaining jurisdiction to (i) compel delivery of the Assets to Purchaser; (ii)  interpret, implement

and enforce the provisions of this Sale Order and any related order; (iii) determine any disputes

or claims with respect to the Purchase Agreement and Ancillary Agreements, and (iv) enter any

orders under section 363 and 365 of the Bankruptcy Code with respect to the Purchaser Assumed

Contracts.

16.    **Retention of Rights By the Government**.  Nothing in this Sale Order or in the

Purchase Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a

governmental unit under police and regulatory statutes or regulations that any entity would be

subject to as the owner or operator of property after the date of entry of this Sale Order; or

(ii) should be construed to give Purchaser any more protection against any government unit than

it is otherwise entitled to under 11 U.S.C. § 363(f).  Nothing in this paragraph should be

construed to create for any governmental unit any substantive right that does not already exist

under law.

17.    **Sale Proceeds**.  Subject and subordinate in all respects to Carve-Out Expenses,

the Critical Expenses, the Estimated Wind Down Expenses, the Administrative Priority

Expenses, and the Expense Reimbursement, any and all valid and perfected Interests in the

Assets of the Debtors shall attach to any proceeds of such Assets immediately upon receipt of

such proceeds by the Debtors (or any party acting on any Seller's behalf) in the order of priority,

and with the same validity, force and effect which they now have against such Assets, subject to

any rights, claims and defenses the Debtors, the Debtors' estates or any trustee for any Debtor, as

applicable, may possess with respect thereto, in addition to any limitations on the use of such

proceeds pursuant to any provision of this Sale Order.

18.    **No Material Modifications**.  The Purchase Agreement, Ancillary Agreements

and any related agreements, documents or other instruments may be modified, amended or

supplemented by the Purchaser and the Debtors (after consultation with the Creditors'

Committee) in a writing signed by such parties, and in accordance with the terms thereof,

without further order of the Court, *provided* that any such modification, amendment or

supplement does not materially change the terms of the Purchase Agreement or modify the

express terms of this Sale Order.

19.    **Subsequent Orders and Plan Provisions**.  Except as provided in paragraph 28

hereof, nothing contained in any subsequent order of this Court or any court of competent

jurisdiction in these or other chapter 11 cases (including without limitation, an order authorizing

the sale of assets pursuant to sections 363, 365, or any other provision of the Bankruptcy Code)

or any order entered after any conversion of a chapter 11 case of the Debtors to a case under

chapter 7 of the Bankruptcy Code or any chapter 11 plan confirmed in any Debtors' bankruptcy

cases or any order confirming any such plan shall nullify, alter, conflict with, or in any manner

derogate from the provisions of the Bid Procedures Order or this Sale Order, and the provisions

of the Bid Procedures Order or this Sale Order shall survive and remain in full force and effect.

The terms of this Sale Order shall control to the extent of any conflict or derogation.  For the

avoidance of doubt, if the Debtors' chapter 11 cases are converted to cases under chapter 7 of the

Bankruptcy Code, the Sale Order, and if applicable, the Agency and License Agreement, shall be

binding on the chapter 7 trustee in such chapter 7 cases.

20.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

21.    **Severability**.  The provisions of this Sale Order are nonseverable and mutually dependent.

22.    **Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court to allow the Purchaser to (i) give the Debtors any notice provided for in the Purchase Agreement, and (ii) take any and all actions permitted by the Purchase Agreement and Ancillary Agreements in accordance with the terms and conditions thereof.

23.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry.  Time is of the essence in approving the Sale Transaction, and the Debtors and the Purchaser intend to close the Sale Transaction as soon as practicable.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

24.    **Payment of Cash Purchase Price; Allocation of Proceeds**.  As set forth in section 3.3(c) of the Purchase Agreement, immediately upon the Closing, the Purchaser shall pay an amount equal to the Closing Date Payment in immediately available funds, and the Closing Date Payment (after payment of the Reimbursable Expenses) (to which the liens of the Senior Secured Noteholders will immediately attach) will be paid at Closing, as follows:

(a)     *First*, cash in an amount necessary to pay and/or create a sufficient reserve to satisfy all Carve-Out Expenses (as defined in the DIP Order, including as provided for in the Post-Carve Out Trigger Cap, as modified in the Bid Procedures Order) shall be deposited into an account designated in writing by the Debtors, which amount will continue to be subject to the liens of the Senior Secured Noteholders and paid out in the priority set forth in this paragraph 24, to the extent that any portion of such amount is not awarded to the applicable professionals.

(b)     *Second*, cash in an amount equal to the amounts due to the DIP Agent and/or Senior Indenture Trustee (as defined in the DIP Order), as applicable, to satisfy and/or create a sufficient reserve necessary for amounts due to them for fees and expenses authorized to be paid under the DIP Order, including, without limitation, under paragraphs 7(d)(iii), 17 and 22(c) thereof and under Section 10.4 of the DIP Credit Agreement.

(c)     *Third*, cash in an amount equal to the amounts due under the DIP Credit Agreement (other than the Roll-Up Notes) which shall be paid to the DIP Agent for immediate distribution to the DIP Lenders in accordance with the DIP Credit Agreement.

(d)     *Fourth*, cash in an amount equal to $12.5 million to pay the Estimated Wind Down Expenses pursuant to the express line items in the Wind-Down Budget (but only to the extent such Estimated Wind Down Expenses have not been previously paid pursuant to the Sale Budget), which amount will be held in a segregated account by the Debtors.

(e)     *Fifth*, $20,000,000 in cash to be escrowed pursuant to Section 3.3 of the Purchase Agreement for certain purchase price adjustments payable by the Debtors pursuant to Section 3.4 of the Purchase Agreement, which amount will continue to be subject to the liens of the Senior Secured Noteholders and paid out in the priority set forth in this paragraph 24 to the extent that any portion of such escrow is paid to the Debtors.

(f)     *Sixth*, cash in an amount up to $10 million to the Debtors for the payment of Critical Expenses to the extent not paid from Cash Collateral, which Critical Expenses the Debtors may pay in the ordinary course of business.

(g)     *Seventh*, to each Specified Studio,[4] in full and complete satisfaction of all "revenue share", "previously rented product" and other end-of-term

---

[4]    Notwithstanding anything contained in the Motion or the Purchase Agreement to the contrary, the term "*Specified Studios*" shall mean Twentieth Century Fox Home Entertainment LLC, Sony Pictures Home Entertainment Inc., Warner Home Video, a Division of Warner Bros. Home Entertainment Inc., Paramount Home Entertainment Inc., Universal Studios Home Entertainment LLC, The Walt Disney Company, and Summit Entertainment LLC together with their respective Studio Affiliates that are engaged in the distribution of packaged and digital audio-visual media. For purposes of this Order, (i) "*Studio Affiliate*" means, with respect to any Specified Studio, any direct or indirect subsidiary of such Specified Studio, and any other Person (as such term is defined in the Purchase Agreement) that, directly or through one or more intermediaries, is controlled by such Specified Studio; and (ii) "*controlled*" shall mean the possession, directly or indirectly, of the power

obligations of the Debtors that would otherwise be payable as a result of or at closing under any and all Revenue Sharing Agreements between the Debtors and any Specified Studio, cash in an amount equal to 50% of the aggregate amount of all such obligations to such Specified Studio as calculated using the actual decay curve methodology set forth on **Exhibit "F"** to the Bid Procedures Order, *provided*, that in no event shall the amount of such payment to any Specified Studio exceed the product of $4,400,000 multiplied by such Specified Studio's pro rata share of such distribution.

(h)    **Eighth**, cash in an amount equal to $3,000,000, in full and complete satisfaction of all liabilities and obligations of the Debtors to the Specified Studios with respect to all pre- and post-closing date "Certified Field Destroy" units ("**CFDs**"), such payment to be allocated ratably on a per-disk basis to the Specified Studios otherwise entitled to CFD with respect to such disks.

(i)    **Ninth**, cash in an amount sufficient to pay the aggregate outstanding amount of any unpaid and accrued, valid Administrative Priority Expenses solely in an amount equal to the difference between (i) any amounts actually paid to any supplier or provider of goods and services during the Sale Process Period (as defined below) per the Sale Budget and (ii) the amount expressly budgeted for such supplier or provider pursuant to the Sale Budget, notwithstanding how the supplier or provider applies such payments received nor the manner in which the Debtors remit such payments to the supplier or provider (other than the new accruals of Revenue Share Fees and PRP Fees that accrue from March 7, 2011 through the Closing Date that are paid in accordance with paragraph 18(c) of the Bid Procedures Order), which amount shall be paid to an account designated in writing by the Debtors at least two (2) business days prior to the closing of the Sale Transaction for payment thereof.

(j)    **Tenth**, cash in an amount equal to $125 million to satisfy in full the Roll-Up Notes, which amount shall be paid to the Senior Indenture Trustee (or pursuant to his instructions) for immediate distribution to the Roll-Up Noteholders.

(k)    **Eleventh**, cash in an amount equal to $4 million, which shall be deposited in the Administrative Account to be allocated as set forth in paragraph 19 of the Bid Procedures Order.

(l)    **Twelfth**, the remaining balance of any sale proceeds shall be paid in the following order: (x) *first*, (1) 75% of any such amounts shall be paid to the Senior Indenture Trustee (or pursuant to its directions) for immediate

---

to direct or cause the direction of the management or policies (whether through ownership of securities or partnership or other ownership interests, by Contract (as such term is defined in the Purchase Agreement) or representation on the board or similar governing body).

distribution to the holders of Senior Secured Notes up to the outstanding amount owed to the Senior Secured Noteholders on account of their Senior Secured Notes Claims; and (2) 25% of any such sale proceeds shall be paid to the Administrative Account up to the amount of unpaid Pre-Sale Period Administrative Claims, which is to be allocated as set forth in paragraph 19 of the Bid Procedures Order; (y) *second*, the remaining balance of sale proceeds, if any, after satisfaction of (x) shall be paid to the Senior Indenture Trustee (or pursuant to its directions) for immediate distribution to the holders of Senior Secured Notes up to the outstanding amount owed to the Senior Secured Noteholders on account of their Senior Secured Notes Claims; and (z) *third*, the remaining balance of sale proceeds, if any, after satisfaction of (x) and (y) shall be paid to the Debtors.

For the avoidance of doubt, the payments to the Specified Studios and their affiliates pursuant to the foregoing paragraph shall entitle the Debtors, the Purchaser, and/or any other third party agent of the foregoing to sell all product or CFDs to which such payment relates free and clear of any liabilities, liens, encumbrances, or obligations owed to such Specified Studios or their affiliates on account of such product or CFDs.

25.    **Blockbuster Canada Co.** Any references herein to the (i) Purchase Agreement shall include any Ancillary Agreement that provides for the purchase or other similar transfer of the equity interests of Blockbuster Canada Co. (the "***Canadian Agreement***"), and (ii) Closing shall mean, as applicable, the Closing under the Purchase Agreement or the closing under the Canadian Agreement. For the avoidance of doubt, (i) the transfer of the equity interests of Blockbuster Canada Co. shall be governed in all respects by the Canadian Agreement and the terms and conditions thereof, (ii) the Closing under the Purchase Agreement does not require the closing under the Canadian Agreement to occur and (iii) nothing in this Sale Order requires the closing under the Canadian Agreement to occur.

26.    **Avoidance Actions.**  Avoidance actions under chapter 5  of the Bankruptcy Code are not Assets transferred to the Purchaser under the Purchase Agreement and the Debtors hereby

10-14997-cgm    Doc 1602    Filed 04/14/11    Entered 04/14/11 15:24:51    Main Document
Pg 28 of 29

permanently, unconditionally, and irrevocably waive and release all such causes of action upon

entry of this Order.

27.    **Taxing Authorities' Objections**.  In resolution of the objections of the County of

Anderson, Texas, et al (as set forth in Docket No. 1229); Lewisville Independent School District

and Carrollton-Farmers Branch Independent School District (Docket No. 974); Alamo Heights,

et al. (as set forth in Docket No. 1007); Burleson ISD, et al. (as set forth in Docket No. 982);

Mobile County, Alabama; and Douglas County, Colorado (collectively the "***Objecting Tax***

***Authorities***"), the Debtors shall maintain, as adequate protection for the secured claims of the

Objecting Tax Authorities, a cash reserve in an amount equal to the sum of: (i) ad valorem taxes

of such Objecting Tax Authorities assessed and unpaid against the business personal property

and owned real estate of the Debtors for prepetition tax years, and (ii) for ad valorem taxes

incurred as of the Closing of such Objecting Tax Authorities not yet assessed for the 2011 tax

year but for which Ad Valorem Liens (as defined in the DIP Order) have attached against, an

amount based on the prior year's assessed ad valorem taxes; provided, however, that in aggregate

such reserve shall be no greater than an amount equal to $1,700,000.  The liens of the Objecting

Tax Authorities shall attach to these funds with the same priority and to the same extent as they

now hold on the property being sold. The reserve of such funds shall be on the order of adequate

protection and shall constitute neither the allowance of the claims of the Objecting Tax

Authorities, nor a cap on the amounts they may be entitled to receive.  Furthermore, the claims

and liens of the Objecting Tax Authorities shall remain subject to any objections any party in

interest would otherwise be entitled to raise as to the amount of such claims or the priority,

validity, or extent of such liens.  These funds may be distributed upon agreement between the

Objecting Tax Authorities, the Debtors, and the DIP Lenders or by subsequent order of the

Court, duly noticed to the Objecting Tax Authorities.

28.     **Assumption and Assignment Orders**.  If an objection is or has been timely filed

with respect to any Purchaser Assumed Contract pursuant to paragraph 8(b) hereof or prior to the

date hereof in accordance with paragraph 13(b) of the Bid Procedures Order, then with respect to

such Purchaser Assumed Contract (a) the provisions of paragraphs L, O, 5, 6, 7, 8(g), 8(h), 11

and 14 hereof will be subject to any further order of the Court entered in connection with any

relief relating to the assumption and assignment of such Purchaser Assumed Contract to

Purchaser, and (b) nothing herein shall be a determination of any parties' rights, liabilities, or

obligations under such Purchaser Assumed Contract in connection with such proposed

assumption and assignment under section 365 of the Bankruptcy Code.

Dated:   New York, New York
         April 14, 2011

                                                  */s/Burton R. Lifland*
                                                  HONORABLE BURTON R. LIFLAND
                                                  UNITED STATES BANKRUPTCY JUDGE